VERNON A. NELSON, JR., ESQ.
Nevada Bar No.:  6434
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Ave., Ste. 244
Las Vegas, NV   89123
Tel.:  702-476-2500
Fax.:  702-476-2788
E-mail: vnelson@nelsonlawfirmlv.com
*Attorney for Plaintiffs John Carter and Christine Carter*

UNITED STATES DISTRICT COURT

STATE OF NEVADA

| | |
|---|---|
| JOHN CARTER and CHRISTINE CARTER, | Case No.:   2:16-cv-02967 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO RICHLAND HOLDINGS, INC.'S MOTION TO DISMISS; and** |
| RICHLAND   HOLDINGS,   INC.   d/b/a ACCTCORP OF SOUTHERN NEVADA, a Nevada Corporation; RC. WILLEY aka RC WILLEY   FINANCIAL   SERVICES,   and RANDALL  CORPORATION d/b/a BOWEN LAW OFFICES, | **PLAINTIFF'S NON-OPPOSITION TO DEFENDANTS MOTION FOR A MORE DEFINITE STATEMENT; and** |
| Defendant. | **PLAINTIFF'S COUNTERMOTION FOR LEAVE TO AMEND THE COMPLAINT.** |

Plaintiffs, John Carter and Christine Carter, by and through their attorneys of record The Law Office of Vernon a Nelson, hereby file this (1) Opposition to Defendant Richland Holdings, Inc. d/b/a/ Account Corp. of Southern Nevada ("Account Corp.") and defendant RC Willey's Motion to Dismiss; (2) Non-Opposition to Motion for More Definite Statement; and (3) Plaintiff's Countermotion for Leave to Amend the Complaint (collectively "Plaintiffs' Response"). Plaintiffs' Response is based upon the following points and authorities, any and all pleadings and papers on file herein, and any oral argument allowed by this court at the time of hearing of this matter.

//

//

//

1                     **MEMORANDUM OF POINTS AND AUTHORITIES.**

2 **I.      INTRODUCTION**

3       Defendant Richland holdings Inc. d/b/a Account Corp. of Southern Nevada ("ASN") filed its

4 motion to dismiss or, alternatively motion for more definite statement. Defendant RC Willey joined in

5 the motion (collectively "Defendants").

6       As is set forth below, Defendants' motion to dismiss, based on judicial estoppel, is without

7 merit and must be denied[1]. In this regard is important to note Defendants have relied on outdated

8 authority and have failed to cite newer authority that distinguishes the outdated authority.

9       In addition, Defendants' motion to dismiss based on the *Rooker-Feldman* doctrine and

10 principles of Issue and Claim preclusion are without merit and must be denied. Again, it is important

11 to note Defendants have relied on outdated authority and failed to cite newer authority that sharply

12 distinguishes and limits the outdated authority upon which Defendants rely.

13       Similarly, Defendants motion to dismiss Plaintiff's Abuse of Process claim is also without

14 merit and must be denied. It must be noted Defendants' rudimentary argument overlooks relevant and

15 important Ninth Circuit case law that is directly on point.

16       Defendants' motion to dismiss based on the applicable statutes of limitation has caused

17 Plaintiffs to recognize that they inadvertently failed to plead allegations that describe how they came

18 to discover their current claims against Defendants. Concurrently, Plaintiffs have been advised that

19 they improperly identified Randall Corporation d/b/a Bowen Law Offices as "Jerome Bowen" in the

20 caption and complaint. Finally, Plaintiffs do not oppose Defendants request for a more definite

21 statement with respect to Plaintiff's deceptive trade practice claim. Accordingly, Plaintiffs have filed a

22 Countermotion for leave to amend the complaint to correct the foregoing deficiencies.

23       Plaintiffs respectfully submit that the court should deny the motion to dismiss, and grant the

24 motion for leave to file an Amended Complaint. Finally, Plaintiffs do not object to Defendants'

25 request for a more definite statement and Plaintiffs have not opposed this alternative motion.

26                   ——————————

27       [1] Plaintiffs' proposed First Amended Complaint includes allegations relevant to the discovery of Plaintiffs' claims for purposes of statute of limitation purposes. Some of those allegations will be relevant to Plaintiffs' Opposition to Defendants motion to dismiss based on judicial estoppel.

28

## II.    STATEMENT OF FACTS[2]

This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. ("FDCPA") and related State Law Claims. In their Complaint, Plaintiffs allege that the ***DEFENDANTS*** engaged in unlawful conduct that gives rise to Plaintiffs' Complaint. Plaintiffs are seeking to recover damages caused by the ***DEFENDANTS'*** unlawful conduct. Plaintiffs contend: (1) that they received no notice of the "Collection Lawsuit" described below; and (2) that they did not know Defendants committed the multiple violations described below. ***HOWEVER, PLAINTIFF DO NOT ASK THIS COURT TO SET ASIDE THE JUDGMENT OR TO DIRECT ANY ORDER TO THE STATE COURT.***

Richland Holdings, Inc. d/b/a ACCTCORP OF SOUTHERN NEVADA ("ASN") filed a lawsuit against Plaintiffs in Eighth Judicial District Court in Clark County; Case No. A-14-699090-C (the "Collection Lawsuit"). ASN alleged Plaintiffs entered a contract with R.C. WILLEY ("The Contract") (See Exhibit E at pp. E19 to E21). The Contract was governed by Utah law. *Id.* at ¶11. Defendants alleged Plaintiffs failed to pay the amount owed to R.C. WILLEY under the Contract ("The Debt"). Defendants alleged that R.C. WILLEY:

> ***has assigned to [ASN] its account with [the Carters], and in the sum of $12,429.81, representing Home Furnishings and Merchandise, including Contractual Collection Fees, plus Contractual Interest at the rate of 24%, from the Date of First Delinquency, which is an amount equal to $171.63, plus Costs, until paid….***

(See Exhibit "A" at ¶ 1 of "Claim for Relief" (pp. 2-3)). The Complaint does not itemize the amounts allegedly owed and any reader cannot identify the amount of the "Contractual Collection Costs."

ASN retained Randall Corporation, dba Bowen Law Offices[3] ("Bowen") to file the complaint on behalf ASN. (See "Collection Complaint" attached as Exhibit "A")  The Court issued summons to Plaintiffs (See "Summons" attached as Exhibit "B"). and proof of service was filed with the Court.

---

[2] Defendants appear to request that the Court take Judicial Notice of the pleadings, applications, and other documents filed in the "Collection Lawsuit" (defined below). Plaintiffs join in Defendants' request and request that the Court take judicial notice of the Exhibits attached to this Opposition.

[3] Plaintiff incorrectly identified Defendant Randall Corporation, d/b/a Bowen Law Offices as "Jerome R. Bowen, Esq." Plaintiff's proposed First Amended Complaint corrects this mistake.

1  (See "Affidavits of Service" attached as Exhibit "C"). The Affidavits of Service demonstrate

2  Plaintiffs were not personally served:

> I, Anthony Spada, being duly sworn, depose and say that on the **23rd day of April, 2014** at **11:24 am, I:**
>
> **SUBSTITUTE** served by personally delivering a true copy of the **SUMMONS and COMPLAINT** to: **JANE DOE (Refused Full Name)** as **Resident / Occupant**, a person of suitable age and discretion residing at the within named person's usual place of abode located at the address of: **9205 Gentle Cascade Ave., Las Vegas, NV 89178**.
>
> **Description** of Person Served:  Age: 45,  Sex: F,  Race/Skin Color: WHITE,  Height: 5'6",  Weight: 145,  Hair: BROWN,  Glasses: N

9      Plaintiffs submit that the fact they were never personally served supports their allegation that

10  they had no knowledge of the Collection Lawsuit and they never knew they needed to file an Answer.

11      Defendants obtained a Default (See "Default" attached as Exhibit "D"); and filed an

12  Application for Default Judgment (See "Application for Default Judgment attached as Exhibit "E"). In

13  support of their Application for Default Judgment, Defendants proffered a "Confidential Legal

14  Authorization" signed by Bryn Wicks of RC Willey. This authorization purported to assign The Debt

15  from R.C. WILLEY to ASN. Exhibit E at 12. Contrary to the Complaint, the Confidential Legal

16  Authorization states that the balance assigned to ASN was $8,286.54. *Id.*  However, the Application

17  for Default Judgment filed by ***THE DEFENDANTS*** contained as separate Affidavit/Declaration

18  signed by Bryn Wicks. Exhibit E at 13. Wicks' Declaration states as follows:

> *5. That John Carter and Christine Carter became delinquent on 3/11/14 with an account balance of $8,286.54. A contractual collection fee of $4,134.27 was added for a total of $12,429.81.[4]*

21  The collection fee is equal to 50% of the principal balance assigned to ASN. Utah Code § 12-1-10

22  (3)(b) states the collection fee may not exceed 40% of the principal balance of the Debt. Thus, the

23  50% collection fee is illegal under Utah law; which governs the Contract.

24      The Court granted Defendant's Application and entered an Order for Default Judgment. (See

25  "Order for Default Judgment" attached as Exhibit "F"[5]). Finally, Defendants filed a Notice of Entry of

26  Judgment. (See "Notice of Entry of Judgment" attached as Exhibit "G").

---

[4] Defendants Memorandum of Law admits that the collection fee was $4,134.27 (See p. 4)

Plaintiffs subsequently filed a Notice that they filed for Chapter 7 Bankruptcy. As part of their bankruptcy filings, Plaintiffs filed a "Schedule B;" listing their personal property. As Defendants note on page 5 their Memorandum, *"under the section identifying '[o]ther contingent or unliquidated claims of every nature,' Plaintiffs identified 'None.'"* [6] Defendants also note Plaintiffs never amended their Schedule B *"to reflect, nor otherwise identify in any manner whatsoever, the claims that they now raise in this litigation." Id.* [7] Plaintiffs do not dispute these allegations; however, they contend that their Schedule B, and the lack of an amendment thereto, is evidence Plaintiffs had not discovered Defendants had committed the violations that are the bases of Plaintiffs' current claims. The proposed First Amended Complaint alleges Plaintiffs recently learned of Defendants' violations and they promptly retained counsel to file the complaint in this action.[8]

Plaintiffs allege ***DEFENDANTS*** committed multiple violations of the FDCPA. Plaintiffs further allege causes of action for abuse of process, violation of NRS Chapter 598 Deceptive Trade Practices, and Civil Conspiracy. (See Docket #1). Plaintiffs allege that ***DEFENDANTS*** violated the FDCPA by charging unlawful collection charges. (See Docket #1 at ¶¶ 15-16). The Declaration of Bryn Wicks (and Defendants Memorandum of Law) evidence (1) that the collection fee was equal to 50% of the principal balance of the Debt; and (2) the Contract is governed by Utah law; which limits contractual collection fees to 40% of the principal amount owed to the creditor. [9] Thus, the collection fee that was assessed by ***DEFENDANTS*** violated Utah law (the "Collection Fee Violations").

Plaintiffs allege that § 1692(g) of the FDCPA requires that debt collectors provide debtors with written notice of the Debt; and notice of the Debtor's right to verify the Debt (the "Validation

_____

(cont.)

[5] Like the Complaint, the Order for Default Judgment does not specify the amount of the collection fees included in the judgment amount. See Exhibit "F" at p.2

[6] A copy of Plaintiffs' petition is attached to Defendants' Memorandum as Exhibit 4.

[7] Defendants argue that the failure to identify "the claims" judicially estops this current action.

[8] Plaintiffs are not "collaterally attack[ing] the bases for damages" that were decided than two years ago,they Pare asserting recently discovered claims; that are based illegal acts committed by Defendants, not by the state court.

[9] This section states: (3) The creditor shall establish the amount of the collection fee imposed under this section, except that the amount may not exceed the lesser of: (a) the actual amount a creditor is required to pay a third party debt collection agency or licensed attorney, regardless of whether that amount is a specific dollar amount or a percentage of the principal amount owed to the creditor for a debt; or (b) 40% of the principal amount owed to the creditor for a debt.

Notice"). Plaintiffs allege that **DEFENDANTS** unlawfully failed to provide the Validation Notice; and that **DEFENDANTS** failed to notify Plaintiffs that the alleged amount owed included a collection fee equal to 50% of the principal balance of the Debt. (the"§ 1692(g) Violations").

Plaintiffs also allege that **DEFENDANTS** have unlawfully charged Plaintiffs 24% interest on the total amount allegedly due including the unlawful contractual collection fee. Plaintiffs further alleged that R.C. WILLEY charged-off the Debt and stopped adding contractual interest. However, ASN unlawfully continued to add 24 % interest to The Debt. The additional interest exceeds the amount that ASN may charge under Nevada law (collectively, the "Interest Fees Violations").

Plaintiffs allege that **DEFENDANTS** actions constitute violations of the FDCPA. Plaintiffs also allege that **DEFENDANTS'** actions give rise to claims for Abuse of Process, Violation of NRS Chapt. 598 Deceptive Trade Practices, and Civil Conspiracy. Plaintiffs allege Defendants collective violations of the FDCPA and their other wrongful acts have caused Plaintiffs to suffer substantial economic damages, severe emotional damages, and damages to their credit history and reputation. Plaintiffs have also incurred substantial attorney's fees in the bringing this action. Finally, in their prayer for relief, Plaintiffs pray for damages caused by **DEFENDANTS'** conduct. Plaintiffs are not requesting any relief from the Order for Default Judgment (Exhibit "F").

ASN filed a Motion to Dismiss or, Alternatively, Motion for Definite Statement. R.C. Willey joined the motion (the "Defendants' Motion"). Plaintiffs submit that the Motion must be denied.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction per FRCP 12(b)(1)

Per Rule 12(b)(1), a party may seek the dismissal of an action for lack of subject matter jurisdiction. In reviewing the motion, "the court is not restricted to the face of the pleadings and may review any evidence, such as declarations and testimony, to resolve factual disputes concerning the existence of jurisdiction". *Edward & Marjorie Austin Unitrust v. U.S. Mortg. Corp.*, 2007 U.S. Dist. LEXIS 72921 (D. Nev. 2007) (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). The Court must dismiss a case when it lacks subject-matter jurisdiction. *Roberts v. Corrothers*, 812

F.2d 1173, 1177 (9th Cir. 1987). The party invoking the jurisdiction at issue has the burden of proof. *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).[10]

### B.   Motion to Dismiss for Failure to State a Claim per FRCP 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), the Court must consider all the allegations of material fact stated in the complaint as true. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. Cal. 2007). Further, the Court must construe the facts in the light most favorable to the nonmoving party. *Id.* The Court should not dismiss a complaint "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002). The Court's review is generally limited to a review of the Complaint; but it may consider and take judicial notice of facts that are not subject to a reasonable dispute. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. Wash. 2010).

### C.   Motion for More Definite Statement

Rule 12(e) provides that a party may move for a more definite statement if the Complaint is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing an Answer and it must set out the material defects and the details needed.

## VI.   LEGAL ARGUMENT

### A.   Plaintiffs Are Not Judicially Estopped from Asserting Any of Their Claims Because Their Failure to Identify the Claims Was Based on Inadvertence and Mistake.

Judicial Estoppel is an equitable rule that the Court may apply within its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). It's purpose is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions [per] the exigencies of the moment." *Id.* at 749-50. The Court considers several factors in deciding whether to apply the rule: (1) whether a party's later position is "clearly inconsistent" with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would

---

[10] Defendants Memorandum of Law explains that if the *Rooker-Feldman* doctrine is applicable, then the Court must dismiss for lack of subject matter jurisdiction. As is set forth in more detail below, Plaintiffs respectfully contend that the *Rooker-Feldman* doctrine does not apply to Plaintiffs' causes of action.

create the perception that either the first or the second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. at 750-51. Yet, Courts caution that these factors should not be considered "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* at 751. The Court recognized that additional considerations may determine whether the remedy should be applied in specific cases. *Id.*

In *Ah Quin v. County of Kauai DOT*, 733 F.3d 267 (9th Cir. Haw. 2013), the Court discussed the application of the doctrine to bankruptcy matters. *Id.* at 271. The Court stated that federal courts adopted a basic default rule: *"If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." Id.* Yet, the 9th Circuit recognized that the Supreme Court held in *New Hampshire; supra.* that *"it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." Id.* (citing *New Hampshire,* 532 U.S. at 753). The 9th Circuit noted that several circuit courts have interpreted this factor narrowly. *Id.* These Courts "*have asked not whether the debtor's omission of the pending claim from the bankruptcy schedules was inadvertent or mistaken; instead, they have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim." Id.*

In *Ah Quin*, Plaintiff filed an action against Defendant. *Id.* at 269-70. Plaintiff then filed for bankruptcy and failed to disclose the pending lawsuit against Defendant. *Id.* The bankruptcy court granted her discharge and closed her case. *Id.* When Plaintiff's trial counsel learned of this, she told Defendant. The Court vacated all dates/deadlines and scheduled a status conference. *Id.*

Before the status conference, Plaintiff moved to reopen her bankruptcy and set aside the discharge. *Id.* at 270-71. The court reopened the case and Plaintiff amended her schedules to list the claim. *Id.* The trustee abandoned its interest in the claim and the court closed the reopened case. *Id.*

Defendant moved for summary judgment arguing judicial estoppel barred Plaintiff's action. The district court applied a narrow interpretation of judicial estoppel and granted summary judgment. The 9th Circuit reversed and held that the district court erred in applying the narrow interpretation of "inadvertence" because, given the circumstances, that interpretation was too stringent.

Considering the allegations/facts of the case at bar[11], in a light most favorable to Plaintiffs, there is substantial evidence that indicates: (1) Plaintiffs did not disclose their claims in Schedule "B" due to inadvertence or mistake; and (2) this evidence indicates Plaintiff can meet the most stringent standards applied by the 9th Circuit and other circuit courts. There are allegations and evidence that shows Plaintiffs did not know about their current claims when they filed for bankruptcy. There is also evidence that indicates Plaintiffs did not have a motive to conceal their claims.

With respect to Plaintiffs knowledge of their current claims: (1) Plaintiffs allege they did not receive Validation of Debt communications; (2) the Affidavits of Service clearly state Plaintiffs were never personally served and process was "left with Jane Doe" who allegedly resides at Plaintiffs' residence; and (3) the Affidavit of Service does not indicate how the affiant knew that "Jane Doe" was a resident. These allegations/evidence raise serious doubt whether Plaintiffs knew of the suit and/or whether they received any filings. Also, the Complaint and Order for Judgment do not clearly identify any illegal collection activity. The evidence of the illegal collection fee is buried deep in the Application for Default Judgment and it is not reasonable to think that an unsophisticated consumer could identify this violation. Thus, even if Plaintiffs did receive some of the documents filed by Defendants, it is unlikely that they would have been able to recognize Defendants charged illegal collection fees. Finally, the proposed Amended Complaint shows Plaintiffs did not learn about their claim until their recent meeting with their credit repair agency. Considered in the light most favorable to Plaintiffs, there are substantial allegations/evidence that indicate Plaintiffs did not know about their claims when they filed for bankruptcy.

Regarding Plaintiffs' motives, Plaintiffs claims are not defenses to the Debt and the claims would have had no effect on the discharge of the Debt. Considering the facts/allegations in a light most favorable to Plaintiffs, Plaintiffs submit there are sufficient allegations and evidence to indicate that they had no motive to conceal their claims.

Given there is sufficient evidence indicating: (1) Plaintiffs did not know about their claims; and (2) that they did not have a motive to conceal their claims, it is reasonable to believe Plaintiffs can

---

[11] Which includes the proposed Amended Complaint.

1  prove that their claims are not barred by judicial estoppel. Thus, Plaintiffs respectfully submit

2  Defendants' motion to dismiss on this ground must be denied.

3          Defendants have extensively relied on the 9th Circuit's decision in *Hamilton v. State Farm Fire*

4  *& Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) in support of their "Judicial Estoppel" argument. However,

5  Defendants reliance on *Hamilton* is misplaced and unpersuasive. Defendants have failed to recognize

6  that the *Ah Quin* Court sharply distinguished and limited the relevance of the *Hamilton* case. The *Ah*

7  *Quin* Court stated the lower court mistakenly thought it was bound by *Hamilton. Ah Quin,* 733 F.3d at

8  p.294, FN. #2   The *Ah Quin* Court also pointed out that in *Hamilton,* the evidence on the record

9  clearly demonstrated that the plaintiff's "bankruptcy omission was intentional in every sense of the

10  term." *Id.* at FN 5 (citing 270 F.3d at 781). Finally, the *Ah Quin* Court stated *nothing in Hamilton*

11  *forecloses the possibility that a court could conclude that… an inadvertent or mistaken omission might not*

12  *be unfair. Similarly, nothing in Hamilton forecloses the possibility that a court could reach a different*

13  *conclusion about the effect of the bankruptcy court's initial acceptance of the [plaintiff's]position.… If the*

14  *circumstances are materially different (i.e., where the plaintiff-debtor's omission was inadvertent or*

15  *mistaken, instead of intentional), Hamilton does not foreclose a different result.*

16  Plaintiff submits Defendants' motion to dismiss based on judicial estoppel must be denied.

17      **B.  Defendants' Position Plaintiffs' Claims are Barred by the *Rooker- Feldman***
       **Doctrine and Principles of Issue and Claim Preclusion are Contrary to Pervasive**
18      **Authority that the *Rooker-Feldman* Doctrine Does Not Bar FDCPA Claims.**

19          In *Garduno v. Autovest LLC*, 143 F. Supp. 3d 923 (D. Ariz. 2015), the Court provided a

20  thorough and persuasive explanation of the development of the *Rooker Feldman* doctrine and its

21  potential application to FDCPA claims. The Court first pointed out that, *"[t]he Rooker—Feldman*

22  *doctrine forbids a losing party in state court from filing suit in federal district court complaining of an*

23  *injury caused by a state court judgment, and seeking federal court review and rejection of that*

24  *judgment." Id.* at 926 (citing *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). The Court stated

25  that the application of this "general rule" requires two-steps. *Id.* In the first step, the court must decide

26  if any of the claims in the federal case is "a forbidden de facto appeal of a state court decision." *Id.*

27  (citing *Bell, supra.*). If one of Plaintiff's claims is not a "de facto appeal," then *Rooker-Feldman* does

28  not apply and the case may proceed. *Id.* If the Court decides that one of Plaintiff's claims is a "de

1  facto appeal," the claim constituting that appeal is barred as is any claim "'inextricably intertwined'
2  with the state court judicial decision." *Id.* (citing *Bell, supra.*).

3       In *Garduno,* the Court held Plaintiffs' FDCPA claim was not a "de facto appeal," because the
4  claim was not "a direct attempt to complain of an erroneous decision by the state court. *Id.* at 927. The
5  *Garduno* Court pointed out that "for purposes of Plaintiffs' FDCPA claim, the state court judgment is
6  largely irrelevant." *Id.* Plaintiff alleged "that the FDCPA violation occurred when Defendants filed
7  their state court lawsuit. *Id.* The Court stated that "the fact that judgment was eventually entered in
8  that case does not directly impact the FDCPA claim." *Id.* The Court also emphasized that "Plaintiffs'
9  FDCPA claim is not complaining about the state court judgment." *Id.* Plaintiff's FDCPA claim was
10 based on "an allegedly illegal act" by Defendants. *Id.* The Court also determined Plaintiffs "were not
11 seeking relief from the state court judgment." *Id.*  Plaintiffs' complaint made it very clear "that the
12 state-court judgment [is] valid" and they are not "attacking the [state court] judgment" nor are they
13 "trying to set it aside." *Id.*  Plaintiffs admitted that the state court judgment stands whether or not
14 Plaintiffs prevailed on their FDCPA claim. *Id.* The Court held that the "fact Plaintiffs do not seek to
15 undo the state court judgment strongly supports finding the *Rooker-Feldman* doctrine inapplicable. *Id.*
16 Finally, the *Garduno* Court concluded that "Plaintiffs [were] not seeking relief from the state court
17 judgment and their FDCPA claim is not a de facto appeal. Therefore, the *Rooker-Feldman* doctrine
18 does not bar Plaintiffs' FDCPA claim." *Id.*

19      Other courts have followed the *Garduno* Court's reasoning. For example, in *Black v. Autovest,*
20 *LLC,* 2015 U.S. Dist. LEXIS 172141 (D. Ariz. 2015), the Court held Plaintiff's FDCPA claims were
21 not barred by the *Rooker-Feldman* doctrine. The Court stated Plaintiff was not challenging the state
22 court judgment in this federal litigation. Rather, he challenges Defendants' representations at the time
23 Autovest filed the state court action." *Id.* at p. 9.  Plaintiff in *Black* also admitted that the state court
24 judgment would stand whether or not Plaintiffs prevailed on their FDCPA claim. *Id.*  Thus, the Court
25 concluded that the *Rooker-Feldman* doctrine "did not bar Plaintiff's claims." *Id.* (citing *Vacation*
26 *Village, Inc. v. Clark County, Nev,* 497 F.3d 902, 910 (9th Cir. 2007) (*Rooker-Feldman* only applies
27 when the plaintiff assert that its injury was caused by errors in the state court and it seeks a remedy
28 from the state court judgment). *See also Naranjo v. Universal Sur. of Am.,* 679 F.Supp. 2d 787, 794-

796 (S.D. Tex. 2010) (citing various cases holding that the *Rooker Feldman* doctrine does not bar FDCPA claims based on wrongful conduct of Defendants in process of obtaining judgment); *Ness v. Gurstel Chargo, P.A.* 933 F.Supp. 2d 1156, 1162-63 (D. Minn. 2013) (citing various cases holding that the *Rooker-Feldman* doctrine does not bar an FDCPA claim).

Finally, in *Thorpe v. Ertz*, 2016 U.S. Dist. LEXIS 178322 *; 2016 WL 7411524 (D. Alaska December 22, 2016), the Court followed the two-step analysis required by *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. Idaho 2013). The Court found the complaint alleged Defendant violated the FDCPA and the UTPCPA by attempting to collect an excessive amount of attorney's fees. *Thorpe at pp. 7-8.* The Court held that because the allegedly illegal act was committed by Defendant, and not the court, the *Rooker-Feldman* doctrine did not deprive the Court of jurisdiction. *Id.*

The facts in the case at bar are essentially identical the facts in the *Garduno, Black, and Ertz* cases cited above. In this case, Plaintiffs' complaint alleges that **DEFENDANTS** committed the "Collection Fee Violations," the "§ 1692(g) Violations," and the "Interest Fees Violations." Plaintiffs do not allege that the Court committed any illegal act.  Plaintiffs do not seek to undo the state court judgment and Plaintiffs are not seeking relief from the state court judgment. The FDCPA claim is not a de facto appeal and *Rooker-Feldman* does not bar Plaintiffs' FDCPA claims.

In support of their arguments, Defendants primarily rely on the 9th Circuit's decision in *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1140-41 (9th Cir. 2004) and they fail to recognize the 9th Circuits more recent decision in *Bell v. City of Boise*, 709 F.3d 890 (9th Cir. Idaho 2013). While *Bell* does not expressly overrule *Kougasian*, subsequent decisions make it clear that the *Kougasian* decision is limited and essentially states that the *Rooker-Feldman* doctrine may not apply to judgments obtained by extrinsic fraud. *See e.g. Tezak v. Glass*, 2014 U.S. Dist. LEXIS 156866 (C.D. Cal. Oct. 31, 2014) at *10. Defendant also relies on the Supreme Court's decision in *Kremer v. Chemical Construction Corp.*, 456 U.S. 1142 (1982) which stands for the proposition that federal courts must give full faith and credit to state court judgments. Again, Defendants have failed to recognize the more recent case of *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) provides a "two-step" process for determining whether the *Rooke- Feldman* doctrine bars Plaintiff's clams. Since Defendants have failed to recognize the most relevant Supreme Court and 9th

1   Circuit precedent, their arguments are unpersuasive. Based on the foregoing, Plaintiff submits

2   Defendants Motion to Dismiss based on the *Rooker-Feldman* doctrine must be denied.

3       **B.**    **Plaintiff's Claims Are Not Prohibited By Claim or Issue Preclusion Principles.**

4       Defendants argue that under Nevada law Plaintiff's claims are precluded by principles of

5   "Issue Preclusion and "Claim Preclusion" and they refer to *Clark v. Clark*, 80 Nev. 52, 55-56 (1964).

6   Defendants asserts "Claim Preclusion" is a rule which precludes the parties from relitigating what is

7   substantially the same cause of action. *Id*. Defendants also assert that Issue Preclusion may apply to

8   bar certain causes of action; even if the causes of action are substantially different. *Id*. Defendants

9   assert that if the same fact issue is presented in the first case, cannot be litigated in the second case.

10      In support of their argument

11  Defendants cite NRCP 13(a) and assert Plaintiff's current claims were compulsory counterclaims that

12  had to be litigated in the collection matter brought by Defendants against Plaintiff. However,

13  Defendants have failed to cite any case law that supports their contention that FDCPA claims are

14  compulsory counterclaims.

15      Many Courts have held that FDCPA claims are not "compulsory counterclaims." In *Mostin v.*

16  *GL Recovery, LLC*, 2010 U.S. Dist. LEXIS 21931 (C.D. Cal. Feb. 19, 2010) the parties disputed

17  whether a FDCPA counterclaim is compulsory. The Court held Defendant's counterclaim was

18  permissive. *Id.* at pp. *6-8. In so holding, the Court pointed out:

19      *"[A]lthough the Ninth Circuit has not specifically decided whether a counterclaim for*
    *the underlying debt in an FDCPA action is compulsory or permissive, most, if not all*
20  *of the district courts within the Ninth Circuit . . . have determined that such a*
    *counterclaim is permissive." Marlin v. Chase Cardmember Servs., 2009 U.S. Dist.*
21  *LEXIS 45189, at *8, 2009 WL 1405196, *3 (E.D. Cal. 2009). Marlin is correct.*
    *Numerous courts have held that a claim to collect an alleged debt [*7] underlying an*
22  *FDCPA claim is not a compulsory counterclaim to the FDCPA claim. See, e.g.,*
    *Randall v. Nelson & Kennard, No. CV-09-387-PHX-LOA, 2009 U.S. Dist. LEXIS*
23  *81896, 2009 WL 2710141 at *4 (D. Ariz, Aug. 25, 2009); Avery v. First Resolution*
    *Mgmt. Corp., No. 06-1812-HA, 2007 U.S. Dist. LEXIS 39260, at *15 (D. Or. May 25,*
24  *2007), aff'd 561 F.3d 998 (9th Cir. 2009); Barcena v. Tam Fin. Corp., EP- 07-CA-*
    *0020-KC, 2007 U.S. Dist. LEXIS 38674, at *8 n.2 (W.D. Tex. May 8, 2007); Bakewell*
25  *v. Fed. Fin. Group, Inc., NO. 1:04-CV-3538-JOF, 2006 U.S. Dist. LEXIS 23073, 2006*
    *WL 749807, at *2 (N.D. Ga. Mar. 21, 2006); Sparrow v. Mazda Am. Credit, 385*
26  *F.Supp.2d 1063, 1069 (E.D. Cal. 2005); Campos v. W. Dental Servs., Inc., 404*
    *F.Supp.2d 1164, 1168-69 (N.D. Cal. 2005); Moore v. Old Canal Fin. Corp., No. CV05-*
27  *205-S-EJL, 2006 U.S. Dist. LEXIS 21700, 2006 WL 851114, at *3 (D. Idaho Mar. 29*
    *2006); Hart v. Clayton-Parker & Assocs., 869 F. Supp. 774, 777 (D. Ariz. 1994);*
28  *Peterson v. United Accounts, Inc., 638 F.2d 1134 (8th Cir. 1981).*

13

The *Mostin* Court was particularly persuaded by *Peterson;* which explained:

> While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another. Although there is some overlap of issues raised in both cases as a result of the defenses raised in the state action, the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts. *Id.*

Judge Jones recently decided in *Means v. Intelligent Bus. Solutions, Ltd.*, 2015 U.S. Dist. LEXIS 41932 (D. Nev. Mar. 31, 2015) that "the doctrine of claim preclusion" does not require the dismissal of an FDCPA claim. *Id.* at *4-*5.  In so holding, the Court noted that "Plaintiff has not sought any declaration from this Court that would countermand or undermine the judgment of the state court as to the sole claim brought in that court for breach of contract." *Id.* The Court also noted Plaintiff did not ask the Court "to review the state court ruling…" *Id.* Additionally, the Court pointed out Plaintiff did not seek any form of relief that "would conflict in any way with the state court judgment entered against him for breach of contract." *Id.* The Court found that the FDCPA action was based on a federal statute "prohibiting certain collection practices." *Id.* Thus, the Court concluded that "nothing about the state court judgment precludes Plaintiff from asserting a FDCPA claim based on Defendant's attempt to collect $2501.13 in collection costs…." *Id.*

The facts in the case at bar are essentially identical the facts in *Means* and the other cases cited above. Plaintiffs' complaint alleges that ***DEFENDANTS*** committed the "Collection Fee Violations," the "§ 1692(g) Violations," and the "Interest Fees Violations."  Plaintiffs are seeking the remedies available under the FDCPA. Plaintiffs are not seeking to countermand or undermine the judgment of the state court in favor of Defendants. Plaintiffs are not seeking any form of relief that would conflict in any way with the state court judgment entered in favor of Defendants. Plaintiffs' FDCPA claims are based on a federal statute prohibiting certain collection practices. Also, Plaintiffs' FDCPA claims are not logically related to the state court judgment. Plaintiffs' claims relate to the way Defendants attempted to collect the Debt. Plaintiffs' claims do not concern whether a valid debt existed between the parties. Thus, nothing about the state court judgment precludes Plaintiff from asserting a FDCPA claims based on the "Collection Fee Violations," the "§ 1692(g) Violations," and the "Interest Fees Violations."

*b. Issue Preclusion*

With respect to Defendants' arguments based on the doctrine of issue preclusion, Defendants assert Plaintiff's claims are barred because "they raise an issue of the propriety of certain elements of damages in the underlying proceeding as they relate to the enforceability of relevant contract provisions in the state court action." Defendants claim that "these exact issues were raised in the state court action and that the state court entered a ruling and final judgment on the merits." As is set forth below, Defendants' arguments are without merit.

In *Howard v. Sandoval*, 126 Nev. 136 (2010), the Supreme Court responded to a certified question from the United States Bankruptcy Court for the District of Nevada. Specifically, the Bankruptcy Court questioned "whether the default judgment entered against the respondent debtor for failure to file an Answer had issue preclusive effect in a proceeding brought by Appellant-Assignee to determine the dischargeability of the debt embodied in the judgment." *Id.*

The *Howard* court stated "issue preclusion prevents relitigation of an issue decided in an earlier action" even if the second action is based on different causes of action and circumstances." *Id.* (citing *Five-Star Capital Corp. v. Ruby*, 124 Nev. 1048 (2008)). The Court stated that four factors must be met for issue preclusion to apply: (*1*) *the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final;(3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated.*

The Court noted that many courts are "divided on whether and when a default judgment can have a preclusive effect." *Id.* at 139-140. In deciding that a default judgment does not have a preclusive effect for purposes of issue preclusion, the Court noted that although Issue Preclusion avoids relitigation and conserves judicial resources, for the doctrine to apply, an issue must have been "actually and necessarily litigated." Thus, the Court concluded that "Nevada's issue-preclusion test requires that an issue be 'actually litigated' and not simply that a party had an opportunity to litigate the issue. *Id.* at 141. Accordingly, the Court held that "[w]hen a default judgment is entered where an answer has not been filed, the issue presented was not actually and necessarily litigated, and issue preclusion does not apply in such circumstances."

Similarly, in *Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, 2015 U.S. Dist. LEXIS 125044 (D. Or. July 29, 2015), the Court held that a default judgment in a collection case could not serve as a basis for issue preclusion in Plaintiff's FDCPA case. In so holding, the Court stated that "[n]one of the issues litigated and reduced to the default judgment in state court involved the Debt Collector's debt collection practices which are at issue here." *Id.* at *16-*19. The Court noted Plaintiff alleged Defendant violated the FDCPA "by repeatedly sending her and other class members collection letters which demanded contractual interest that it was not entitled to collect." *Id.* The Court also noted Defendant "reiterated those false representations in state court complaints, often resulting in default judgments that incorporated the amount of unlawful interest." *Id.* The Court found that a prior state court action did not establish the terms of the agreement between Plaintiff and the original creditor; including whether the original creditor or Defendant Debt Collector could collect interest from Plaintiff. *Id.* Nevertheless, the Debt Collector attempted to collect interest from Plaintiff. *Id.* Thus, Plaintiff filed her FDCPA action. *Id.* The Court held that whether the Debt Collector falsely asserted its right to collect interest had no relation to the default judgment and that fact that the Debtor obtained a default judgment was not relevant to the FDCPA claim. *Id.* Thus, the Court held that "there is simply no identity of issues between Plaintiff's FDCPA claim in this case and the underlying state court default judgment to permit issue preclusion." *Id.*

Like the default judgment debtors in *Howard* and *Jenkins-Brown,* Plaintiffs in the case at bar are asserting claims that are unrelated the Default Judgment obtained by Defendants in state court. Plaintiffs' claims based on the "Collection Fee Violations," the "§ 1692(g) Violations," and the "Interest Fees Violations" were not litigated when Defendants obtained their default judgment against Plaintiffs. Accordingly, the Default Judgment cannot serve as a basis for any valid claim of issue preclusion. Thus, Plaintiff's Motion to Dismiss based on Issue and Claim Preclusion must be denied.

**C. DEFENDANTS' ARGUMENT THAT PLAINTIFFS' ABUSE OF PROCESS CLAIM FAILS AS A MATTER OF LAW IS WITHOUT MERIT.**

Defendants claim that Plaintiff's Abuse of Process claim "fails as a matter of law given Plaintiff's own facts." The Defendants go so far to say that "Plaintiffs' own facts demonstrate the

frivolity of their abuse of process claim. Yet, it is clear that Defendant's arguments are based on an oversimplistic analysis, and a rudimentary applicatin of the law regarding abuse of process claims.

Per *LaMantia v. Redisi*, 118 Nev. 27, 30 (2002) the Plaintiffs have alleged: (1) an ulterior purpose by Defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." According to Defendants' rudimentary approach, they simply filed a lawsuit to collect money that is owed by Plaintiff to Defendants. Defendants seem to question how could those simple actions amount to an abuse of process?

Plaintiffs know that there is more to the analysis than Defendants' have described and there are many cases where Debt Collectors have been held liable for abuse of process. For example, in *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) a jury found in favor of Plaintiff and award him and awarded him the $1,000 statutory maximum for violations of the FDCPA; $250,000 for emotional distress; and $60,000 in punitive damages. In his complaint, Plaintiff asserted claims for violations of the FDCPA, the Montana Unfair Trade Practices and Consumer Protection Act ("MCPA"), along with state law claims for malicious prosecution and abuse of process. *Id.* Defendants appealed the jury verdict to the 9th Circuit and the 9th Circuit affirmed.

On the abuse of process claim, the Court applied Montana law which provides that a claim for abuse of process consists of two elements: "(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding."[12] *Id.* at 956-57. On cross-motions for summary judgment, the Court ruled that these facts had been established (the "Established Facts"):

(1) On April 17, 2007, Defendant filed a time-barred lawsuit against Plaintiff.

(2) By August 6, 2007, Defendant knew that the lawsuit was time-barred.

(3) Defendant prosecuted the time-barred lawsuit until December 7, 2007.

*Id.* at 947. The Court found that Plaintiff had produced sufficient evidence to sustain his abuse of process claim. *Id.* The Court found that the Established Facts demonstrated Defendant "willfully filed a lawsuit 'with an ulterior purpose of extracting money from the [Plaintiff]…,' and Defendant 'had no valid legal claim against Plaintiff and knew it, but filed an action . . . nonetheless.'" *Id.*

---

[12] These elements are essentially the same as the elements set forth in *LaMantia; supra*.

The Court further found that "substantial evidence supported the jury's finding of liability on [the abuse of process] claim." *Id.* at 956-57. Plaintiff presented evidence that: (1) Defendant filed suit "to extract money from Plaintiff that it could not legally obtain in a collection action and that it filed a baseless action with knowledge that it had no legal claim;" (2) Defendant "filed and pursued a time-barred lawsuit against him, even though Defendant's own electronic file indicated that the suit was time-barred;" (3) "Defendant continued to prosecute the collection case for four months after having been explicitly told" by the creditor that there were no was not grounds for extending the statute of limitations; (4) Defendant "sought attorney's fees without confirming that [Plaintiff] had a contractual fee obligation. *Id.* The Court held that based on the evidence the jury could infer Defendants purpose in filing the lawsuit was to coerce [Plaintiff] to pay awards and fees to which it and the creditor were not entitled. *Id.* The Court held that the "jury's abuse of process verdict was supported by substantial evidence, and the district court properly denied Defendants' motion for judgment as a matter of law."

Considering the facts and allegations in the light most favorable Plaintiffs in this case there is evidence that indicates that Defendants are liable for abuse of process. For example, the Affidavits of Service demonstrate Plaintiff's were not personally served and Defendants served "Jane Doe" without explaining how they knew that "Jane Doe" was resident. Considered in the light most favorable to Plaintiff, this fact could evidence that Defendants intentionally filed a false affidavit with the Court.

Defendants' Application for Default Judgment also evidences they knew the maximum collection fee they could collect was 40% of the principal amount. Nevertheless, **DEFENDANTS** willfully and knowingly charged unlawful collection charges equal to 50% of the principal amount. In this regard, the Declaration of Bryn Wicks (and Defendants Memorandum of Law) shows: (1) that the contractual collection fee was equal to 50% of the principal balance of The Debt; and (2) the Contract is governed by Utah law; and limits contractual collection fees to 40% of the principal amount owed to the creditor. Thus, the collection fee charged by **DEFENDANTS** violated Utah law.

In addition, Plaintiffs allege that § 1692(g) of the FDCPA requires that debt collectors provide debtors with written notice of the Debt; and notice of the Debtor's right to verify the Debt (the "Validation Notice"). Plaintiffs further allege **DEFENDANTS** unlawfully failed to provide the Validation Notice; and **DEFENDANTS** failed to notify Plaintiffs that the alleged amount owed by

Plaintiffs included a collection fee equal to 50% of the principal balance of the Debt. Given the suspicious service of "Jane Doe," and viewing the facts in a light favorable to Plaintiffs, it could be inferred Defendants never intended to serve Plaintiffs and intentionally obtained a default judgment.

Plaintiffs allege **DEFENDANTS** have unlawfully charged Plaintiffs 24% interest on the total amount allegedly due **INCLUDING THE UNLAWFUL CONTRACTUAL COLLECTION FEE**. Plaintiffs allege that R.C. WILLEY charged-off the Debt and stopped adding contractual interest; but ASN unlawfully continued to add 24 % interest to The Debt. The additional interest exceeds the amount that ASN may charge under Nevada law. Considering the foregoing in the light most favorable to Plaintiffs, there is evidence that indicates Plaintiffs can provide "substantial evidence to support a jury's finding of liability on its abuse of process claim." Plaintiff allegations/facts indicate Defendants filed suit "to extract money from Plaintiff that it could not legally obtain in a collection action and they pursued excessive collection charges even though they knew the charges violated Utah law. Considered in a favorable light, Plaintiffs' submit that based on the outcome of the *McCullogh* case, it is possible that a jury could enter an award in favor of Plaintiffs. Thus, Plaintiffs respectfully submit that their abuse of process claim should not be dismissed.

**D. PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.**

Defendants contend that Plaintiff's claims for (1) violations of the FDCPA, (2) deceptive trade practices, and (3) abuse of process are all based on conduct allegedly in violation of the FDCPA. Thus, Defendants contend that all three causes of action are subject to the FDCPA's one-year statute of limitations. Defendants also allege that the Collection Fee Violations, the § 1692 Violations and the Interest Fee Violations all accrued long before the Default judgment was entered against the Plainitffs on or about August 7, 2014; but they provide no support for this allegation. Further, Defendant inconsistendly states Plaintiffs must have brought their claims no later than August 7, 2016; **which is two years after the claims purportedly accrued.** Defendants argue that Plaintiffs cannot "recharacterize" their FDCPA claims to avoid the time-barred status of

the various related causes of action. However, it does not appear Defendants have provided any authority to support this contention. Based on these inconsistent contentions, Defendant somehow concludes that their motion to dismiss based on the statute of limitations must be granted.

### 1. FDCPA Statute of Limitations

In support of their argument that the FDCPA has a one-year statute of limitations, Defendant cite to *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. Idaho 2009). While Defendants properly cite to *Mangum*, they miss the import of *Magnum.* In *Magnum*, the 9th Circuit held that the the FDCPA's one-year statute of limitations commences upon Plaintiffs' discovery of their FDCPA claims. The proposed Amended Complaint explains that Plaintiffs only learned about their claims in December of 2016 when they retained a credit-repair agency to help improve their credit. Per the proposed First Amended Complaint, Plaintiffs did not learn about their claims until December of 2016 for several reasons. First, as the Proof of Service Demonstrates, Plaintiffs were not personally served and they were unaware of the lawsuit. Additionally, Defendants did not know about their claim when they filed for bankruptcy; as is evidenced by the fact that they did not identify the Claim in Schedule B of their Petition. Moreover, even if they had been aware of the lawsuit, Plaintiff's would not have known or discovered that they had claims without the assistance of counsel. Counsel was able to obtain all of the pleadings from the state court case and he reviewed them carefully. Plaintiffs counsel was able to identify the original contract between RC Willey and Plaintiffs. Buried deep in the boilerplate in ¶ 8 the contract provides that it is governed by Utah law. Exhibit E at p. 20. Utah law provides that the collection fee cannot exceed 40% of the principal balance of the loan.

Also, buried in the Application for Default Judgment was the Declaration of Bryn Wicks. Exhibit "E" at 13-14. Wicks states the Collection Fee added to the prinicipal amount of the debt was $4,143.27; which is equal to 50% of the principal amount and is illegal under under Utah law.

It is noteworthy that Plaintiffs never receive a Section 1692 Validation Notice that detailed how much of the outstanding amount was prinicipal, collection fees, and interest. Moreover, neither the Complaint or the Order for Judgment detail the amount of the Collection Fee.

Now that several years have passed since the filing of their bankruptcy, Plaintiffs have recently taken proactive steps to repair their credit and they met with a credit repair agency. The agency understood that Defendants had a reputation for charging excessive fees and committing other FDCPA violations. Thus, the agency referred Plaintiffs to counsel. After several hours of combing through the pleadings, Plaintiffs' counsel was able to uncover the violations committed by Plaintiffs. Thus, it is clear that Plaintiffs only recently discovered their FDCPA claims; and their claims are not barred by the statute of limitations.

**2. Abuse of Process and DTP Act Statute of Limitations.**

Defendants contend that Plaintiff's abuse of process and DTP claims (the "State Law Claims") are based on alleged violations of the FDCPA. Thus Defendants opine that the statute of limitations for Plaintiffs' state law claims are governed by the FDCPA's one (1) year statute of limitations. While Plaintiffs are uncertain whether Defendants' opinion is accurate, Plaintiffs' recognize that the burden is on Defendants to prove that the statute of limitations bars Plaintiffs' claims. For purposes of this motion, Plaintiff is willing to accept Defendants position that FDCPA's one (1) year statute of limitations is applicable the State Law Claims and that the Discovery Rule applies. As is set forth in more detail above, under the FDCPA, the one (1) year limitations period commences upon Plaintiff's discovery of the claim.

As is set forth in Plaintiff's proposed First Amended Complaint, Plaintiffs discovered their FDCPA claim in December of 2016 after they contacted a credit repair agency and Plaintiffs' counsel. The allegation set forth herein and in the Affidavits of Service demonstrate Plaintiffs were not personally served and that Defendants served "Jane Doe" without explaining how they

knew that "Jane Doe" was resident. Considered in the light most favorable to Plaintiff, this fact could evidence that Defendants intentionally filed a false affidavit with the Court. Additionally, the facts and allegations thus far indicate that Defendants may have filed suit "to extract money from Plaintiff that it could not legally obtain in a collection action and that it filed pursued excessive collection charges even thought they knew the charges violated Utah law. Considered in the light most favorable to Plaintiff there is also potential evidence that Defendants knowingly filed a false affidavit of service in a wrongful effort to obtain a Default Judgment against Plaintiff. Plaintiffs did not discover, and could not have discovered these claims until their counsel explained how the violations were hidden in the contracts, declarations, and other documents that supported Defendants' Application for default judgment in the state case.

Plaintiff's proposed First Amended Complaint, describes in significant detail why Plaintiffs only discovered their claims in December of 2016. Accordingly, Plaintiffs respectfully submit Defendants Motion to Dismiss based on the statute of limitations must be denied.

**E. PLAINTIFFS DO NOT OBJECT TO DEFENDANTS REQUEST FOR A MORE DEFINITE STATEMENT.**

Since Plaintiffs have requested leave to amend their complaint, Plaintiffs do not object to Defendants' request for a more definite statement. Plaintiffs have/will make a good faith effort to address Defendants' concerns in the proposed First Amended Complaint.

**F. DEFENDANTS MOTION TO DISMISS PLAINTIFF'S CIVIL CONSPIRACY CLAIM MUST BE DENIED.**

Defendants' Motion to Dismiss Plaintiffs' Civil Conspiracy claim is based on Defendants assumption that all of Plaintiffs' other claims will be dismissed. Plaintiffs respectfully submit that this Opposition to Defedants' Motions makes it clear that Plaintiff claims will not be dismissed. Given that Defendants assumption is incorrect, their motion to dismiss Plaintiff's Civil Conspiracy Claim must be denied.

**V. PLAINTIFF'S COUNTER-MOTION FOR LEAVE TO FILE ITS FIRST AMENDED COMPLAINT MUST BE GRANTED.**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires."  The United States Supreme Court, the Ninth Circuit, and this Court have repeatedly reaffirmed that leave to amend is to be granted with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citation omitted); *see, e.g., Foman v Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (leave to amend should be freely given); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.") (emphasis in original); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (courts should be guided by policy favoring decisions on the merits "rather than on the pleadings or technicalities"); *Cooper Development Co. v. Employers Insurance of Wausau*, 765 F. Supp. 1429, 1432 (N.D. Cal. 1991) (courts have been "quite liberal" in granting leave to amend); *Building Service Employees Pension Trust v. Horsemen's Quarter Horse Racing Association*, 98 F.R.D. 458, 459 (N.D. Cal. 1983) (same); *see also* Moore, *3-15 Moore's Federal Practice - Civil* § 15.14 ("A liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)."). The primary actors relied upon by the Supreme Court and the Ninth Circuit in denying a motion for leave to amend are "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs*, 833 F.2d at 186. None of these factors are present here.

In addition, Plaintiffs' Amended Complaint is timely and should be allowed.  Plaintiffs' counsel met with the Plaintiffs during the holidays and Plaintiffs were eager to pursue their claims. Given the tumultuous nature of the holidays, Plaintiffs' counsel's office used a sample complaint from another case as a guide. However, Plaintiffs' counsel did not recognize that the sample

complaint related to a claim that was within the one year statute of limitations. As a result, Plaintiffs' counsel forgot to assert allegations describing how/why the Plaintiffs only recently discovered their claims. These allegations are set out in the proposed First Amended Complaint.

Additionally, Plaintiffs' counsel has been advised that Plaintiffs incorrectly identified Defendant Randall Corporation, d/b/a Bowen Law Offices as "Jerome R. Bowen, Esq." Plaintiffs' proposed First Amended Complaint corrects this mistake. Finally, Plaintiffs' do not oppose Defendants' request for a more definite statement. The proposed First Amendment Complaint also addresses this issue. Given the foregoing, Plaintiffs falls well within the liberal standard for freely allowing the amendment of pleadings. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment . . .the leave sought should, as the rules require, be 'freely given.'").

There is no prejudice to Defendants here. Plaintiff's Amended Complaint does not change the nature of the lawsuit, nor is Defendant precluded from seeking discovery in relation to the Amended Complaint. In fact, the Amended Complaint addresses many of the concerns in Defendant's Motion to Dismiss. Moreover, there has been no discovery conducted in this action. Accordingly, Defendant will not be prejudiced by an order granting leave to file Plaintiff's Amended Complaint.

In sum, Plaintiff's Amended Complaint was filed timely and in good faith, contains claims similar to those originally asserted and does not prejudice Defendants. Consequently, none of the factors on which courts base denial of motions for leave to amend are present here. Thus, Plaintiff's motion for leave should be granted.

**V.  CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully requests that its Counter-Motion for Leave to Amend the Complaint must be granted. Further, Defendants Motion to Dismiss must be denied. Finally, Plaintiff does not oppose Defendants' Motion for a More Definite Statement.

DATED this 31st day of January, 2017

THE LAW OFFICE OF VERNON NELSON

By:  _____*/s/Vernon Nelson*_____
VERNON NELSON, ESQ.
Nevada Bar No.: 6434
9480 S. Eastern Avenue, Suite 244
Las Vegas, NV   89123
Tel:  702-476-2500
Fax:  702-476-2788
E-Mail:  vnelson@nelsonlawfirmlv.com
*Attorney for Plaintiffs*
*John Carter and Christine Carter*