VERNON A. NELSON, JR., ESQ.
Nevada Bar No.:  6434
MARGARET FOLEY, ESQ.
Nevada Bar No.: 7703
JOHN SKALAK, ESQ.
Nevada Bar No.: 4385
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Ave., Ste. 252
Las Vegas, NV   89123
Tel.:   702-476-2500
Fax. :  702-476-2788
E-mail : vnelson@nelsonlawfirmlv.com
          mfoley@nelsonlawfirmlv.com
          jskalak@nelsonlawfirmlv.com
*Attorney for Plaintiffs John Carter and Christine Carter*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN CARTER and CHRISTINE CARTER, | Case No.:   2:16-cv-02967-RFB-VCF |
| Plaintiffs, | |
| v. | |
| RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA, a Nevada Corporation; RC. WILLEY aka RC WILLEY FINANCIAL SERVICES, and JEROME R. BOWEN, ESQ. | |
| Defendants. | |

**PLAINTIFFS OPPOSITION TO DEFENDANT'S RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA'S, RC WILLEY aka RC WILLEY FINANCIAL SERVICES', AND RANDALL CORPORATION D/B/A BOWEN LAW OFFICES' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiffs JOHN CARTER and CHRISTINE CARTER, through their attorney of record VERNON A. NELSON, JR., ESQ. of the LAW OFFICE OF VERNON A NELSON, hereby sets forth their Opposition to Defendant's Motion for Summary Judgment in the above referenced matter, for and upon the declaration of undisputed facts, affidavit and authorities set forth herein.

THE LAW OFFICE OF VERNON NELSON
ATTORNEY AT LAW

# I. RELEVANT PROCEDURAL HISTORY

The Plaintiffs filed their Complaint in this action on December 22, 2016[1]. Defendant Richland Holdings d/b/a AcctCorp of Southern Nevada ("ASN") filed a *Motion to Dismiss or, Alternatively, Motion for More Definite Statement* (the "MTD" or "Motion to Dismiss) on January 17, 2017 (Docket #6 and #11). Plaintiffs filed their *Response* to opposing the Motion to Dismiss (the "Opposition") on February 1, 2017 (Docket #14). Plaintiffs also filed a *MOTION to Amend/Correct Complaint* (the "Motion to Amend" or "MTA") on February 1, 2017. (See Docket #15 and #16). ASN filed its *Reply to Response* on February 13, 2017 (Docket #18). Defendant RC Willey ("RCW") filed a *Joinder to Reply to Response to Motion* (Docket #19). ASN and RCW filed a *Response* opposing the MTA on February 15, 2017. The Court held a hearing for the MTD and the MTA (the "Hearing") on August 23rd. (Docket #34).

The Court held the Hearing on August 23rd and the results of the Hearing are reflected in the *Minutes of Proceedings* (Docket #38) as follows:

> The Court makes preliminary statements and hears representations from counsel regarding the motions pending before the Court.
>
> For the reasons stated on the record at the hearing,
>
> IT IS ORDERED that Defendant's 6 Motion to Dismiss is DENIED in part and GRANTED in part. The Motion is GRANTED without prejudice as to the FDCPA, Nevada Deceptive Trade Practices and Nevada civil conspiracy claims. The Motion is GRANTED with prejudice as to the abuse of process claim. The Motion is DENIED as moot as to a More Definite Statement.
>
> IT IS FURTHER ORDERED that Plaintiff's 15 Motion to Amend the Complaint is GRANTED. Plaintiff's amended complaint shall be filed by September 5, 2017.
>
> IT IS FURTHER ORDERED Defense counsel's oral request to stay discovery is DENIED.
>
> IT IS FURTHER ORDERED that the transcript of the hearing will serve as the written opinion and order of the Court as to the respective motions.

---

[1] Plaintiffs' Complaint incorrectly named Jerome Bowen as a Defendant. As is set forth below, Plaintiffs amended their Complaint and correctly named Randall Corporation d/b/a Bowen Law Offices as a Defendant.

At the Hearing, the Court focused on Plaintiffs allegation that "with in the past year" Defendants committed several violations of the FDCPA. The following statements from the Hearing are particularly relevant as to the MSJ (a true copy of the transcript (Docket #39) ("Transcript") is attached as Exhibit "1"):

> THE COURT: But why would I dismiss the claims with prejudice?
> MR. CLEMENT: Understood. So a couple of points, Your Honor.... (See Transcript at p. 12 (ln. 6-19)).
>
> THE COURT: The default judgment creates a debt.
> MR. CLEMENT: Correct.
> THE COURT: A debt that's collectible. Why wouldn't I not interpret the facts to be that the conduct that would be the basis of the FDCPA violation is, which is I think what's alleged, conduct related to collecting against the default judgment. **There would be no in that case preclusion, there would be no estoppel, and there would have been no case to have been claimed in the bankruptcy, correct?** (emphasis added)
> MR. CLEMENT: What conduct are you referring to?
> THE COURT: Well ...
> MR. CLEMENT: Sorry. I'm just trying to make sure I answer your question.
>
> THE COURT: Now, would we need to -- so let me say this now. I'm denying the motion to dismiss as relates to the FDCPA claim and the Nevada Unfair Trade Practices claim. I think -- well, let me correct myself.
> I'm going to grant the motion without prejudice. I think that those claims don't provide specific enough information as to what is the date in which the conduct occurred or dates and enough information as it relates to the nature of the conduct and the subsections under the federal and state statutes that are being pursued. However, I think that the plaintiff has alleged enough that they have a right to be able to amend the complaint as it relates to those two claims....
> (See Transcript at pp. 23 (ln. 13-24)

Plaintiffs filed their Amended Complaint on September 5, 2017.[2] (Docket #40). ASN and RCW filed their Answers on September 19, 2017. (Docket #43 and #44). Randall Corporation d/b/a Bowen Law Offices ("Bowen") filed its Answer on October 3, 2017 (#46). The Defendants filed this MSJ on October 10, 2017 (Docket #49 and #50).

---

[2] The Amended Complaint properly named Defendant Randall Corporation d/b/a Bowen Law Offices.

### III. STATEMENT OF FACTS

#### A.  The Parties

The *Fair Debt Collection Practices Act* ("FDCPA") 15 U.S. Code § 1692a(4), provides a "debtor" is a natural person allegedly obligated to pay a debt. Plaintiffs are adult individuals who reside in Nevada. (*See Declaration of John Carter* ("DJC") attached as Exhibit "2" at ¶ 2 and *Declaration of Christine Carter* ("DCC") attached as Exhibit "3" at ¶ 2). Plaintiffs are natural persons allegedly obligated to pay a debt. (DJC at ¶ 3 and DCC at ¶ 3).

FDCPA § 1692a(6), states a debt collector is someone who regularly collects debts owed to others. The definition of debt collector includes collection agencies, lawyers who collect debts on a regular basis, and companies that buy delinquent debts and then try to collect them." (*See* true copy of *"Debt Collection,"* consumer.ftc.gov May 2015 (the "FTC Publication") attached as Exhibit "4"). ASN is a domestic corporation doing business in Nevada. (*See* Docket #43 at ¶ 7). ASN is licensed as a Collection Agency pursuant to the laws of the State of Nevada (*See* Exhibit M to Defendants MSJ. Bowen is a law firm licensed to do business in Nevada (See Docket #46 at ¶ 7). Bowen has denied it is a "debt collector" as defined in l692a(6) (*See* Docket #46 at ¶ 7). [3] Thus, Plaintiffs submit Bowen cannot genuinely dispute it is a debt collector under the FDCPA.

R.C. WILLEY is a provider of credit, for purposes of purchasing goods, and is headquartered in Salt Lake City, Utah. (Docket #44 at ¶ 6). It is qualified to do business in Nevada per NVSOS.

---

[3] In the recent case of Gatter v. Richland Holdings, Inc., 2016 U.S. Dist. LEXIS 47194 (D. Nev. April 6, 2016), Bowen denied it was a "debt collector." In ruling on cross motions for summary judgment, Judge Boulware found as "undisputed facts" that Richland retained counsel, Bowen Law Offices (Randall Corporation), to represent it in the legal matter against [*4] Plaintiff for collection of the outstanding debt. Bowen has had a continuous business relationship with Richland Holdings for at least four years, representing Richland in collecting consumer debts. From 2011-2014, Bowen filed at least 200 debt collection cases for Richland. Id. In ruling Bowen is a debt collector. Id. The Court noted, while Bowen admits that it provided legal services to Defendant Richland and pursued legal remedies on behalf of Richland, Bowen argues that its [*7] principal purpose is not the collection of consumer debt. Bowen further argues that it does not regularly collect consumer debt. The Court disagrees and the record  refutes his contention.

Plaintiffs' Amended Complaint asserts causes of action under the FDCPA, the Nevada Deceptive Trade Practices Act, and for common-law conspiracy (Docket #40). The Defendants cannot genuinely dispute: (1) this action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq*. ("FDCPA") and related State Law Claims; (2) This court has jurisdiction over this matter pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

**B. Facts Supporting Plaintiffs' Causes of Action**

 *1. Overview*

The Plaintiffs are not asking this Court to overturn the Inflated Debt. (*See* DJC at ¶ 9 and DCC at 9). The Plaintiffs are seeking to enforce their rights and remedies against the Defendants as is provided for in the FDCPA and the State laws referred to herein. (See DJC at ¶ 9 and DCC at 9).

The evidence in this case shows: (1) the Defendants engaged in unlawful practices when they obtained a default judgment against the Plaintiffs, in Clark County District Court, in August of 2014; (2) the Defendants committed, and conspired to commit, numerous violations of the FDCPA; (3) Defendants' violations of the FDCPA resulted in the Defendants obtaining a default judgment in an amount greater than the amount to which they were entitled (the "Inflated Debt"); (4) Defendants continued efforts to collect the Inflated Debt after the Inflated Debt was discharged in bankruptcy; and (5) they knowingly committed and conspire to commit violations of the FDCPA and NRS Chapt 598

 *2. ASN Violated the FDCPA in 2014, 2015, and 2016 Because It Continued Collection Efforts and Inaccurate Credit Reporting After the Inflated Debt Was Discharged.*

It is undisputed that in September of 2014, Plaintiffs filed a Bankruptcy Petition in the United States Bankruptcy Court for the District of Nevada. (Defendants MSJ (DMSJ) Ex. F). The Court entered an Order Discharging Debtors on December 24, 2014 (the "Discharge Order") (DMSJ EX. 6). The Discharge Order discharged Plaintiffs' obligation to pay any amounts owed on the debt. Despite the Discharge Order, Defendants did not discontinue their efforts to *collect the Inflated Debt in December of 2014 (the "December 2014 Violations"). (See* Declaration of Jamie Clark ("DJC")

at ¶ 8-9). First, Defendant ASN did not enter any notes in its Debtor History Report ("DHR") that show the Court entered a Discharge Order in December of 2014. *Id.* ASN also continued to report inaccurate derogatory information about the Inflated Debt to credit bureaus by: (1) failing to report the Inflated Debt had been discharged in Bankruptcy; and (2) inaccurately reporting Plaintiffs still owed the Inflated Debt. *Id.* ASN's conduct evidences it was still attempting to collect the Inflated Debt for purposes of the FDCPA because FDCPA §1692d and 1692(8) prohibits debt collectors from communicating or threatening to communicate credit information which they knew or should have known was false. *See e.g. Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. April 5, 2007) *modified on other grounds in Nelson v. Equifax Info. Servs. LLC,* 522 F. Supp. 2d 1222 (C.D. Cal. June 26, 2007). ASN has not offered any evidence that genuinely disputed Ms. Clark's statements. In fact, in Exhibit M (Docket #49-13), Ms. Patterson admits that the bankruptcy discharge was not reflected on the DHR until April 5, 2015. *Id.* Ms. Clark explains this resulted in ASN reporting inaccurate information to the credit bureaus. DJC at ¶ 9).

The DHR also proves, in April of 2015, ASN continued with efforts to collect the Inflated Debt. In her declaration Ms. Clark explains that on April 6, 2015, a comment was added to Plaintiffs' DHR which states *Automatic Debtor status change from JDG to BAN*.  Another comment stated *Changed collector from 244 to 086*. She states in DJC ¶¶ 6-7:

> *These comments indicate that the account status in the Debt Master System was changed from a "Judgment Account" to a "Bankruptcy Account and was moved from the legal work list to the Bankruptcy work list."*
>
> *7.    When an account was transferred to the Bankruptcy Work List Account, it meant that additional work may or may not be have been needed on the account.  It is my understanding that if the debtors failed to identify AcctCorp as a creditor in their Bankruptcy Petition that could be a reason to change the status to a "Bankruptcy Work List Account."*

On November 1, 2016, ASN updated the DHR with the comment "Automatic Debtor Status Change from BAN to CAR." DHR also added the comment, "Balance adjusted to 0.00."

DJC ¶ 8. On November 2nd, ASN added the following comments:

> *Bureau Report changed from T to F ("T" means true and "F" means false).*
> *Credit Bureau: 134773-1 removed; Bureau Report = F (DJC ¶ 9)*

On November 2, 2016, shows comments *Bureau Report changed from T to F* and Credit *Bureau: 134 773-1 removed: Bureau Report= F.* In the first comment "T" means true and "F" means false. ***Thus, this comment indicates that it was true that the account was being reported to the credit bureaus; but that it was changed to F so it would be false that the account was being reported to the credit bureaus.*** The second entry confirms that the status was changed to false. *Id.* Ms. Clark's Declaration proves ASN attempted to collect the debt in 2016 (the "2016 Violations").

ASN cannot genuinely dispute the statements of Ms. Clark and they appear to have adopted a strategy of ignoring the comments added to Plaintiffs' DHR on November 1, 2016 and November 2, 2016. For example, in paragraph 33 of (Docket #49), Defendants fail to mention the allegations in Plaintiffs' Amended Complaint about activity that occurred on November 1st and 2nd of 2016. (Docket #40 at ¶¶ 16 and 17). In (Docket #43), ASN denies the allegation in ¶16. As to ¶ 17, the ASN claims that "*the document speaks for itself*." This response is contradicted by Exhibit M to their MSJ (Docket #49-13); which is a 5-page Declaration of Amanda Patterson. Much of Ms. Patterson's Declaration addresses and explains the DHR (which apparently cannot speak for itself). Noticeably, Ms. Patterson's Declaration fails to mention the November 1, 2016 and the November 2, 2016 comments entered on Plaintiffs' DHR. Plaintiffs submit that this glaring omission speaks volumes about the merits of the Defendants' efforts to defend this case. The actions of ASN as described this Section III(B)(2), constitute violations of the FDCPA, violations of NRS Chapter 598.

### 3. *Plaintiffs Discover the Defendants' Violations of the FDCPA in December of 2016.*

#### a. Generally

Plaintiffs did not learn about their FDCPA claims until December of 2016; when they undertook efforts to repair their credit and began to work with a credit repair company. (*See* DJC at

¶ 6 and DCC at 6). Plaintiffs were not aware Defendants had obtained the Inflated Debt. (*See* DJC at ¶ 6 and DCC at 6). They were not aware of any claims arising out of the Inflated Judgment when they filed for bankruptcy. (*See* DJC at ¶ 6 and DCC at 6). Finally, they did not know Defendants continued collection efforts or that ASN continued to report the Inflated Judgment to credit bureaus until November of 2016. (*See* DJC at ¶ 6 and DCC at 6). They only discovered their FDCPA claims when they conferred with Counsel in December of 2016. Afterward, Plaintiffs believed Defendants committed other continuing violations of the FDCPA. (*See* DJC at ¶ 6 and DCC at 6).

Defendants allege Plaintiffs were aware of the Inflated Judgment, and the proceedings leading up to it based on their contentions: (1) Plaintiffs were served with the Summons and Complaint filed by Bowen on behalf of ASN; and (2) Notice of Entry of Judgment was mailed to Plaintiffs (*See* Docket #49 at p. 5 ¶ 13 and p. 6 ¶). However, Plaintiffs deny that they were served or that they received Notice of Entry of Judgment. (*See* DJC at ¶ 5 and DCC at ¶ 5).[4]

Moreover, the purported "Affidavit of Service" referred to in FN 13 on page 5 of Docket #49; and which is attached the Defendants' MSJ as Exhibit "K" does not prove the Defendants were properly served. The Affidavit of Service simply states that the process server attempted to serve the Plaintiffs. However, he did not serve the Plaintiffs. He served the Summons and Complaint for both Plaintiffs on "Jane Doe." Further, the process server summarily concluded that "Jane Doe" was residing at the Plaintiffs' residence. However, the Affidavit of Service provides no basis for this apparent arbitrary conclusion.

In this regard, it is important to note that in their more recent Answers to Plaintiffs Amended Complaint, the Defendants uniformly pleaded that they were "without knowledge or information

---

[4] Moreover, the "Affidavit of Service" referred to in FN 13 on page 5 of Docket #49; and which is attached the Defendants' MSJ as Exhibit "K" does not prove the Defendants were properly served. The Affidavit of Service simply states that the process server attempted to serve the Plaintiffs. However, he did not serve the Plaintiffs. He served the Summons and Complaint for both Plaintiffs on "Jane Doe." Further, the process server summarily concluded that "Jane Doe" was residing at the Plaintiffs' residence. However, the Affidavit of Service provides no basis for this apparent arbitrary conclusion.  In this regard, it is important to note, in their more recent Answers to Plaintiffs Amended Complaint, the Defendants uniformly pleaded that they were "without knowledge or information sufficient to form a belief as to the truth of Plaintiffs claims that they did not discover the Defendants

sufficient to form a belief as to the truth of Plaintiffs claims that they did not discover the Defendants violations until December of 2016; and they denied the allegations on that basis. (*See* Docket # 40 at ¶¶ 18 and 19 and Docket #43, #44, and #46 at ¶¶ 18 and 19). Given the responses to the Amended Complaint, Defendants cannot now genuinely claim that the Plaintiffs discovered their FDCPA claims when a process server served a "Jane Doe" on April 23, 2014. If that is genuinely their claim, they should have straight-forwardly denied the allegations contained ¶¶ 18-19 in their Answers to the Amended Complaint. While Defendants' responses are "inconsistent" at best, the Plaintiffs have resolutely denied that they were served with the Summons and Complaint in Clark County District Court Case No. A-14-699090-C or that they received Notice of Entry of Judgment. (*See* DJC at ¶5).

**b**. **Violations Associated with the 2014 Action/Default Judgment.**

After conferring with counsel, Plaintiffs learned that, in 2014, Defendant ASN, by and through its attorney, Defendant Bowen, filed suit against the Plaintiffs in the Eighth Judicial District Court, Clark County, Nevada in Case No. A-14-699090-C (the "Clark County Case"). (*See* DJC at ¶ 4).    In the Clark County Case, the Defendants alleged that Plaintiffs entered a contract with RCW ("The Contract"). See DVN at ¶¶ 1-5. Utah Law governed the Contract. *Id.* Defendants alleged that Plaintiffs failed to pay the amount owed to RCW under the Contract ("The RCW Debt"). *Id.* Defendants alleged that RCW assigned The RCW Debt to Defendant ASN. *Id.* Defendants ASN engaged Defendant Bowen to file suit against Plaintiffs. *Id.* In support of the Defendant ASN's Application for Default Judgment, Defendants filed a document entitled "Confidential Legal Authorization". *Id.* This Confidential Legal Authorization purported to assign The RCW Debt from Defendant R.C. WILLEY to Defendant ASN. *Id.* According to the Confidential Legal Authorization, the balance of The RCW Debt assigned was $8,286.54. *Id.*

Defendants also filed an Affidavit/Declaration of Custodian of Records signed by Bryn Wicks that states that a contractual collection fee of $4,134.27 (which is equal to 50% of the

principal balance that Defendant R.C. WILLEY assigned to Defendant ASN) (hereinafter the "Actual Contractual Collection Fee"). *Id.* As the Contract is governed by Utah Law, the contractual collection fee could not exceed 40% of the principal balance of The RCW Debt (the "Lawful Collection Fee"). *Id.* Since the Actual Contractual Collection Fee was equal to 50% of the principal balance of The RCW Debt, the Actual Contractual Collection Fee violated the terms of the Contract and Utah law. *Id.*   The actions of the Defendants as described this Section III(B)(3), constitute violations of the FDCPA, violations of NRS Chapter 598, and constitute a conspiracy to violate the FDCPA. [5]

### 4. The Defendants Have Engaged in a Conspiracy to Commit Violations of the FDCPA and NRS Chapter 598.

RCW entered contracts, similar the RCW Contract signed by the Plaintiffs, with many other Nevada residents (the "Nevada Contracts") over a period of several years. (DVN at ¶ 1-5). Many of the Nevada Contracts were governed by Utah law *Id.*.

For several years, RC Willey engaged ASN to handle collections from Nevada residents. (*See* true Deposition Transcript of Michael Boswell ("DTMB") in the similar pending case of *Laforge v. Richland Holdings, Inc. et al, Case No: 2:17-cv-782-APG* attached as Exhibit "6").  Mr. Boswell is an Ex. VP of RCW and is responsible for managing RCW's relationship with ASN. (DTMB at p. 11). Mr. Boswell testified RCW and ASN are parties to a certain collection contract (the "Collection Contract") that provides for collection of amounts owed to RCW under the Nevada Contracts. (*Id.* at p60 and Exhibit 2 thereto). Mr. Boswell admitted knows and has met Paul Liggio and Marge Liggio. *Id. at 73.* He said that he, Paul Liggio, and Marge Liggio agreed that ASN would charge a 50% "Contractual Collection Fee" to consumers who are indebted to RCW pursuant to the

---

[5] The Defendants have drafted nine paragraphs and attached multiple exhibits in support of contentions that relate to the Plaintiffs' original/underlying debt to RCW. Plaintiffs allege that these paragraphs and exhibits are irrelevant to the claims asserted by Plaintiffs in this case. Thus, Plaintiffs are filing a separate motion to strike those paragraphs and exhibits.

Nevada Contracts. *Id.* Boswell, Paul Liggio, and Marge Liggio agreed that ASN would charge the 50% Contractual Collection Fee. *Id.* Mr. Boswell testified that, pursuant to the Collection Contract, RCW regularly "assigns" accounts to ASN for collection. *See e.g. p. 58-59.* ASN is authorized to file suit, if necessary, and act as Plaintiff. *Id.* at 77. Consistent with the Collection Contract, ASN's various counsel allege that Nevada-resident defendants had to pay a "Contractual Collection Fee" of 50%. (DVN ¶ 1-5).

The conduct of RCW employees is consistent with Boswell's and ASN's agreement that the 50% fee would be charged in violation of Utah law. The conduct also evidences that ASN and Bowen committed other violations of the FDCPA.

Former RCW employee, Bryn Wicks testified she signed the Affidavit/Declaration of Custodian of Records filed with ASN's Default Judgment Application (*See* Deposition Transcript of Bryn Wicks ("DTBW") attached at Exhibit "7" at p. 28 (ln. 6 to ln. 25) - p. 33 (ln 1-22)). Yet, she testified she did not know Utah law governed the Nevada Contracts, including the Plaintiffs Contract with RCW.

> Q.· Did you have any knowledge that these
> 15· agreements were governed by Utah law?....
>
> 22· A.· I don't know.· ***I honestly never read the***
> ***23· security agreement thoroughly.***· Even being my having
> 24· an RC Willey account, I never read through all this.
> 25· So no.

(See DTW at p. 20 ln. 8-25) (emphasis added)

Ms. Wicks also testified that she did not know that Utah law limits collection fees to 40%.

> Q.· Okay.· Did you have any understanding that
> 2· Utah law limits collection fees to 40 percent of the
> 3· principal balance?...
> 6· ***THE WITNESS:·No, I don't know about Utah***
> 7· ***laws.***

(DTW p. 21 ln 1-7) (emphasis added) he testified she reported to Mr. Boswell *Id.* at p.17 ln. 1-2. She testified about several versions of the terms and conditions that applied to Nevada Contracts from September 2001, August 2004, and through August of 2010 *Id.* at p.18(ln 6-25) -p.20 (ln 1-6) and Exhibit 2.

As to the Affidavit/Declaration that Ms. Wicks signed in support of ASN's Application for Default Judgment (as filed by Bowen), Ms. Wicks testified, contrary to her representations, she did

not know whether the Contractual Collection Fees were accurate; or whether the terms and

conditions attached to Plaintiffs' purported Contract with RCW were the terms and conditions

applicable when Plaintiffs signed the RCW Agreement. Ms. Wicks stated:

```
Q.· (By Mr. Nelson)· So the account balance,
4· it became delinquent with $8.286.54.· A contractual
5· collection fee of $4,143.27 was added to -- added for
6· a total of $12,429.81.
7· Do you see that?
8· A.·  Okay.· Yes....

11· Q.·  (By Mr. Nelson)· A contractual collection
12· fee of $4,143.27 was added for a total of $12,429.81.
13· A.·  I see that.
14· Q.·  Okay.· How do you know that?
15· A.·  How do I know what?
16· Q.·  That the contract collection fee of that
17· amount was added to the balance.
18· A.·  I --

20· THE WITNESS:· I don't know that.· This
21· isn't my doing.· This appears that would be AcctCorp
22· that added that for their collection efforts.
```

(DTW at p.33 ln 3 – ln 22)(emphasis added).

Ms. Wicks also testified that she routinely did not verify the Contractual Collection Fee:

```
Q.·  You see where it says "I declare under
4· penalty of perjury under the State of Nevada that the
5· foregoing is true and correct"?
6· A.·  Yes.
7· Q.·  Okay.· Why would you sign it if you did
8· not know the contractual collection fee?...

11· THE WITNESS:· I signed it in agreeance as
12· to what I had to verify on RC Willey, then, which
13· would have been the customer's name and the balance
14· we assigned to them.· Their collection fees are their
15· efforts.· So that's why I signed it....

21· Q.·  (By Mr. Nelson)· So you had no direct
22· knowledge of the amount of the contractual collection
23· fee?
24· A.·  I don't --....

1. THE WITNESS:· I don't know what their
2· collection fees -- I don't know what their collection
3· fees are.· I don't know -- I don't remember how --
4· how they do it.· Once we send it to them, they're
5· their own company.· They add their collection fees....

9· Q.·  (By Mr. Nelson)· Since you did not know
10· the amount of the contractual collection fee, did you
11· ever ask anyone whether it was appropriate for you to
```

12

```
12·  sign this?...

14·  THE WITNESS:· It was appropriate to sign
15·  it.· I did these all day long verifying RC Willey,
16·  then, yes, the amount that we assigned to them.
17·  Q.·  (By Mr. Nelson)· But you never verified
18·  the contractual collection fee?
19·  A.·   It wasn't on RC Willey's then.· That's
20·  AcctCorp.

23·  Q.·  (By Mr. Nelson)· I'm asking you a yes or
24·  no question.
25·  THE WITNESS:· No, I never -- no, I never
 1.  worried about their fees. I looked at the RC Willey
 2·  side of it.
```

(*See* DTBW at p. 34 (ln. 3-25) - p. 36 (ln.1-2).

Wicks also testified about the applicable terms and conditions as follows:

```
Q.·  Okay.·  And then pages 18 and 19 --
19·  A.·   Yes.
20·  Q.·   -- do you see those?
21·  A.·   Yes.
22·  Q.·   Do you know whether this was the
23·  Truth-in-Lending Disclosure Statement that was in
24·  effect at the time that --
25·  A.·   I don't know.
```

DTW at p. 37 (ln 18-25).

```
Q.·  (By Mr. Nelson)· Is this the
12·  Truth-in-Lending Disclosure Statement that was in
13·  effect in 2009 when the Carters made their purchase?
14·  A.·   I don't know.
```

DTW at p. 38 (ln. 11-14) (See also Deposition of Pam Irvine attached as Exhibit

Ms. Wick's testimony demonstrates that she reported to Mr. Boswell. She signed Affidavits/Declarations all day; but she never read the terms and conditions. She did not know Utah law applied and that the maximum collection fee in Utah was 40%. Contrary to her Declarations, she never verified the 50% collection fee was accurate and she never confirmed the applicable terms and conditions; and she never questioned whether she should sign the Declarations. Her testimony reveals she was an ideal witness to carry-out RCW and ASN's agreement to charge a 50% collection fee.[6]

---

[6] In Docket #49, Defendants wrongfully assert the contract between RCW and Plaintiffs was changed in 2010. *Id.* at ¶¶ 14, 15, and 17. The governing law provision was purportedly change to provide the Contract was governed by the laws of the state in which [Plaintiffs] reside. This purported change is irrelevant to the defense of this action because it was not attached to the Application for Default Judgment filed by Bowen. One of the primary bases for

With respect to monies collected by ASN, Mr. Bowen testified ASN sends all amounts collected by ASN to RCW on monthly basis (the "Monthly Gross Remit"). *Id.* ASN is not permitted deduct any amounts from the Monthly Gross Remit. Thus, RCW receives all the entire amount of the principal balance, interest, the Contractual Collection Fee, and any attorney's fees awarded to ASN. (DMB at 59-61). RCW then pays ASN 25% of the Monthly Remit.

As is explained in the Legal Argument below, the evidence set forth in this Statement of Facts clearly proves that Defendants violated the FDCPA and NRS Chapter 598; and they engaged in a conspiracy to commit these violations. The Plaintiffs have suffered significant actual damages because of Defendants wrongful conduct. They have suffered economic damages and significant emotional distress damages because of Defendants actions (DJC and DCC at ¶ 7 -8).

### IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to FRCP 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact and must support its assertion with admissible evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). AFTER the moving party has properly supported the motion, the burden shifts to the nonmoving party to prove

Plaintiffs' claim the Application for Default Judgment contained false representations like those admitted by Ms. Wicks above. In fact, ¶¶ 14, 15, and 17 actually support Plaintiffs claims. Plaintiffs are filing a motion to strike the ¶¶ 14, 15, and 17 and the 2010 amendment as irrelevant to the Defendants' defenses; and relevant Plaintiffs claims.

specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the record cannot lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## V. LEGAL ARGUMENT

The Plaintiffs have demonstrated that there are numerous genuine issues of material facts. Moreover, Defendant is not entitled to judgment as a matter of law.

### *A. DEFENDANTS ARGUMENT THAT PLAINTIFF'S CLAIMS ARE LEGALLY BARRED IS WITHOUT MERIT*

Plaintiff's claims, particularly those arising in 2016, are not barred by the statue limitations. Also, Plaintiff's claims, are not barred by judicial estoppel. Moreover, Plaintiff's claims, particularly those arising in 2016, are not subject to claim preclusion because they were not compulsory counterclaims in the state court action.[7] Finally, the court does not lack jurisdiction due to the *Rooker Feldman Doctrine*.

### 1. Plaintiff's Claims Particularly Those Arising In 2016 Are Not Time-Barred.

#### *a. FDCPA*

Defendants contend that Plaintiffs' claims for (1) violations of the FDCPA, and (2) deceptive trade practices are time barred. As to the FDCPA, the FDCPA has a one-year statute of limitations. *Mangum v. Action Collection Serv., Inc*., 575 F.3d 935 (9th Cir. Idaho 2009).

"Debt-Collectors" can commit more than one violation when collecting a debt. *See e.g. Nelson v. Equifax Info. Servs., LLC*, 522 F. Supp. 2d 1222 (C.D. Cal. April 5, 2007) *modified in Nelson v. Equifax Info. Servs. LLC,* 522 F. Supp. 2d 1222. (C.D. Cal. 2007). Yet, Plaintiff may

---

[7] Defendants cite to Judge Mahan's recent decision in *Geraldo v. Richland Holdings.* Plaintiffs respectfully disagree with Judge Mahan's ruling and filed an appeal to the Ninth Circuit. Plaintiffs note that Judge Jones reached a completely different conclusion in *Means v. Intelligent Bus. Solutions, Ltd.*, 2015 U.S. Dist. LEXIS 41932 (D. Nev. Mar. 31, 2015) (See further discussion *infra.* The Defendants respectfully submit the Court should not follow Judge Mahan's decision and that it should follow Judge Jones. Regardless, Plaintiffs assert claims that arose in 2016 that could not have been brought as compulsory counterclaim. The Court alluded to this possibility at the August 23rd hearing (See reference to *Transcript, supra* at p. 3) and arguments to follow.

only collect, and only must prove one statutory violation. *Id.* Plaintiffs Complaint refers to Defendants' continuing violations of the FDCPA, NRS Chapt. 598, and a conspiracy to commit these violation, but Plaintiffs only must prove one violation of the FDCPA in the statutory period.

Here, the Complaint was filed on December 22, 2016. Per the Declaration of Jamie Clark, ASN violated the FDCPA as late as November 2016. (DJC at 9). ASN did so by reporting to credit bureaus there was an open balance owing on Plaintiffs' account; despite the fact Plaintiffs debt had been discharged in bankruptcy. *Id.* Ms. Clark's Declaration proves ASN began reporting inaccurate information to credit bureaus in December 2014 and did so through October of 2016. *Id.*

In April of 2015, ASN finally updated its records to show Plaintiffs debt had been discharged. (DJC at 6-9). Thus, from December 2014 through April 2015, ASN reported inaccurate information to the credit bureaus about Plaintiffs account. *Id.* ASN also moved the Plaintiffs account from a "legal work list" to a "Bankruptcy Worklist." *Id.* However, the balance was not reduced to $0.00. *Id.* Finally, on November 1 and November 2 of 2016, ASN changed the account status to "CAR," and they reduced the account balance to $0.00. *Id.* Also, on November 2, 2016, there are comments stating, *"Bureau Report changed from T to F'* and *"Credit Bureau:134 773-1 removed: Bureau Report= F "(See* Exhibit "1"). *Id.* In the first comment "T" means true, and "F" means false. *Id.* These comments indicate that it was true the account was being reported to the credit bureaus since April 2015; but that it was changed to F so it would be false that the account was being reported to the credit bureaus. *Id*. The second entry confirms that the status was changed to false. *Id.*

This evidence proves from April of 2015 to November 2, 2016, ASN inaccurately reported to credit bureaus that Plaintiffs owed a balance on the debt. (DJC at 9). This was ***two months*** before Plaintiffs filed their Complaint. The continued reporting of inaccurate information to credit bureaus is a violation of the FDCPA. *See e.g. Nelson v. Equifax Info. Servs., LLC; supra.* Plaintiffs have at least one FDCPA claim that accrued in November 2016 and Defendants motion must be denied.

ASN's inaccurate reporting of Plaintiffs discharge, and its wrongful reporting from April of 2015 through November 2, 2016 is part of a continuing course of conduct that began in 2014. In *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1160 (N.D. Cal. 2003) the Court held that the "continuing violation doctrine" applies to the FDCPA:

> The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. **If there is a pattern, then the suit is timely if "the action is filed within one year of the most recent date on which Defendant is alleged to have violated the FDCPA", and the entire course of conduct is at issue.** *Id.* at 1161 (emphasis added)

(internal citations omitted). In *Louie v. Asset Capital Recovery Grp., LLC*, 2015 U.S. Dist. LEXIS 97750 (N.D. Cal. July 27, 2015), the Court found Plaintiff alleged "prior acts related to the litigation in which the opposition brief was filed." The Court added the application of the continuing violation doctrine was warranted because the Debt Collectors actions in judicial proceedings to collect a debt without service of process constituted a continuing course of conduct because: (1) collection litigation requires multiple steps, including obtaining and collecting on a judgment; and (2) these steps take place over an extended period. *Id.*

Plaintiffs complaint and the judicial record demonstrate Defendants engaged in a course of conduct that amounts to a continuing violation; and (2) they have alleged violations within the statute of limitations. Plaintiffs did not learn about their FDCPA claims until December of 2016; when they undertook efforts to repair their credit and began to work with a credit repair company and they conferred with Counsel. (*See* DJC at ¶ 4). Afterward, Plaintiffs believed Defendants committed other continuing violations of the FDCPA. *Id.* Plaintiffs did not learn about the Clark County District Court case because they were never served and never received the Notice of Entry

of Judgment. *Id.* [8] After conferring with counsel, Plaintiffs learned that, in 2014, Defendant ASN, by and through its attorney, Defendant Bowen, filed suit against the Plaintiffs in the Eighth Judicial District Court, Clark County, Nevada in Case No. A-14-699090-C (the "Clark County Case"). (DVN at ¶ 1-5). In the Clark County Case, the Defendants alleged that Plaintiffs entered a contract with RCW ("The Contract"). *Id.* Utah Law governed the Contract. *Id.* Defendants alleged that Plaintiffs failed to pay the amount owed to RCW under the Contract ("The RCW Debt"). *Id.* Defendants alleged that RCW assigned The RCW Debt to Defendant ASN. *Id.* Defendants ASN engaged Defendant Bowen to file suit against Plaintiffs. *Id.* In support of the Defendant ASN's Application for Default Judgment, Defendants filed a document entitled "Confidential Legal Authorization". *Id.* This Confidential Legal Authorization purported to assign The RCW Debt from Defendant R.C. WILLEY to Defendant ASN. *Id.* According to the Confidential Legal Authorization, the balance of The RCW Debt assigned was $8,286.54. *Id.*Defendants also filed an Affidavit/Declaration of Custodian of Records signed by Bryn Wicks that states that a contractual collection fee of $4,134.27 (which is equal to 50% of the principal balance that Defendant R.C. WILLEY assigned to Defendant ASN) (hereinafter the "Actual Contractual Collection Fee"). *Id.* As the Contract is governed by Utah Law, the contractual collection fee could not exceed 40% of the principal balance of The RCW Debt (the "Lawful Collection Fee"). *Id.* Since the Actual Contractual Collection Fee was equal to 50% of the principal balance of The RCW Debt, the Actual Contractual Collection Fee violated the terms of the Contract and Utah law. *Id.* Despite the fact that Plaintiffs filed for bankruptcy and their debt was discharged in December of 2014, ASN delayed updating its records to April of 2015. They continued to keep the account open and

---

[8] Moreover, the purported "Affidavit of Service" referred to in FN 13 on page 5 of Docket #49; and which is attached the Defendants' MSJ as Exhibit "K" does not prove the Defendants were properly served. The Affidavit of Service simply states that the process server attempted to serve the Plaintiffs. However, he did not serve the Plaintiffs. He served the Summons and Complaint for both Plaintiffs on "Jane Doe." Id.

inaccurately reported there was a balance on Plaintiffs account until November of 2016. These facts prove the Defendants engaged in repeated prohibited conduct. ASN and the other Defendants pursued a pattern of conduct against the Plaintiffs and they did not cease their repeated conduct until November 2016. Given this pattern, and since the action was filed within one year of the most recent violation (November 2016) of the FDCPA, the entire course of conduct is at issue and the MSJ must be denied. *Joseph*, 281 F. Supp. 2d at 1161.

### b. Nevada Deceptive Trade Practice Act

Defendants argue Plaintiffs cannot "re-characterize their FDCPA claims as falling under rights created by state law to avoid the time-barred status of their various related causes of action." Defendants cite several cases purportedly supporting their position. These cases are not relevant to the case at bar, and they do not somehow shorten the 4-year limitations period on Plaintiffs Chapt 598 claims[9]. Defendants wrongfully claim that, during argument, the Court limited the statute of limitations on Plaintiffs Chapter 598 claims to one year.[10]

To the contrary, it is well established the FDCPA does not preempt state law claims. The federal Fair Debt Practices Act do not preempt the state claims. *Sanchez v. Client Servs.*, 520 F. Supp. 2d 1149, 1163 (N.D. Cal. 2007). The Sanchez court cited *Joseph v. J.J. Mac Intyre Companies. LLC.*, 238 F. Supp.2d 1158, 1169-1170 (N.D. Cal. 2002) where the Court held:

> *Under 15 U.S.C, § 1692n, the FDCPA does not preempt state laws unless and only to the extent 'those laws are inconsistent with any provisions of this subchapter.' Importantly, a state law is not inconsistent with the FDCPA 'if the protection such law affords any consumer is greater than the protection provided by this subchapter.' Accordingly, only state laws which make it impossible to comply with both state and federal law, such as where state law requires conduct prohibited by federal law, are preempted "*

---

[9] *Clark v. Musick*, 623 F.2d 89, 92 (9th Cir. 1980) has been overruled. *See Lujan v. Ford*, 2016 U.S. Dist. LEXIS 75686, 2016 WL 3287369 (D. Ore. 2016). The facts in *Vigil v.Miller*, 17 F. App'x 657, 657 (9th Cir. 2001) are not analogous to Plaintiffs case and the opinion is not appropriate for publication and cannot be cited to in this circuit. The holding in *Smith v. Cmty. Lending, Inc.*, 773 F. Supp.2d 941, 945 (D. Nev. 2011) is irrelevant to the case at bar.

[10] The Court did not make any order that limited the statute of limitations on Plaintiffs' Chapter 598. The sections of the transcript of the August 23rd hearing referred to by Defendants are not offered in the proper context. Plaintiff cannot cite the Court to any portion of the transcript where the Court even discussed the statute of limitations applicable to Plaintiffs' Chapter 598 case..

Thus, the FDCPA does not affect the statute of limitations applicable to NRS Chapt. 598 claims.

NRS 11.190 (4)(d) expressly provides that an action relating to a deceptive trade practice in violation of NRS 598.0903 to 598.0999 must be commenced within four years. Plaintiffs filed their Complaint in December of 2016. Thus, any claims arising after December of 2012 are not barred. Nevertheless, even if a one-year statute of limitations has attached to Plaintiffs claim, the Plaintiffs have alleged conduct that occurred within one year of the statute of limitations. Plaintiff has alleged FDCPA violations that arose in November of 2016. Plaintiffs' claims arose with 2 months before Plaintiffs filed their complaint and are not barred by the statute of limitations (the "2016 Claims". Moreover, the NRS Claims involve a continuing pattern and course of conduct that began in 2014. Given this pattern, Plaintiffs claims are timely because they filed within one year of the most recent violation in November of 2016. Accordingly, the Defendants the entire course of conduct is at issue. *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003) and Defendants MSJ must be denied.

### 2. Plaintiffs' Claims From November of 2016 and Earlier Are Not Judicially Estopped.

Judicial Estoppel is an equitable rule that the Court may apply within its discretion to protect the integrity of the judicial system. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) It's purpose is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions [per] the exigencies of the moment." *Id*. at 749-50. The Court considers several factors in deciding whether to apply the rule: (1) whether a party's later position is "clearly inconsistent" with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) whether the party seeking to assert an inconsistent

position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750-51. Yet, Courts caution these factors are not considered "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.*

Plaintiffs November 2016 claims are not subject to judicial estoppel because the Plaintiffs have never asserted these claims in another case and they have not attempted to persuade a court, other than this court, about these claims. The Court forewarned the Defendants that judicial estoppel would not apply to claims like Plaintiffs' November 2016 claims:

```
THE COURT: A debt that's collectible. Why wouldn't I
not interpret the facts to be that the conduct that would be the
basis of the FDCPA violation is, which is I think what's
alleged, conduct related to collecting against the default
judgment. There would be no in that case preclusion, there
would be no estoppel, and there would have been no case to have
been claimed in the bankruptcy, correct? (emphasis added)
(See Transcript at pp. 14 (ln. 9-25)
```

Thus, it is clear that Defendants November 2016 claims are not judicially estopped.

In their Docket #14 the Plaintiffs showed their claims were not judicially estopped. Plaintiff incorporates those arguments herein by reference. Plaintiffs cited to *Ah Quin v. County of Kauai DOT*, 733 F.3d 267 (9th Cir. Haw. 2013), where the Court discussed application of the doctrine to bankruptcy matters. *Id.* at 271. The Court did not apply judicial estoppel because there was substantial evidence indicating: (1) Plaintiffs did not disclose their claims in Schedule "B"  due to inadvertence or mistake; and (2) this evidence indicates Plaintiff can meet the most stringent  standards applied by the 9th Circuit and other circuit courts. Also, there were allegations and evidence that  showed Plaintiffs did not know about their current claims when they filed for bankruptcy; and they did not have a motive to conceal their claims. In their Declarations, the Plaintiffs in this case also prove that they did not know about their claims when they filed for bankruptcy; and they did not have a motive to conceal their claims. Thus, their claims that arose in 2014 (the "2014 Claims") are not judicially estopped.

### 3. Plaintiffs 2016 Claims and Their Other Claims Are Not Barred By Issue Preclusion

Defendants argue that under Nevada law Plaintiff's claims are precluded by principles of "Issue Preclusion and "Claim Preclusion" and they refer to *Clark v. Clark*, 80 Nev. 52, 55-56 (1964). Defendants asserts "Claim Preclusion" is a rule that precludes the parties from relitigating what is substantially the same cause of action. *Id*. Defendants assert that Issue Preclusion may apply to bar certain causes of action; even if the causes of action are substantially different. *Id*. Defendants assert if the same fact issue is presented in the first case, cannot be litigated in the second case. Defendants cite NRCP 13(a) and assert Plaintiff's current claims  were compulsory counterclaims that had to be litigated in the collection matter brought by Defendants  against Plaintiff. Issue Preclusion does not bar Plaintiffs 2016 Claims because they did not arise until November of 2016 and they could not have been asserted in 2014. The Court warned Defendants that conduct related to collecting against the default judgment would not be subject to collateral estoppel or case preclusion, and there would have been no case to be claimed in the bankruptcy. *Transcript* at __.

In Docket #14 Plaintiffs demonstrated their 2014 Claims were not precluded. Plaintiff incorporates those arguments herein by reference. Plaintiffs noted many Courts have held FDCPA claims are not "compulsory counterclaims" and cited to *Mostin v.GL Recovery, LLC*, 2010 U.S. Dist. LEXIS 21931 (C.D. Cal. Feb. 19, 2010). The Court held a FDCPA counterclaim was permissive and cited to numerous cases that agreed. *Id.* at pp. *6-8.[11] The Plaintiff also noted in

---

[11] The Court cited to numerous cases where Courts have held that FDCPA claims are permissive counterclaims *See, e.g., Randall v. Nelson & Kennard, No. CV-09-387-PHX-LOA, 2009 U.S. Dist. LEXIS 81896, 2009 WL 2710141 at *4 (D. Ariz, Aug. 25, 2009); Avery v. First Resolution Mgmt. Corp., No. 06-1812-HA, 2007 U.S. Dist. LEXIS 39260, at *15 (D. Or. May 25,2007), aff'd 561 F.3d 998 (9th Cir. 2009); Barcena v. Tam Fin. Corp., EP- 07-CA- 0020-KC, 2007 U.S. Dist. LEXIS 38674, at *8 n.2 (W.D. Tex. May 8, 2007); Bakewell v. Fed. Fin. Group, Inc., NO. 1:04-CV-3538-JOF, 2006 U.S. Dist. LEXIS 23073, 2006 WL 749807, at *2 (N.D. Ga. Mar. 21, 2006); Sparrow v. Mazda Am. Credit, 385 F.Supp.2d 1063, 1069 (E.D. Cal. 2005); Campos v. W. Dental Servs., Inc., 404 F.Supp.2d 1164, 1168-69 (N.D. Cal. 2005); Moore v. Old Canal Fin. Corp., No. CV05- 205-S-EJL, 2006 U.S. Dist. LEXIS 21700, 2006 WL 851114, at *3 (D. Idaho Mar. 292006); Hart v. Clayton-Parker & Assocs., 869 F. Supp. 774, 777 (D. Ariz. 1994).*

The *Mostin* Court was particularly persuaded by *Peterson;* which explained:

*While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another. Although there is some overlap of issues... the suit on the debt brought in state court is not logically related to the federal action initiated to enforce federal policy regulating the practices for the collection of such debts. Id.*

*Means v. Intelligent Bus. Solutions, Ltd.*, 2015 U.S. Dist. LEXIS 41932 (D. Nev. 2015)

Judge Jones reached a completely different conclusion than Judge Mahan in *Guzman, supra.* Judge Jones noted that "Plaintiff has not sought any declaration from this Court that would countermand or undermine the judgment of the state court as to the sole claim brought in that court for breach of contract." *Id.* He also noted Plaintiff did not ask the Court "to review the state court ruling…" *Id.* The Court noted Plaintiff did not seek any form of relief that "would conflict in any way with the state court judgment entered against him for breach of contract." *Id.* The Court found the FDCPA action was   based on a federal statute "prohibiting certain collection practices." *Id.* The Court concluded that  "nothing about the state court judgment precludes Plaintiff from asserting a FDCPA claim based on Defendant's attempt to collect $2501.13 in collection costs…." *Id.*   Plaintiff respectfully submits that Judge Jones' opinion and the other authorities cited above are more persuasive and the Court should follow those authorities and deny Defendants' motion.

### 4. Plaintiffs 2016 Claims and Its 2014 Claims Are Not a Defacto Appeal and Are Not Barred by the Rooker-Feldman Doctrine.

Defendants claim that  Plaintiffs' argument as to damages in the State Court Action should have been raised in those proceedings and that the *Rooker–Feldman* doctrine prohibits Plaintiffs from raising a  collateral challenge to a final state court judgment in this subsequent federal litigation.

Plaintiffs 2016 claims are not subject to the *Rooker–Feldman* doctrine because the 2016 Claims could not have been asserted in 2014. Plaintiffs 2016 claims have never been considered by the state court and they do not raise a challenge to the judgment Defendants obtained in 2014.

In Docket #14 Plaintiffs demonstrated their 2014 Claims were not subject to the *Rooker Feldman Doctrine.* Plaintiff incorporates those arguments herein. Plaintiff cited to *Garduno v. Autovest LLC*, 143 F. Supp. 3d 923 (D. Ariz. 2015), where the Court provided a persuasive explanation of the development of the *Rooker Feldman* doctrine and its potential application to FDCPA claims. The Court noted, *"[t]he Rooker—Feldman  doctrine forbids a losing party in state*

*court from filing suit in federal district court complaining of an   injury  caused  by  a  state  court judgment,  and  seeking  federal  court  review  and  rejection  of  that  judgment." Id.* at 926 (citing *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). The Court stated  that the application of this "general rule" requires two-steps. *Id.* In the first step, the court must decide  if any of the claims in the federal case is "a forbidden de facto appeal of a state court decision." *Id.*  (citing *Bell, supra.*). If one of Plaintiff's claims is not a "de facto appeal," then *Rooker-Feldman* does  not  apply  and  the case may proceed. *Id.* The Court determined Plaintiffs FDCPA claims were not a defacto appeal because they were not "a direct attempt to complain of an erroneous decision by the state court. *Id.* at 927. The  *Garduno* Court noted "for purposes of Plaintiffs' FDCPA claim, the state court judgment is largely irrelevant." *Id.* Plaintiff alleged "that the FDCPA violation occurred when Defendants filed their state court lawsuit. *Id.* The Court added "the fact that judgment was eventually entered in that case does not directly impact the FDCPA claim." *Id.* The Court emphasized "Plaintiffs'   FDCPA claim is not complaining about the state court judgment." *Id.* Plaintiff's FDCPA claim was  based on "an allegedly illegal act" by Defendants. *Id.* The Court determined Plaintiffs "were not  seeking relief from the state court judgment." *Id.* Plaintiffs' complaint made it very clear "that the   state-court judgment [is] valid" and they are not "attacking the [state court] judgment" nor are they "trying to set it aside." *Id.* Plaintiffs admitted the state court judgment stands whether or not Plaintiffs prevailed on their FDCPA claim. *Id.* The Court held the "fact Plaintiffs do not seek to undo the state court judgment strongly supports finding the *Rooker-Feldman* doctrine inapplicable. *Id.* The Court found Plaintiffs did not seek relief from the state court  judgment, their FDCPA claim was not a de facto appeal, and, therefore, the *Rooker-Feldman* doctrine did not bar the claim." *Id.* [12]

---

[12] Also, in the similar Guzman cased cited by Defendants, Judge Mahan determined that the Plaintiffs' claims were not barred by Rooker–Feldman.  Judge Mahan relied on Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S.

Defendants' argument that its MSJ must be granted due to *Rooker–Feldman* must be denied.

## B. DEFENDANTS' CLAIM THAT PLAINTIFFS' CANNOT PROVE ANY OF THE CLAIMS ASSERTED IN THE AMENDED COMPLAINT IS WITHOUT MERIT.

The Defendants erroneously state that the Court has "already ordered that the conduct forming the basis of its claims must arise within the year preceding the filing of this action." At the hearing the Court focused on Plaintiffs allegation at Docket #1 ¶ 38 which states "Within the past year, Defendants, who are debt collectors under the FDCPA, committed several violations; " and allowed Plaintiffs to Amend their Complaint to allege specific conduct that occurred within a year of December 22, 2016 that support their claim Defendants violated the FDCPA within that year. Plaintiffs had not specified such conduct. Specifically, the Court stated, in relevant part:

> THE COURT: ....I'm going to grant the motion without prejudice. I think that those claims don't provide specific enough information as to what is the date in which the conduct occurred or dates and enough information as it relates to the nature of the conduct and the subsections under the federal and state statutes that are being pursued. However, I think that the plaintiff has alleged enough that they have a right to be able to amend the complaint as it relates to those two claims.... (See Transcript at pp. 23 (ln. 13-24)

Plaintiffs' Amended Complaint complies with the Court's order. Importantly, the order does restrict Plaintiff from arguing the conduct that occurred in 2016 was part of a continuing violation that would put Defendants entire conduct at issue. Moreover, there is nothing in the Courts order, as stated above, that shortens the statute of limitations applicable to Plaintiffs' Chapt. 598 Claims.

### 1. Plaintiff's FDCPA Claim Contains Specific Information About the Defendants Conduct/the Nature of the Conduct, the Dates the Conduct Occurred, and the Subsections under the Federal Statutes that are Being Pursued.

---

280, 284 (2005) and noted that Rooker–Feldman is not "triggered simply by the entry of judgment in state court." Id. Judge Mahan went on to opine: While the instant case deals with the same loan as the state court action, the substance of the complaint is not contingent on plaintiffs' failure to pay their loan. (ECF No. 1). Instead, the court has jurisdiction over the FDCPA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims [the NRS Chapt. 598 Claims], which embrace the legality of additional charges that defendants assessed to the plaintiffs. (ECF No. 1).....

While the instant case deals with the same loan as the state court action, the substance of the complaint is not contingent on plaintiffs' failure to pay their loan. (ECF No. 1). Instead, the court has jurisdiction over the FDCPA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims [the NRS Chapt. 598 Claims], which embrace the legality of additional charges that defendants assessed to the plaintiffs. (ECF No. 1).....

The Amended Complaint clearly satisfies the requirements of the Court's order. From ¶¶ 9 through 17, Plaintiffs **specifically allege** from December of 2014 ***through November 2, 2016,*** ASN continuously and inaccurately reported there was a balance on Plaintiffs account, even though the balance was discharged in bankruptcy in 2014. (Docket # 40 at ¶¶ 9 through 17).  Paragraph 12 specifically claims *in December of 2014, ASN continued to report inaccurate derogatory information about the Default Judgment to the credit bureaus by: (1) failing to report that the Inflated Default Judgment had been discharged in Bankruptcy; and (2) reporting that the inaccurate and Inflated Default Judgment amount was still owed to the Defendants.* Paragraph 13 specifically alleges that in *February of 2015, ASN was continuing with efforts to collect the Default Judgment as the Debtor History Report states, "Changed collector from 264 to 244." Moreover, ASN continued to report inaccurate derogatory information about the Default Judgment to the credit bureaus by: (1) failing to report that the Inflated Default Judgment had been discharged in Bankruptcy; and (2) reporting that the inaccurate Inflated Default Judgment amount was still owed to the Defendants.* Paragraph 14 specifically describes collection work undertaken by ASN in February of 2015. Paragraph 15 specifically alleges *ASN continued to report inaccurate derogatory information about the Default Judgment **throughout 2015.*** Paragraph 15 also specifically describe that ASN's reporting *was inaccurate and derogatory because ASN: (1) failed to report that the Inflated Default Judgment had been discharged in Bankruptcy; and (2) reported that the inaccurate and Inflated Default Judgment amount was still owed to the Defendants.* Paragraph 15 specifically alleges...*the continued inaccurate derogatory credit reporting, clearly indicate that ASN was continuing with its efforts to collect on the Default Judgment throughout 2015; despite the fact the Inflated Default Judgment was discharged pursuant to the Discharge Order in December of 2014.* Paragraphs 16 and 17 specifically allege inaccurate reporting continued until November 2, 2016. Paragraph 17 specifically describes how ASN's Debtor History Report proves

the inaccurate reporting finally stopped, when on November 2nd, ASN took action to stop reporting inaccurate derogatory information about the Default Judgment to the Credit Bureaus. This is evidenced by the comments that state: Bureau Report changed from T to F ("T" means true and "F" means false). Credit Bureau: 134773-1 removed; Bureau Report = F. Also in compliance with the Court's order, Plaintiff specifically alleges that Plaintiffs conduct violated 1692e, 1692e(2), 1692e(8), 1692f, 1692f(1), and 1692(g) (See ¶¶ 41-44) (See DJC, supra). Plaintiff contends these allegations provide sufficient notice that Plaintiffs contend that ASN's conduct evidences from December 2014 until November 2, 2016 it was attempting to collect the Inflated Debt for purposes of the FDCPA under §1692d and 1692(e)(8); which prohibits debt collectors from communicating or threatening to communicate credit information which they knew or should have known was false. *See e.g. Nelson v. Equifax Info. Servs., LLC*, *supra.* Also, the Declaration of Jamie Clark, a former ASN employee, proves Plaintiffs claims. Plaintiff has fully satisfied the Court's order allowing Plaintiff to Amend; and is set forth above, and has substantial evidence in support thereof.

   **2. Plaintiffs Chapter 598 Claims Contain Specific Information About the Defendants Conduct/the Nature of the Conduct, the Dates the Conduct Occurred, and the Subsections under the Federal Statutes that are Being Pursued.**

The Amended Complaint clearly satisfies the requirements of the Court's order. In Plaintiffs Second Claim for Relief, Plaintiff incorporates all specific dates and other allegations made prior to ¶ 46. Moreover, in ***Paragraphs 50, 51, and 52, Plaintiffs have alleged specific conduct relating to their Chapter 598 Claims***, the dates alleged in earlier paragraphs are expressly incorporated, and the Plaintiffs have identified the specific sections of Chapter 598 applicable to their claims. Plaintiff expressly allege that the 2016 Violations and the earlier violations also amount to a violation of ***NRS 598.092(8)***, which defines a deceptive trade practice as knowingly misrepresenting the legal rights, obligations or remedies of a party to a transaction. ASN violated this section when it knowingly misrepresented Plaintiffs obligations to credit bureaus through

November of 2016. Further, *NRS 598.0923(3)* defines a deceptive trade practice as knowingly violating a state or federal statute or regulation relating to the sale or lease of goods or services. During providing the debt collection services to RC Willey, ASN violated the FDCPA wrongfully reported inaccurate information to credit bureaus about the balance owed by Plaintiffs, even though the balance of the debt was discharged in bankruptcy in December 2014. ASN's wrongful reporting continued until November 2016. *NRS 598.0915(15)* defines a deceptive trade practice as knowingly making a false representation in a transaction. During its transactions with Plaintiffs and RC Willey, ASN knowingly made false representations in relation to the terms of contractual transactions between the Plaintiffs and RC Willey when they wrongfully reported to credit bureaus, until November 2016, that Plaintiffs still owed money to RC Willey even though the debt to RC Willey had been discharged in bankruptcy in December of 2014. Plaintiff has produced substantial evidence to support these claims and Defendants MSJ must be denied. **[13]**

Defendants contention that the Court need only consider the conduct alleged after December 22, 2015 is without merit. The 2016 Violation is the latest violation in a pattern of conduct that started in 2014 and Defendants entire conduct is at issue. The MSJ must be denied.

**3. Defendants Contention that Plaintiffs Cannot Demonstrate a Triable Issue of Material Fact on Their FDCPA Claim is Without Merit.**

A. Generally – Plaintiffs incorporate all the evidence referred to in their Statement of Facts in response to Defendants contention. They provide specific, non-exclusive examples below.

B. 1692 (e)(2) -The Plaintiffs have produced substantial evidence to support their FDCPA Claims. Defendants violated 1692(e) on multiple occasions. For example, the 2016 Violations described in the Declaration of Jamie Clark, a former ASN employee demonstrate that from December 2014 through 2016, ASN misrepresented the character, amount, and legal status of

---

**[13]** Plaintiff has alleged specific details as to the conspiracy between RC Willey, ASN, and Bowen. These allegations specify the parties the agreement to conspire, the parties involved in the conspiracy, conduct taken in furtherance of the conspiracy, and the objective of the conspiracy. Plaintiffs have also produced substantial evidence of the conspiracy.

Plaintiffs debt to credit bureaus. The Deposition of Bryn Wicks demonstrates that she misrepresented, subject to the penalty of perjury, that the contents her Declaration were accurate. Bowen filed this Declaration with the Court in support of the Inflated Default Judgment. Wicks testified that she did not verify that the contract collection fee was accurate and she admitted that she did not know whether the terms and conditions attached to her Declaration were the applicable terms and conditions. The Declaration of Steven Boswell attached to Defendants MSJ as Exhibit C, clearly demonstrates that the terms and conditions attached to her Declaration were not the applicable terms and conditions because Boswell contends that new terms and conditions, with a new governing law provision were part of Plaintiffs contract.  The Defendant misrepresented to the court the contractual contract fee of 50% was lawful; despite the fact Ms. Wick's Declaration proved the contract was governed by Utah law. Utah law limits the collection fee to 40%. *See Utah Code 12-1-11 (3)(b)*. Thus, Defendants are not entitled to summary judgment on this section.

C. 1692e(8): Clark's Declaration proves from December 2014 to November 2016, Defendants continuously and knowingly communicated false information to the credit bureaus that indicated there was a balance on Plaintiffs account, even though the account was discharged in bankruptcy. Defendants are not entitled to summary judgment on this section. It should also be noted that the conduct described in Ms. Clark's Declaration also violates 1692d.

D. 1692f(1): The Application for Default Judgment filed with the Court, violated 1692f(1) as ASN charged a 50% collection fee in violation of the contract and Utah law. *See Richland Holdings v. Carter, Case No. A-14-699090-C, Application for Default Judgment attached to Defendants Motion for Summary Judgment as Exhibit H*. Defendants unpersuasively attempt to argue the terms of the contract changed. However, Defendants did not present those terms to the Court and they are bound by the terms the swore were accurate, under the penalty of perjury.

E. 1692(g): Defendants claim they sent a Debt Validation letter to the Plaintiffs on

March 11, 2014. (See Exhibit M to Defendants Motion for Summary Judgment). Plaintiffs deny this

claim and say so in their Declarations. The competing Declarations clearly raise an issue of fact for

trial. (See *Gatter v. Richland Holdings, Inc.,* 2016 U.S. Dist. LEXIS 47194).

**4. Defendants Are Not Entitled to Summary Judgment on Plaintiffs Chapter 598 Claims**

Defendants claim *Archer v. Bank of Am. Corp.*, No. 2:11—CV-1264 JCM (RJJ), 2011 WL

6752562, at *2 (D. Nev. Dec. 23, 2011) is relevant to this case is without merit. *Archer* and other cases

following it relate to mortgage transactions and real estate. The Defendants reference to Attorney

General's web page is not persuasive. The page contains no analysis and conflicts with the plain

language of the statute. Also, NRS Chapt. 598 has provisions that are enforceable by the Attorney

General office and other provisions that are enforceable by individuals. It is reasonable to assume the

Attorney General is referring to his own duties per Chapt. 598 and that a "web page" should not be

used as evidence to contradict clear language providing individual remedies.

**A. Defendants violated NRS § 598.092(8)** The 2016 Violations demonstrate Defendants

violated this section, which defines a deceptive trade practice as knowingly misrepresenting the legal

rights, obligations or remedies of a party to a transaction. ASN violated this section when it knowingly

misrepresented Plaintiffs obligations to credit bureaus through November of 2016 when they

wrongfully reported to credit bureaus, as late as November 2016, that Plaintiffs still owed money to

RC Willey even though the debt to RC Willey had been discharged in bankruptcy in December of 2014.

The claims described above arose with 1-2 months before Plaintiffs filed their complaint in December

of 2016 and are not barred by the statute of limitations. Moreover, as is described above, the claims

described above constitutes a continuing pattern and course of conduct as that began in 2014. Given

this pattern, Plaintiffs claims are timely because they filed within one year of the most recent violation

in November of 2016. Accordingly, the Defendants the entire course of conduct is at issue. *Joseph v.*

*J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156 (N.D. Cal. 2003).

**B. Defendants violated NRS § 598.023(3):** NRS 598.0923(3) defines a deceptive trade practice as knowingly violating a state or federal statute or regulation relating to the sale or lease of goods or services. During providing the debt collection services to RC Willey, ASN violated the FDCPA wrongfully reporting inaccurate information to credit bureaus about the balance owed on the Plaintiffs account, even though the balance of the debt was discharged in bankruptcy in December 2014. ASN's wrongful reporting continued until November 2016. It is important to note that the Defendants did not address this claims in their MSJ.

**VI. CONCLUSION**

For all the foregoing reasons, Defendants MSJ must be denied.


DATED this 31st of October, 2017

THE LAW OFFICE OF VERNON NELSON

By:  _____*/s/Vernon Nelson*_____
VERNON NELSON, ESQ.
Nevada Bar No.: 6434
MARGARET FOLEY, ESQ.
Nevada Bar No.: 7703
JOHN SKALAK, ESQ.
Nevada Bar No.: 4385
9480 S. Eastern Avenue, Suite 252
Las Vegas, NV   89123
Tel:  702-476-2500
Fax:  702-476-2788
E-Mail:  vnelson@nelsonlawfirmlv.com
*Attorneys for Plaintiffs*
*John and Christine Carter*