UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN CARTER, *et al.*, | Case No. 2:16-cv-02967-RFB-VCF |
| Plaintiffs, | ORDER |
| v. | |
| RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHER NEVADA, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Before the Court is Defendants Richland Holdings, Inc. d/b/a/ AcctCorp of Southern Nevada ("AcctCorp"), RC Willey aka RC Willey Financial Services ("RC Willey"), and Randall Corporation d/b/a Bowen Law Offices' ("Bowen") (collectively, "Defendants") Motion for Summary Judgment ("Motion"). ECF No. 49. Defendants also move for leave to file a supplement to the Motion. ECF No. 66. Plaintiffs John Carter ("John Carter") and Christine Carter ("Christine Carter") (collectively, "Plaintiffs") move to file a sur-reply or supplement to their Opposition. ECF No. 63. The Court held a hearing regarding the pending motions on August 23, 2018. ECF No. 69.

## II. FACTUAL BACKGROUND

The Court incorporates by reference its factual findings made on the record at the hearing on August 23, 2018. The Court summarizes and supplements those findings here.

### a. Undisputed Facts

John Carter opened a credit account with RC Willey on May 5, 2004. He added Christine

Carter to the same credit account on July 26, 2004. The credit account was governed by the Revolving Security Agreement ("Agreement"). The Agreement allowed RC Willey to change the terms after giving Plaintiffs the "minimum notice required by law" and allowed the changes to apply to any existing account balance. Plaintiffs also completed a Credit Application and Security Agreement to update the existing credit account on May 27, 2009.

On August 1, 2010, RC Willey changed the terms of the Agreement. In the changed terms, RC Willey provided that the state in which Plaintiffs reside—Nevada—would govern the interpretation or enforcement of the Agreement in the event that Defendants initiated any legal action associated with the Agreement against Plaintiffs. RC Willey also included a term that required Plaintiffs to "pay all of [RC Willey's] costs of collection, including, but not limited to, a collection agency fee assessed by a collection agency and/or reasonable attorney fees, with or without suit, together with all unpaid interest and court costs." Plaintiffs were sent the revised terms of the Agreement at least forty-five days before the terms became effective. Plaintiffs continued to charge the credit account until May 10, 2011.

Plaintiffs became delinquent on the credit account on March 11, 2014. The account balance was then $8,286.54. A contractual collection fee of $4,143.27 (50% of the account balance) was added to the owed balance, bringing the total owed to $12,429.81. RC Willey then assigned the account to AcctCorp.

AcctCorp filed an action ("State Action") to collect the delinquent balance from Plaintiffs in state court on April 11, 2014. Plaintiffs were allegedly served under Nevada Rule of Civil Procedure 4 on April 23, 2014. A process server served Jane Doe, a female of suitable age and discretion that resided at the residence but refused to give her full name. Bowen served as AcctCorp counsel of record in the State Action. To assist in recovering the amount owed, RC Willey submitted an Affidavit of Custodian of Records to authenticate the documents on which AcctCorp relied.

After Plaintiffs failed to participate in the State Action, AcctCorp filed an Application for Default Judgment on July 18, 2014, seeking the account balance of $12,429.81. The state court granted AcctCorp's Application for Default Judgment and awarded the $12,429.81 account

balance plus $800.96 in interest, $592.50 in costs, and $750.00 in attorney fees. The Notice of Entry of Default was filed on August 12, 2014 and mailed to Plaintiffs' residence.

Plaintiffs then filed an action ("Bankruptcy Action") for Chapter 7 Bankruptcy on September 19, 2014. In their bankruptcy filings, Plaintiffs failed to identify Defendants as creditors holding unsecured priority claims and listed only RC Willey—but not AcctCorp—as a creditor holding unsecured nonpriority claims. Plaintiffs declared under penalty of perjury that the list of creditors was complete and correct during the Bankruptcy Action. They also "assume[d] all responsibility for errors and omissions."

Although Plaintiffs never amended their list of creditors to include AcctCorp, Plaintiffs' counsel in the Bankruptcy Action filed a Notice of the Pending Bankruptcy in the State Action on October 20, 2014. AcctCorp faxed a Notice of Release of Garnishment to Plaintiffs' respective employers and the City Constable the day after receiving the Notice of the Pending Bankruptcy. On December 24, 2014, an order discharging debtors was entered on December 24, 2014 ("Discharge Order"). The Discharge Order discharged Plaintiffs' obligation to pay any amounts owed under the Default Judgment.

In late 2015, Plaintiffs attempted to apply for a credit card with Discover but were denied. Plaintiffs were also denied a favorable rate related to an application to refinance their car around the same time. Thus, Plaintiffs were required to make payments at a higher interest rate that equated to approximately $100 more per month for the duration of a three-year term.

### b. Disputed Material Facts

The parties first dispute the accuracy of the Default Judgment. Plaintiffs maintain that the amount awarded was inflated because Utah law should have governed the award based on the version of the Agreement AcctCorp submitted with its Application for Default Judgment. Defendants aver that the Agreement was governed by Nevada law under the changes made to the Agreement in August 2010—nearly four years prior to the initiation of the State Action.

The parties also dispute if any collection actions were taken by Defendants after the entry of the Discharge Order. Plaintiffs maintain that changes in AcctCorp's internal recording systems show that Defendants continued to report the balance owed under the Default Judgment even after

the Discharge Order. Specifically, Plaintiffs point to multiple code changes in AcctCorp's Debtor History Report ("DHR") for Plaintiffs' credit account. The code changes occurred after the Discharge Order, which was not reflected in the DHR until April 5, 2015.

Finally, the parties dispute the date on which Plaintiffs discovered the alleged statutory violations on which their claims are premised. Defendants state Plaintiffs knew or should have known about State Action and the related steps taken to effectuate collection likely by April 21, 2014—the date Plaintiffs were served in the State Action—but no later than October 20, 2014—the date Plaintiffs' Bankruptcy counsel filed the Notice of Bankruptcy in the State Action. But Plaintiffs aver that the service was defective since it was served on a "Jane Doe" at the residence, who may not have resided at the residence. Plaintiffs state that they did not learn about the alleged statutory violations until after they began working with a credit repair company in December 2016.

### III.    PROCEDURAL BACKGROUND

Plaintiffs sued Defendants on December 22, 2016. ECF No. 1. Plaintiffs filed an Amended Complaint on September 19, 2017, asserting claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Chapter 598 of the Nevada Revised Statute ("NRS") for Deceptive Trade Practices Act ("NVDTPA"); and civil conspiracy.[1] ECF No. 40.

Defendants moved for summary judgment on October 10, 2017. ECF No. 49; see also ECF No. 50, Errata to Motion for Summary Judgment. Plaintiffs filed an opposition, and Defendants filed a reply. ECF Nos. 51, 55. Defendants then moved to produce specific documents on November 8, 2017. ECF No. 54. After the Motion to Produce Documents was fully briefed, the Court granted Defendants' request on January 5, 2017. ECF Nos. 57–58, 62. Defendants filed for leave to supplement their Motion for Summary Judgment based on the produced documents. ECF No. 66. No opposition was filed. But Plaintiffs have filed for leave to supplement their Opposition to the Motion for Summary Judgment or for leave to file a sur-reply. ECF No. 63. Defendants
/ / /

---

[1] Plaintiffs assert their FDCPA claims against Defendants AcctCorp and Bowen only. The remaining claims are asserted against all Defendants.

- 4 -

opposed Plaintiffs' motion, and Plaintiffs replied. ECF Nos. 64, 65. The Court heard oral argument on the Motion for Summary Judgment on August 23, 2018. ECF No. 69.

**III.   LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**IV.   DISCUSSION**

**A.  Statute of Limitations**

The Court must first resolve the parties' arguments regarding the applicable statute of limitations. A one-year statute of limitations governs actions brought under the FDCPA. 15 U.S.C. § 1692k(d). Generally, "a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 (9th Cir. 2009) (internal quotations omitted). Thus, "[a]n action to enforce any liability created by [the FDCPA] may be brought … within one year from the date on which the violation occurs." Id. Plaintiffs argue the statute of limitations was tolled in this matter by the discovery rule or by the continuing violation doctrine.

The discovery rule applies to FDCPA claims. Id. at 941. The statute of limitations may therefore be tolled if a plaintiff claiming FDCPA violations shows that he or she could not have reasonably become aware of the violations at an earlier time. Tourgeman v. Collins Fin. Servs., 755 F.3d 1109, 1118 n.5 (9th Cir. 2014).

Plaintiffs argue the statute of limitations period did not begin to run until November or December of 2016, the time at which they state to have learned about the State Action and Defendants' collection efforts. The Court disagrees. Plaintiffs knew or should have known about the collection efforts by no later than April 23, 2014. Plaintiffs were served in the State Action on April 23, 2014. The process server served a Jane Doe, who refused to give her full name but was of suitable age and discretion, at Plaintiffs' residence. The process server also attested that Jane Doe resided at the Plaintiffs' residence. Plaintiffs urge the Court to reject the process server's statement that Jane Doe resided at the residence but offer no basis—evidentiary or legal—to do so. Thus, the Court finds that Plaintiffs cannot rely on the discovery rule to assert claims falling outside the one-year statute of limitations.[2]

The continuing violation doctrine might also apply to FDCPA claims. See McNair v. Maxwell & Morgan PC, 728 F. App'x 751, 752 (9th Cir. 2018). The continuing violation doctrine allows a plaintiff to move forward with an otherwise time-barred claim if the conduct constitutes a continuing legal violation rather than a discrete act. See Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007). The Supreme Court has differentiated conduct constituting continuing violations from conduct constituting discrete acts in the Title VII context. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–15, (2002) (finding continuing violations applicable to claims of a hostile work environment as opposed to discrete employment law violations, e.g. discriminatory discharge). Id.

The Court finds that Defendants' alleged conduct does not constitute a continuing course of conduct as required for the continuing violation doctrine to apply. See McNair, 728 F. App'x

---

[2] But even if service was defective, Plaintiffs filed the Notice of Bankruptcy in the State Action on October 21, 2014. Plaintiffs' actions therefore indicate Plaintiffs knew about the State Action, and thus AcctCorp's efforts to collect under the Default Judgment, by no later than October 21, 2014.

at 752 (9th Cir. 2018) (affirming a district court decision, which found "alleged violations here constituted a series of related but discrete acts rather than a continuing course of conduct" in the FDCPA context). Because the alleged violations here are merely interrelated discrete acts rather than a continuing course of conduct, Plaintiffs' argument regarding the continuing violation doctrine fails.

Based on the foregoing, Plaintiffs may only proceed on FDCPA claims regarding conduct falling within the one-year statute of limitations. Plaintiffs filed their Complaint on December 22, 2016, meaning the alleged wrongful conduct must have occurred on or after December 23, 2015.

### B. Nevada Law Governs the Contract

The Court now turns to the question of whether the agreement was governed by Nevada or Utah law. "[P]arties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs, 603 P.2d 270, 273 (Nev. 1979).

Plaintiffs argue the Agreement submitted in the State Action was governed by Utah law. But the evidence pertinent to this matter shows otherwise; the parties contracted that the Agreement would be interpreted and enforced under the state law in which Plaintiffs resided. Plaintiffs do not dispute that they resided in Nevada at all relevant times. Thus, for the purposes of this matter, Nevada law governs the interpretation of the Agreement.

Further, the Court will not evaluate if the state court erred in its decision by reviewing the evidence before it at the time of the Default Judgment. See Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003) ("[A] federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal."). The Court therefore finds that, for purposes of this matter, the Default Judgment was not inflated as the Agreement was governed by Nevada law. The Court therefore dismisses Plaintiffs' claims to the extent they are based on an argument that the Default Judgment was inflated.

/ / /

/ / /

### C. Judicial Estoppel and Claim Preclusion

The Court now turns to Defendants' arguments regarding judicial estoppel and claim preclusion.

#### i. Judicial Estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). "This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" Id.

The Supreme Court has listed three factors courts may consider in determining whether to apply judicial estoppel: whether (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[;]," and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 782–83 (quoting New Hampshire v. Maine, 532 U.S. 742 (2001)). "This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." Id. at 783. The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases. Id.

Defendants argue Plaintiffs' claims are judicially estopped because Plaintiffs failed to include the claims in their Bankruptcy Action. Plaintiffs assert their claims on two bases: (1) an inflated Default Judgment and (2) unlawful collection efforts based on the Default Judgment. The first basis is moot based on the Court's determination that Nevada law applies. But as to the basis of unlawful collection efforts, the Court finds Plaintiffs are not judicially estopped. The alleged

unlawful conduct falling within the statute of limitations did not occur until after the Bankruptcy Action closed. Thus, Plaintiffs could not have asserted the viable FDCPA violations in the Bankruptcy Action. The Court therefore finds that the judicial estoppel doctrine does not apply.

### ii. Claim Preclusion

"Res judicata, or claim preclusion, prevents the relitigation of a claim previously tried and decided." Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir. 1992). Res judicata applies only when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 917 (9th Cir. 2012) (quoting Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir.2003)). Further, the doctrine of "[r]es judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." Clark, 966 F .2d at 1320.

In the Ninth Circuit, "[w]e consider four factors in determining an 'identity of claims': (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. 'The last of these criteria is the most important.'" Turtle Island Restoration Network, 673 F.3d at 917–18 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir.1982)).

The Court finds claim preclusion does not apply. Plaintiffs seek to recover from FDCPA violations. The violations on which Plaintiffs may recover—under the statute of limitations—is limited to conduct occurring after the Bankruptcy Action. Because Plaintiffs could not have asserted the claims during the Bankruptcy Action, as the claims were not yet in existence, the Court finds claim preclusion does not apply.

### D. Claims

Plaintiffs assert FDCPA violations, NVDTPA violations, and civil conspiracy against Defendants. The Court considers each type of claim in turn below.

/ / /

### i. FDCPA Claims

Plaintiffs first allege violations of the FDCPA. The FDCPA was enacted as a broad remedial statute designed to "eliminate abusive debt collection practices by debt collectors; to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged; and to promote consistent state action to protect consumers" against debt collection abuses. McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011) (citing 15 U.S.C. § 1692e). The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices. See, e.g., 15 U.S.C. §§ 1692b (governing the acquisition of location information) and 1692e (prohibiting misleading or deceptive practices). The FDCPA does not ordinarily require proof of an intentional violation; it is a strict liability statute. See McCollough, 637 F.3d at 948. The FDCPA regulates interactions between consumer debtors and debt collectors, defined to include any person who "regularly collects ... debts owed or due or asserted to be owed or due another." 15 U.S.C. §§ 1692a(5), (6). "The FDCPA also provides that 'any debt collector who fails to comply with any provision of th[e][Act] with respect to any person is liable to such person.'" Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 578 (2010) (quoting 15 U.S.C. § 1692k(a)). Plaintiffs allege Defendants violated 15 U.S.C. §§ 1692e, f, and g of the FDCPA. The Court evaluates the claims for each section in turn.

### 1. Violations of Section 1692e

Plaintiffs first assert Defendants violated Section 1692e. Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010). "Whether conduct violates § 1692e … requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" Id. "The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor." Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1061–62 (9th Cir. 2011). "The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those

individuals are targeted by debt collectors." Id. "At the same time, the standard preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." Id. "The FDCPA does not subject debt collectors to liability for bizarre, idiosyncratic, or peculiar misinterpretations." Id. In this circuit, a debt collector's liability under Section 1692e is an issue of law. Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir.1997).

Plaintiffs allege Defendants violated three provisions of Section 1692: (e)(2)(A), (e)(2)(B), and (e)(8). Section 1692e(2)(A) prohibits debt collectors from making "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Section 1692e(2)(B) prohibits debt collectors from making "false representation of any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B). Section 1692e(8) prohibits "communication or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

The Court finds a genuine issue of material fact exits as to Plaintiffs' claims under Section 1692e(2)(A). Plaintiffs provided evidence that they applied for a credit account with Discover and for a loan to refinance their car loan in late 2015. But Plaintiffs were denied by Discover and offered a higher interest rate for the refinancing loan allegedly based on AcctCorp continuing to report the debt under the Default Judgment. After the Discharge Order, Plaintiffs were relieved from repaying any amount due under the Default Judgment. Thus, if AcctCorp reported the debt owed under the Default Judgment after the Discharge Order, AcctCorp would have misrepresented the legal status and amount owed in violation of the FDCPA. The Court therefore finds a genuine issue of material fact remains and reopens discovery for the limited purpose of determining if AcctCorp reported the Default Judgment debt after the Discharge Order.

The Court, however, finds no genuine issue of material fact exits as to Plaintiffs' claims under Section 1692e(2)(B). Plaintiffs assert Defendants violated Section 1692e(2)(B) by reporting that Plaintiffs owed more than what was legally due under the Agreement. This argument fails based on the Court's decision that Nevada law governed the contract. Thus, the amount awarded
/ / /

in the Default Judgment was not unlawfully inflated. The Court therefore grants summary judgment on Claim One as it relates to Section 1692e(2)(B).

Turning to Section 1692e(8), the Court finds a genuine issue of material fact exists. If AcctCorp communicated information that the debt owed under the Default Judgment was due after the Discharge Order, but within the period of the statute of limitations, AcctCorp will have violated Section 1692e(8). The Court therefore denies summary judgment on Claim One as it relates to Section 1692e(8).

**2. Violations of Section 1692f**

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Donohue, 592 F.3d at 1030. Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "Whether conduct violates § … 1692f requires an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" Donohue, 592 F.3d at 1030.

Plaintiffs allege Defendants violated Section 1692f by seeking an inflated award in the Default Judgment. The Court grants summary judgment on Claim One to the extent it relates to Section 1692f based on the Court's finding that Nevada law governed the Agreement.

**3. Violations of Section 1692g**

Section 1692g requires a debt collector to provide information to the consumer via written notice within five days of initial communication with the consumer for the collection of any debt. 15 U.S.C. § 1692g. The debt collector is excused from the five-day notice if the initial communication contained the enumerated information or if the consumer has paid the debt. Id. The enumerated information includes: (1) debt amount; (2) creditor name; (3) a statement that unless the consumer disputes the validity of the debt or any portion thereof within thirty days, the debt will be assumed to be valid by the debt collect; (4) a statement that if the consumer notifies the debt collector in writing of a dispute within the thirty-day period, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and mail it to the consumer;

and (5) a statement that the debt collector will provide the consumer with the name and address of the original creditor (if different from the current creditor) within the thirty-day period. Id.

The Court finds no genuine issue of material fact remains on Claim One as it relates to Section 1692g. As an initial matter, Plaintiffs do not oppose dismissing the claim in their Opposition. See ECF No. 51. Further, only AcctCorp had an obligation under Section 1692g as it was the entity acting as a debt collector in this matter. AcctCorp acquired the credit account on approximately March 11, 2014 and immediately mailed a letter to Plaintiffs, satisfying the content requirements of Section 1692g. The Court therefore grants summary judgment on Claim One as it relates to Section 1692g.

### ii. NVDTPA Claims

Under the NVDTPA, "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). A claim under the NVDTPA "requires a 'victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.'" Sattari v. Wash. Mut., 475 Fed. Appx. 648, 648 (9th Cir. 2011) (quoting Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 658 (D. Nev. 2009)). Under NRS 598.092(8), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she…[k]nowingly misrepresents the legal rights, obligations or remedies of a party to a transaction." Nev. Rev. Stat. § 598.092(8). Under NRS 598.0923(3), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly…[v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923(3). Under NRS 598.0915(15), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she…[k]nowingly makes any other false representation in a transaction." Nev. Rev. Stat. § 598.0915(15).

Plaintiffs first allege Defendants violated NRS 598.092(8). Plaintiffs argue AcctCorp violated NRS 598.092(8) by knowingly misrepresenting Plaintiffs' obligations to credit bureaus. Plaintiffs argue Defendants reported debt that had been previously discharged in the Bankruptcy Action. The Court disagrees. Plaintiffs' statement of facts explains that Defendant AcctCorp is

licensed as a collection agency in Nevada and Bowen is a law firm licensed to do business in Nevada. Plaintiffs do not allege facts that establish that they and either AcctCorp or Bowen ever entered into a consumer transaction. AcctCorp was hired by RC Willey to collect a debt from Plaintiffs, and in turn hired Bowen to pursue legal action to collect that debt. AcctCorp reporting on Plaintiffs' debt to credit agencies is also not a consumer transaction, such that any misrepresentation would implicate the NVDTPA. The only Defendant that Plaintiffs entered a consumer transaction with was RC Willey, through the 2010 modification to the credit account terms. If RC Willey had stated in the credit account contract that Plaintiffs would be required to pay 50% of their credit balance as a collection fee in the event of default when in fact Utah law governed the contract and only allowed a 40% collection fee, this would be a misrepresentation of the legal obligations of a party to a transaction. However, the credit contract only states: "In the event [RC Willey is] required to instigate legal action or to take other means to collect amounts [Plaintiffs] owe [it], [Plaintiffs] agree to pay all of [RC Willey's] costs of collection, including, but not limited to, a collection agency fee assessed by a collection agency and/or reasonable attorney fees." Nothing in this provision misrepresents Plaintiffs' legal obligations. Therefore, Plaintiffs have not raised a question of fact regarding whether any of the Defendants violated NRS 598.092(8).

Plaintiffs next allege Defendants violated NRS 598.0923(3). Liability arises under NRS 598.0923(3) if a defendant violates a state or federal statute or regulation relating to the sale or lease of goods or services. Nev. Rev. Stat. § 598.0923(3). The FDCPA regulates interactions between consumer debtors and debt collectors. Because the only consumer action to take place here was the 2010 credit account services modification activity between Plaintiffs and RC Willey, Plaintiffs theory that Defendants violated the NVDTPA by reporting erroneous information in violation of the FDCPA fails. If erroneous credit information was in fact reported by AcctCorp, Plaintiffs have not demonstrated a consumer transaction occurred between Plaintiffs and AcctCorp to trigger the protections of the NVDTPA. Therefore, Plaintiffs fail to raise a question of material fact under NRS 598.0923(3).

///

In Plaintiffs' final claim under the NVDTPA, Plaintiffs allege Defendants violated NRS 598.0915(15). As discussed above, the only consumer transaction that took place here was the 2010 credit contract modification between Plaintiffs and RC Willey. Plaintiffs did not respond to Defendants' argument regarding this provision. Further, any misrepresentations made by AcctCorp to credit reporting agencies were not made within the context of consumer transactions. Thus, NRS 598.0915(15) would not be implicated. Therefore, Plaintiffs have failed to raise a question of fact regarding whether any of the Defendants violated this provision.

### iii. Civil Conspiracy Claim

The Court now turns to Plaintiffs' final claim: civil conspiracy. Under Nevada law, "[a]n actionable conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 862 P.2d 1207, 1210 (Nev. 1993). "The gist of a civil conspiracy is not the unlawful agreement but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Eikelberger v. Tolotti, 611 P.2d 1086, 1088 n.1 (Nev. 1980).

The Court finds no genuine issue of material fact exists regarding Plaintiffs' civil conspiracy claim. Plaintiffs' surviving allegations focus on the conduct of one Defendant: AcctCorp. Further, Plaintiffs have failed to offer any evidence as to Defendants' concerted action taken with intention to accomplish an unlawful objective. The Court therefore grants summary judgment on Claim Three in favor of Defendants.

### V. CONCLUSION

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 49) is GRANTED in part and DENIED in part. The Court denies summary judgment on Claim One as it pertains to 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(8). The Court however grants summary judgment in favor of Defendants on Claim One as it pertains to 15 U.S.C. § 1692e(2)(B)

///

and 15 U.S.C. §§ 1692f–g. The Court also grants summary judgment in favor of Defendants on Claim Two and Claim Three.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Sur-Reply or a Supplement (ECF No. 63) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File a Supplement (ECF No. 66) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that discovery shall be reopened for seventy-five days as of August 24, 2018 for the limited purpose of allowing the parties to obtain documents and potential deposition testimony from credit reporting agencies for the periods of January 1, 2014 to March 31, 2017. The parties may also subpoena Plaintiffs' relevant credit reports from companies to which Plaintiffs applied for credit during the aforementioned time frame.

**IT IS FURTHER ORDERED** that the parties shall file a proposed discovery plan/scheduling order no later than October 1, 2018, which proposes deadlines for dispositive motions, responses, and replies.

DATED: September 24, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**