VERNON A. NELSON, JR., ESQ.
Nevada Bar No.:  6434
THE LAW OFFICE OF VERNON NELSON
9480 S. Eastern Ave., Ste. 252
Las Vegas, NV  89123
Tel.:  702-476-2500
Fax. :  702-476-2788
E-mail : vnelson@nelsonlawfirmlv.com
*Attorney for Plaintiffs John Carter and Christine Carter*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN CARTER and CHRISTINE CARTER, | Case No.:   2:16-cv-02967-RFB-VCF |
| Plaintiffs, | |
| v. | |
| RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA, a Nevada Corporation; RC. WILLEY aka RC WILLEY FINANCIAL SERVICES, and JEROME R. BOWEN, ESQ. | **PLAINTIFFS OPPOSITION TO DEFENDANT RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA'S SECOND MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

### I.    INTRODUCTION

On August 23, 2018, the Court held a hearing on Defendant's Motion for Summary Judgment (the "MSJ Hearing"). On September 24, 2018, the Court denied Defendant AcctCorp's motion as to Plaintiff's claims based on §1692e (2)(A) and §1692e (8) because genuine issues of material fact existed as to these claims. (the "MSJ Order"). The Court also reopened discovery for a limited time, and for the limited purpose of allowing the parties to conduct discovery from credit reporting agencies for the periods of January 1, 2014 to March 31, 2017 (the "Credit Reporting Discovery Period"). The Court also allowed the parties to subpoena Plaintiffs' relevant credit reports from companies to which Plaintiffs applied for credit during Credit Reporting Discovery Period

Defendant's efforts to conduct Credit Reporting Discovery were limited and resulted in the discovery of a minimal amount of admissible evidence. Importantly, Defendant did not obtain any admissible evidence from any credit reporting agency. The admissible evidence provided by JP

THE LAW OFFICE OF VERNON NELSON
ATTORNEY AT LAW

Morgan Chase showed Defendant violated §1692e (2)(A) and §1692e (8). After JP Morgan Chase provide its evidence, Defendant vacated the deposition of Equifax's FRCP 30(b)(6) witness and did not conduct any further discovery.

Despite its failure discover any favorable admissible evidence during the Credit Reporting Discovery Period, Defendant has filed another Motion for Summary Judgment. However, instead of focusing on evidence that was discovered during the Credit Reporting Discovery Period, Defendant attempts to take "another bite at the apple" by: (1) raising several new legal arguments, (2) introducing new evidence that was not included its original motion and which was not discovered during the Credit Reporting Discovery Period, (3) making misrepresentations about the evidence, and (4) ignoring numerous findings of fact and rulings that are included in the MSJ Order.

In the end, Defendant's tactics fail because it has gone far beyond the limits of the Court's MSJ Order and it failed to adduce any evidence that proves it did not violate §1692e (2)(A) and §1692e (8). Defendant's tactics also fail because it cannot escape the fact that there is substantial admissible evidence that shows it reported inaccurate false and misleading information to credit reporting agencies in violation of §1692e (2)(A) and §1692e (8). Accordingly, Plaintiffs respectfully submit Defendant's motion must be denied.

**II. STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY.**

**A. Incorporation of Courts Findings of Undisputed Facts and Stipulation and Orders Regarding Credit Reporting Discovery Period**

For sake of brevity, Plaintiff incorporates the Undisputed Facts from Section II (a) of the Court's MSJ Order as though set at length herein. (ECF No. 70 at pp. 1-3). After the Court entered the MSJ Order, the Court approved the parties Joint Discovery Plan and Scheduling Order. (ECF No. 72). The Stipulation and Order provided, in relevant part:

1. Discovery shall be re-opened for a period of seventy-five (75) days, and shall close on November 6, 2018.

2. Discovery shall be re-opened for the limited purpose of obtaining documents and deposition testimony from credit reporting agencies regarding Plaintiffs' allegation that AcctCorp reported a debt to the credit reporting agencies after the debt had been

discharged in bankruptcy. The relevant timeframe shall be from January 1, 2014, through March 2017.

3. AcctCorp and Plaintiffs shall be permitted to conduct third-party discovery upon the credit reporting agencies – Experian, Equifax, and TransUnion – as well as Discover Card and the auto lender through which Plaintiffs attempted to refinance their car. Plaintiffs allege their requests for financing and/or credit were rejected by Discover Card and the auto lender. ECF No. 51-2, at 2, ¶ 7; ECF No. 51-3, at 2, ¶ 7. No other discovery shall be permitted.

On October 22, 2018, the Court approved a Stipulation and Order to Conduct Deposition by Remote Means allowing the remote deposition of TransUnion's FRCP 30(b)(6) designee. (ECF No. 75). On November 2, 2018, the Court approved a Stipulation and Order allowing the remote deposition of the FRCP 30(b)(6) witnesses for Experian, Transunion, Equifax, Navy Federal Credit Union and Chase Bank. (ECF No. 79). On November 5, 2018, the Court approved a Stipulation and Order to extend Credit Reporting Discovery Period until January 22, 2019. (ECF No. 80). On November 9, 2018, the Court approved a Stipulation and Order to Conduct Deposition by Remote means for Experian, Equifax, and Transunion. (ECF No. 81).

**B. Defendant's Supplemental Disclosures and Depositions of Navy Federal Credit Union and JP Morgan Chase.**

On December 4, 2018, Defendant served its Fourth Supplement to its Initial Disclosures. (See Exhibit "1"). In this supplement, Defendant identified certain documents produced by Navy Federal Credit Union and JP Morgan Chase Bank. On December 14, 2018, Defendant served its Fifth Supplement to it Initial Disclosures (this supplement was mistakenly identified as the Fourth Supplement) (See Exhibit "2"). In this supplement, Defendant identified supplemental documents produced by Chase and documents produced by Equifax. On February 1, 2019, Defendant served its Sixth Supplement to its Initial Disclosures. (See Exhibit "3"). In this supplement, Defendant identified documents produced by Discover.

**1. Deposition of Navy Federal Credit Union**

On December 6, 2018, Defendant conducted the deposition of Navy Federal Bank's FRCP 30(b)(6) witness. Navy Federal Bank's witness testified that Plaintiffs filed an application to refinance a car around April of 2017 and that the request was denied because Mr. Carter caused

Navy Federal Bank to suffer a loss when Plaintiffs filed for bankruptcy. (See Deposition of Gary Guthridge attached as Exhibit "4" at pp. 13-14). Thus, Navy Federal Bank did not review any third-party credit reports in making its decision to deny Plaintiffs application. *Id.*

### 2. Deposition of JP Morgan Chase and Subsequent Production of 2016 and 2017 Credit Reports

On December 10, 2018, Defendant conducted the deposition of JP Morgan Chase's FRCP 30(b)(6) witness, Ryan Gaughan. Mr. Gaughan first testified about an Adverse Action notice sent to the Plaintiffs on May 19, 2017; indicating their application for credit had been denied. (See Deposition of Ryan Gaughan attached as Exhibit "5" at pp. 11-12). Mr. Gaughan testified Plaintiffs were denied credit because for this particular application for four reasons: (1) they had prior delinquency or public records, (2) they had high credit balances on their revolving credit card accounts, (3) they had a number of accounts that were reporting as delinquent, and (4) they had been seeking credit an excessive number of times. *Id. at pp. 12-13.* Mr. Gaughan testified a credit report was pulled each time Plaintiffs applied for credit. *Id. at p.13.*

Mr. Gaughan next testified about an application for credit that Plaintiffs made on August 17, 2016 and an adverse action notice sent to Plaintiffs on August 30, 2016. *Id. at 24-25.* As part of his testimony, Mr. Gaughan explained the Plaintiffs applied for credit three times with JPMorgan Chase. *Id. at 26-27.* He stated: (1) the first time they applied, they were approved; (2) the second time they applied, they were denied for the four reasons discussed and because their debt was high relative to their income; (3) the third time they were declined, it was for the same four reasons and because of the number of inquiries they have made for credit; and (4) in all three instances, the bankruptcy was present on their credit report.

Mr. Gaughan also testified that he reviewed the three applications in preparation for his deposition and he saw AcctCorp on the Plaintiffs credit reports. *Id. at 28.* Specifically, Mr. Gaughan testified that Plaintiffs applied for a loan on May 8, 2017 for $14,667.74, the collateral for the loan was a used 2014 Lexus RX350 valued at $32,025 (the "May 2017 Credit Request"). *Id. at 28-29.* Mr. Gaughan testified that he reviewed the actual credit bureau report that was pulled in connection with Plaintiffs May 2017 Credit Request. *Id. at 29.* Mr. Gaughan testified that he

1   recalled seeing a trade line for AcctCorp and RC Willey on the credit report that was pulled in

2   connection with the May 2017 Credit Request but he could not recall whether AcctCorp had

3   reported the account as a serious delinquency. *Id. at 37-38.*

4       Mr. Gaughan added that if AcctCorp did report the account as a serious delinquency, it

5   would appear in the serious delinquency row of the report. *Id.* Mr. Gaughan testified that, based on

6   his job experience, a party who has a history serious delinquency, or items being placed for

7   collection, would typically have a more difficult time getting credit; or could pay more the credit

8   they do acquire. *Id. at 39-40.* Mr. Gaughan also agreed that a person without a serious delinquency

9   could have a better opportunity to obtain more credit; depending on their debt to income ratio. *Id.*

10   *at 40.* Mr. Gaughan also agreed that if a party has a higher overall credit limit, they could likely

11   use more credit without negatively affecting the proportion of their credit balances as compared to

12   available credit. *Id. at 40-41.* Yet, he did state that creditors will often look at a combination of

13   how much credit has been acquired and how much has been used. *Id.*

14       Mr. Gaughan then testified that he reviewed the Plaintiffs' August 30, 2016 credit

15   application (the "August 2016 Credit Request") and the credit report that JP Morgan obtained in

16   connection with the August 2016 Credit Request. *Id. at 41-42.* He testified that the credit report

17   included information reported by AcctCorp. *Id.*

18       Mr. Gaughan did not have the credit reports obtained in connection with the August 2016

19   Credit Request or the May 2017 Credit Request available to him at the deposition. However, JP

20   Morgan's counsel subsequently provided the reports and Defendant disclosed the reports in its

21   Fifth Supplemental Disclosure (See "2016 JP Morgan Report" attached as Exhibit "6" and "2017

22   JP Morgan Report" attached at Exhibit "7").

23       The 2016 JP Morgan Report indicates it was obtained from Experian (See Exhibit "6" at p.

24   4) stating credit report is "For TRW." TRW is Experian's predecessor.  (See

25   https://www.creditrepair.com/frequently-asked-questions/the-three-credit-bureaus). The "Profile

26   Summary" starts on page 7 and it explains several important codes including code number "38"

27   for "serious delinquency."  The AcctCorp information is reported on page 9. Under the

28   ACCTCOND AcctCorp erroneously reported the account as a serious delinquency as evidenced

by the reported a Code "38." AcctCorp reported the account as delinquent even though the debt had been discharged in bankruptcy in 2014. It is important to note that no other creditor listed their account as a "serious delinquency."

The 2017 JP Morgan Report also is also a TRW/Experian report. (See Exhibit "7" at p.3). The Profile Summary for this report starts on page 8 and it also identifies Code 38 as a Serious Delinquency. The information for AcctCorp is on page 9 and it shows AcctCorp continued to erroneously report the account as "serious delinquency" as evidence by the Code 38 under the ACCTCOND section of the report. Thus, the evidence produced by JP Morgan Chase clearly shows that in 2016 and 2017, AcctCorp falsely reported the nature of debt as a "serious delinquency" even though the account had been discharged in bankruptcy.

After the JP Morgan deposition, Defendant did not undertake any new discovery or take any additional depositions. To the contrary, it vacated the Equifax FRCP 30(b)(6) deposition that had been scheduled for December 19, 2018.  Even though the MSJ Order specifically allowed the Defendants to conduct discovery with respect the credit reporting agencies, ***Defendant did not depose a FRCP 30(b)(6) witness for Experian, Equifax, or Transunion.*** Thus, the genuine issues of material fact that existed before the Credit Reporting Discovery Period still remain; except that Plaintiffs' contentions have been strengthened by the evidence adduced from JP Morgan Chase. Specifically, Defendants have not adduced any evidence from the credit reporting agencies that changes the nature of the genuine issues of fact cited in the MSJ Order. Thus, Plaintiffs submit Defendant's motion for summary judgment must be denied.

**C. DISPUTED ASSERTIONS OF FACT FROM DEFENDANT'S BRIEF**.

Plaintiffs dispute multiple assertions that Defendant claims are "facts" in this case. First, Defendant asserts it is a fact that "Discover produced records with Plaintiffs' only application to Discover received in November 2017." (See ECF No. 82 at p. 7). However, there is nothing in the records that shows that Discover maintains records relating to denied applications. In fact, the Equal Credit Opportunity Act only requires creditors to maintain records for 25 months. *See 12 CFR 1002.12.* Further, the FCRA does not impose a specific record retention requirement on

1  creditors who access reports, and to the contrary, it may require a creditor to dispose of such

2  information. *See e.g. 15 U.S.C. § 1681w.*

3  There is nothing in the Declaration of the Custodian of Records that states that Discover

4  maintains records of denied applications, or that any Discover representative searched records

5  relating to denied applications. Finally, there is no deposition testimony from a FRCP 30(b)(6)

6  witness that explains how Discover conducted the search and why Discover did not provide more

7  documents than those that were provided.

8  It is also important to note, that the records obtained from Discover appear to show that

9  Discover approved Plaintiffs request for a Discover Card on November 19, 2017. In their

10  Declarations, the Plaintiffs stated they were denied for a Discover Card in 2015. Thus, the records

11  provided by Discover do not establish that the only application made by Plaintiffs was in

12  November of 2017.

13  Finally, Defendant's contention that JP Morgan's representative, Mr. Gaughan, did not

14  testify that AcctCorp would not have been the reason why Plaintiffs' August 2016 Credit Request

15  and May 2017 Credit Request were denied. In fact, Mr. Gaughan testified as follows:

16  Q. Okay. And assuming for the
    22  sake of conversation that AcctCorp had made

17  23  a derogatory remark on the Carters'
    24  respective credit report, would that have

18  25  been a reason for the denials in light of
    Page 15

19  1  these other four factors that have been
    2  identified?

20  3  **A. Not exclusively, no.**

21  (Exhibit 5 at pp. 14-15). Clearly, Mr. Gaughan did not testify that AcctCorp would not have been

22  the reason Plaintiff's were denied. He simply stated AcctCorp would not be the only reason.

23  Again, there is nothing in Discover records that addresses the genuine issues of material

24  fact that existed before the Credit Reporting Discovery Period. Further, the evidence obtained

25  from JP Morgan Chase strengthens Plaintiffs' case. Finally, Defendants have not obtained any

26  evidence from the credit reporting agencies that changes the fact that there remain genuine issues

27  as to Plaintiffs §1692e (2)(A) and §1692e (8) claims. Thus, Plaintiffs submit Defendant's motion

28  for summary judgment must be denied.

### III. LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to FRCP 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact and must support its assertion with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). AFTER the moving party has properly supported the motion, the burden shifts to the nonmoving party to prove specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the record cannot lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

### IV. LEGAL ARGUMENT

**A. DEFENDANTS NEW LEGAL ARGUMENTS MUST BE REJECTED BECAUSE THE NEW LEGAL ARGUMENTS RELATE TO MATTERS THAT HAVE ALREADY BEEN DECIDED BY THE COURT.**

The MSJ Order clearly denied Defendant's Motion for Summary Judgment as to Plaintiffs' §1692e (2)(A) and §1692e (8) claims. The Court found a genuine issues of material fact existed as to Plaintiffs' claims under Section 1692e(2)(A) and §1692e (8). The Court opined that "if AcctCorp reported the debt owed under the Default Judgment after the Discharge Order, AcctCorp would have misrepresented the legal status and amount owed in violation of the FDCPA." (ECF No. 70 at p. 11). The MSJ Order also provided for the Credit Reporting Discovery Period. The

1 | MSJ Order also provided that the parties could file Motions for Summary Judgment premised

2 | upon information discovered during the Credit Reporting Discovery Period.

3 | The MSJ Order did not offer Defendant the opportunity to make wholesale changes to its

4 | original motion for summary judgment. The MSJ Order was clearly focused on allowing

5 | discovery on the issues of fact that could potentially be resolved with some additional discovery.

6 | Nevertheless, Defendant has filed a fully revamped Second Motion for Summary Judgment and is

7 | essentially asking the Court to reconsider the MSJ Order. Plaintiffs submit Defendant should not

8 | be permitted to present new legal arguments under these circumstances.

9 | It is well established that federal courts generally will not to reopen, or re-litigate, matters

10 | that have already been decided.  *Magnesystems v. Nikken, Inc.*, 933 F. Supp. 944, 948 (9th Cir.

11 | 1996). The *Magnesystems* Court pointed that if the courts were to allow parties to reopen matters

12 | that have already been decided, obstinate defendants could prevent the resolution of cases by

13 | making repeated appeals. *Id.*  The *Magnesystems* Court noted that this well-established principle is

14 | known as the "law of the case doctrine." *Id. at 948-949.* Under the law of the case doctrine, once

15 | an issue has been decided it becomes the law of the case. *Id.* Courts will typically follow the law

16 | of the case unless one of three exceptions apply: (1) there has been an intervening change in

17 | controlling law; (2) the parties have discovered new evidence that could be contrary to the law of

18 | the case; or (3) the court's previous decision resulted in clear error or manifest injustice. *Id.*

19 | Typically, the law of the case doctrine is applicable in a situation where a court is

20 | following decisions it has made earlier in the case. *Id.*  Under these circumstances, the doctrine

21 | does not act as a rigid limit on the court's power. *Id.* The doctrine does not alter the court's

22 | inherent power to revisit and change its earlier decisions. *Id.* Instead, the doctrine serves as a

23 | guidepost for the court to follow because it based on logic and sound judicial practice. *Id.*

24 | In this case, the Court has already denied Defendant's previous motion for summary

25 | judgment as to §1692e (2)(A) and §1692e (8) and it has already found that genuine issues of

26 | material fact exist with respect to these claims. (ECF No. 70 at pp. 10-12). The MSJ order also

27 | provided for the Credit Reporting Discovery Period because the Court anticipated that the parties

28 | could resolve the genuine issues of material fact by engaging in limited discovery targeted at

1   credit reporting agencies and creditors who had denied credit to the Plaintiffs. *Id. at p. 16.* The

2   Court also set a new dispositive motion deadline in anticipation that the limited discovery would

3   clarify the facts and that there would no longer be genuine issues of material fact. The Court's

4   expectations were clearly expressed to the parties during the MSJ Hearing.

5       The MSJ Order clearly did not open the door for Defendants to make new legal arguments

6   which include arguments that: (1) Plaintiffs' §1692e (2)(A) and §1692e (8) are precluded by the

7   bankruptcy code; (2) Defendant was not attempting to collect a debt when it communicated with

8   credit reporting agencies from December 2014 through November 2016; (3) Plaintiffs' claims

9   should have been brought under the FCRA; and (4) the bona fide error defense insulates the

10  Defendant from liability. None of these arguments were made in Defendant's first motion for

11  summary judgment and now the Defendant is essentially asking the Court to reconsider and

12  reverse the MSJ Order based on these new legal theories.

13      Plaintiff submits the Court should follow the law of the case doctrine and reject

14  Defendant's new arguments. In this regard, Plaintiff notes that the arguments raised by Defendant

15  do not fit within one of the three established exceptions to the law of the case doctrine. There has

16  been no intervening change in the law; and Defendant could have raised all of these arguments in

17  its first motion for summary judgment. The parties have not discovered any new evidence that

18  relates to these arguments, and again, Defendant could have raised all of its arguments in its first

19  motion. Lastly, the MSJ Order did not result in clear error or manifest injustice. To the contrary,

20  the MSJ Order gave Defendant the opportunity to conduct discovery that would resolve any

21  genuine issues of material fact. However, Defendant failed to make good use of its opportunity.

22  Accordingly, the genuine issues of material fact identified by the Court in the MSJ Order remain.

23  Thus, Plaintiffs' submit the Court should reject the new legal arguments raised by Defendant and

24  it should deny Defendant's Second Motion for Summary Judgment.

25  ///

26  ///

27  ///

28  ///

**B. PLAINTIFFS' FDCPA CLAIMS ARE NOT PRECLUDED BY THE BANKRUPTCY CODE BECAUSE THE COURT HAS FOUND THEIR CLAIMS WERE DISCHARGED; THEREFORE, BANKRUPTCY DETERMINATIONS ARE NOT REQUIRED.**

In the MSJ Order, the Court made a finding of fact that the December 24, 2014 Discharge Order discharged Plaintiffs' obligation to pay any amounts owed under the Default Judgment obtained by Defendant. (ECF No. 70 at p. 3). The Court also found that genuine issues of material fact exist Plaintiffs' claims under Section 1692e. *Id.* at p. 11-12. The Court ruled if AcctCorp reported the debt owed under the Default Judgment after the Discharge Order, it would have violated the §1692(e). *Id.*

Despite these clear findings and rulings, Defendant attempts to relitigate the motion for summary judgment by arguing that Plaintiffs claims are precluded by the Bankruptcy Code. In support of its argument Defendant cites to *Walls v. Wells Fargo Bank*, 276 F.3d 502 (9th Cir. 2002) where the Ninth Circuit the Court held the Bankruptcy Code precluded the debtor's claim under the FDCPA. In *Walls,* the debtor retained possession of her home under "ride through" option permitted by the bankruptcy code, so long as she continued to make payment. *Id. at 505.* When the debtor stopped making payments, Wells Fargo took action to foreclose on the home. *Id.* Debtor claimed that Wells Fargo's actions were not permitted because she did not reaffirm the debt under § 524 of the Code and that her debt had been discharged. *Id.* Debtor filed suit claiming that Wells Fargo violated § 524 of the Code and the FDCPA.

The Ninth Circuit dismissed the § 524 claim and held the FDCPA claim was precluded because it also based on § 524 and would require the district court to make "bankruptcy-laden determinations" that should be made by the Bankruptcy Court. *Id. at 510.* The Court determined that Debtor was required to seek relief for violation of the discharge injunction. *Id.*

To the extent that *Walls* has been interpreted to preclude any FDCPA claim that is based on any violation of the Bankruptcy Code, it has been roundly criticized. For example, in *Randolph v. IMBS, Inc*., 368 F.3d 726, 728-730 (7th Cir. 2004), the 7th Circuit noted that a debtor: (1) can seek to a hold a debt collector, or a creditor, in contempt for violating bankruptcy discharge; (2) the debtor must prove the violation was willful; and  (3) the debtor can recover actual damages

11

1    and punitive damages for willful violations. By way of contrast, the Court noted the FDCPA: (1)

2    applies only to debt-collectors; (2) has a "strict-liability" standard; and (3) generally leads to

3    smaller penalties and never to punitive damages. *Id.* The Court also noted that if the Bankruptcy

4    Code were the sole remedy available to debtors who filed for bankruptcy, they would have no

5    remedy for negligent attempts to collect a discharged debt. *Id.* Based on these distinctions, the 7th

6    Circuit determined the Bankruptcy Code did not preclude claims under the FDCPA and it stated

7    that to the extent that *Walls* holds otherwise, it would not follow it. *See also Simon v. FIA Card*

8    *Services, N.A.*, 732 F.3d 259, 271 (3d Cir.2013) (holding that debt collectors' communication with

9    debtors in bankruptcy violated the FDCPA and that an FDCPA remedy was not precluded by the

10   Bankruptcy Code).

11           However, at least one Court in the Ninth Circuit has recognized that the facts of *Walls* can

12   be distinguished and that *Walls* does require the preclusion of all FDCPA claims that are based on

13   a violation of the Bankruptcy Code. In *Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist.

14   LEXIS 7622 (S.D. Cal. February 25, 2004) Plaintiff -Debtor alleged Defendant-Debt Collector

15   unlawfully sent five demand letters to the Plaintiff; including one letter that Defendant send after

16   Plaintiff filed for bankruptcy. *Id. at *3.* Defendant was attempting to collect a debt for the original

17   creditor AT&T; who was served with the notice of the Plaintiff's bankruptcy filing.

18           The Court determined the Plaintiff's case was distinguishable from *Walls.* First, the Court

19   noted the Plaintiff in *Walls,* unlike the Plaintiff in *Forsberg* filed a class action suit against the

20   original creditor. *Id. at *17.* The Court also noted the Defendant in *Walls,* unlike the Defendant in

21   *Forsberg,* was specifically enjoined by the Bankruptcy Court's discharge injunction. *Id. at *17.*

22   The Court pointed out the Plaintiff in *Forsberg*, unlike the Plaintiff in *Walls,* only asserted claims

23   under the FDCPA and RFDCPA, and he did not attempt to assert a private cause of action under

24   the Bankruptcy Code.

25           The case at bar is distinguishable from *Walls.* First, this case will not require the Court to

26   make "bankruptcy-laden determinations." The Court has found the debt was discharged and it

27   ruled if Defendant reported the debt owed under the Default Judgment after the Discharge Order,

28   it would have violated the §1692(e). *Id.* Similarly, like the Defendant in *Forsberg,* the Defendant

in this case was not specifically enjoined by the Bankruptcy Court's discharge injunction. Finally, like the Plaintiff in *Forsberg*, the Plaintiffs in this case are not seeking simultaneous relief in bankruptcy. Their claim is based on straight-forward violations of §1692e (2)(A) and §1692e (8) and their straight-forward claims are not precluded by the Bankruptcy Code.

**C. DEFENDANT IS A DEBT COLLECTOR AND ITS CLAIM THAT IT WAS NOT ACTING IN CONECTION WITH THE COLLECTION OF A DEBT IS INCONSISTENT WITH THE COURT'S PRIOR FINDINGS, AND IS NOT SUPPORTED BY THE EVIDENCE IN THIS CASE.**

In the MSJ Order, the Court found AcctCorp the State Action to collect the balance owed to RC Willey. (ECF No. 70 at p. 3). AcctCorp learned about the bankruptcy on October 20, 2014 and it notified necessary parties to cease any pending garnishment activity. *Id.* The Court has ruled that if AcctCorp reported the debt owed under the Default Judgment after the Discharge Order it will have violated the FDCPA. *Id. at pp. 11-12.*

Despite the foregoing findings and rulings, the Defendant-Debt Collector, argues it was not acting in connection with the collection of a debt. In support of this argument, the Defendant-Debt Collector contends that "matters outside of debt collection, like credit-reporting, are not covered" and it cites § 1692e in support of this contention.

Defendant also cites to *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 382 (7th Cir. Ill. July 27, 2010) where the Court logically held that communications between a debt collector and a debtor are not covered by the FDCPA, unless the such communications are made in connection with the collection of a debt. While *Gburek,* did not address communications between a debt-collector and a credit reporting agency, it emphasized whether a communication was sent "in connection with" the collection of a debt must be established as an "objective fact" and it must be proven in the same manner as other facts. *Id. at p. 386.*

Defendant also cites to *McIvor v. Credit Control Servs.*, 773 F.3d 909, 914-915 (8th Cir. 2014) where the Court reasonably concluded that communications between a debt collector and a consumer reporting agency can be made in connection with the collection of debt. The Court also wisely rejected the argument that every communication between a debt collector and a consumer reporting agency must be made in connection with the collection of a debt. *Id.* In *McIvor,* the

1   Court logically held when a credit reporting agency and a debt collector communicate about a

2   dispute that the debtor raised about her credit report, they are not communicating in connection

3   with the reporting of a debt.

4          Defendant alleges that its communications with the credit reporting agencies were

5   prompted by changes in its internal database and that it was required by law to report information

6   generated from these changes to credit reporting agencies. However, Defendant has not offered

7   any evidence that supports this allegation. To the contrary, Plaintiffs offered the Declaration of

8   former AcctCorp employee, Jamie Clark, who stated that AcctCorp's records show that it did not

9   change the status of the case from a "Judgment Status" to "Bankruptcy Status" until April 6, 2015.

10  (See ECF 51-5 at p. 3). She stated that the case was then moved from a "legal worklist" to a

11  "bankruptcy worklist." *Id.* Thus, for more than 3 months after the discharge, Defendant continued

12  collection efforts as though it were collecting on a judgment, even though the judgment had been

13  discharged. Ms. Clark also stated that when the case was put on the bankruptcy "work list,"

14  additional work may be needed on the account. *Id.* This indicates that Defendant was still

15  considering means by which it could collect the debt. Ms. Clark testified that Defendant's records

16  indicate that the Plaintiffs' account was not "closed" until November 1, 2016 and that the balance

17  on Plaintiffs' account was not adjusted to $0.00 until then. *Id.* Ms. Clark also stated the

18  Defendant's records show that Defendant continued to report Defendant's account to credit

19  reporting agencies until November 2, 2016. *Id.* Ms. Clark's testimony shows that Defendant

20  continued to try to collect on Plaintiffs' account until November 2, 2016 and it continued to report

21  the account to credit reporting agencies until November 2, 2016. Ms. Clark's testimony shows

22  Defendant's communications with the credit reporting agencies were clearly made in connection

23  with a debt.

24          **D. THE COURT HAS FOUND THAT PLAINTIFFS' FDCPA CLAIMS ARE
           VALID AND DEFENDANT'S ARGUMENT THAT PLAINTIFFS'CLAIM**

25  **SHOULD HAVE BEEN RBOUGHT AS AN FCRA CLAIM IS WITHOUT MERIT.**

26          In the MSJ Order, the Court stated that it found genuine issues of material fact existed as to

27  Plaintiffs' claims under Section 1692e(2)(A) and §1692e (8). The Court ruled that "if AcctCorp

28

1   reported the debt owed under the Default Judgment after the Discharge Order, AcctCorp would

2   have misrepresented the legal status and amount owed in violation of the FDCPA." Despite the

3   fact that the Court has found that it could be liable under the FDCPA, Defendant, who is debt

4   collector, makes the imperceptive argument that Plaintiffs were required to assert their claims as

5   FCRA claims.

6          Despite its previous citation to *McIvor v. Credit Control Servs.*, 773 F.3d 909, 914-915 (8th

7   Cir. 2014) which recognized that communications between a debt collector and a consumer

8   reporting agency can be made in connection with the collection of debt, Plaintiff argues that credit

9   reporting is governed by the FCRA. In fact, the *McIvor* Court recognized that when a debt-

10  collector is communicating as a "furnisher" in connection with a dispute made to the credit

11  reporting agency, it is not communicating in connection with a debt. Defendant then goes on to

12  draw distinctions between the FDCPA and FCRA.

13         In short, the argument boils down a to a repeat of the previous argument, that Defendant

14  did not communicate with the credit reporting agencies in connection with the collection of a debt.

15  As is stated in Section IV(C) above, the evidence shows that despite the December Defendant

16  continued to try to collect on Plaintiffs' account until November 2, 2016 and it continued to report

17  the account to credit reporting agencies until November 2, 2016. Despite the Discharge Order that

18  was entered in December of 2014, Defendant continued to try to collect on the Default Judgment

19  until at least April of 2016. Defendants then moved the case to a "bankruptcy worklist" and

20  continued to try to collect on the account until November of 2016. From December 2014 to

21  November 2016 it continued to report information to the credit report agencies. Defendant finally

22  closed the account and stopped reporting it to the credit reporting agencies in November 2016.

23  Defendant's conduct, which occurred in connection with the collection of a debt, violates §1692e

24  (2)(A) and §1692e (8) and Plaintiffs' were not obligated to pursue FCRA remedies.

25  ///

26  ///

27  ///

28  ///

**E. AS THE COURT DENIED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT FAILED TO OBTAIN ANY EVIDENCE THAT RESOLVES THE GENUINE ISSUES OF FACT CITED IN THE MSJ ORDER, DEFENDANT'S ARGUMENT THAT PLAINTIFFS HAVE FAILED TO ADDUCE EVIDENCE THAT ACCTCORP VIOLATED § 1692e IS GROUNDLESS.**

In the MSJ Order, the Court found that Plaintiff's bankruptcy counsel filed a Notice of Bankruptcy in the State Action brought by AcctCorp on October 24, 2014. (ECF No. 70 at p. 3). The Court also found that Plaintiffs' counsel in the Bankruptcy Action filed a Notice of the Pending Bankruptcy in the State Action on October 20, 2014. *Id.* The Court also found that AcctCorp faxed a Notice of Release of Garnishment to Plaintiffs' employers and the City Constable the day after it received the Notice of the Pending Bankruptcy. *Id.*

Despite the Court's factual findings that show AcctCorp was well aware of the Bankruptcy Action, Defendant AcctCorp makes the incredulous argument that it neither knew nor should it have known of Plaintiffs' Bankruptcy. Based on this incredulous argument, Defendant claims it did not violate § 1692e (8). Defendant then attempts to limit the application of § 1692e (8) by incorrectly asserting that this section only "relates to CRAs when reporting a disputed debt" and by citing to cases where the Defendant clearly did not have knowledge of an event that caused the Defendant's reporting to CRAs to be inaccurate.

First, Defendant's assertion that §1692e (8) only relates to disputed debts is inaccurate. On its face, §1692e (8) generally prohibits false communications by debt collectors about an   credit information. Thus, the section first provides that a debt collector cannot communicate or threaten to communicate to any person credit information that the debt collector knows, or should know, is false. *Id.* This section further provides, by way example, that a debt collector can violate this section if it fails to communicate that a disputed debt is disputed. *Id.* which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247 (3rd Cir. 2014) (holding debtors are not required to dispute a debt before filing suit under § 1692e and stating the statutory language suggests the opposite). Further, notice of a dispute does not need to be provided by the debtor because §1692e(8) does not require notification by the debtor and the debtor's obligation

1    depends solely on its own knowledge that a debt is disputed, and it does not matter how the debt

2    collector acquired its knowledge of the dispute. *Evans v. Portfolio Recovery Assocs., LLC*, 889

3    F.3d 337, 347 (7th Cir. 2018).

4            Defendant argues it did not know Plaintiffs' debt had not been discharged and that there is

5    nothing in the record that suggests it should have known the Defendant's debt had been

6    discharged. However, the Court's findings in the MSJ Order make it clear that Defendant's

7    argument is disingenuous. The Court has already made factual findings and ruled "if AcctCorp

8    reported the debt owed under the Default Judgment after the Discharge Order, AcctCorp would

9    have misrepresented the legal status and amount owed in violation of the FDCPA." (ECF No. 70

10   at pp. 10-11). In making these stated factual findings, the Court necessarily found that Defendant

11   knew about the discharge, or should have known about the discharge.

12           The evidence that Plaintiffs submitted to the Court in opposition to Defendant's original

13   motion for summary judgment supports the Court's finding that Defendant knew about the

14   discharge, or should have known about the discharge. First, in the MSJ Order the Court found

15   Plaintiff's bankruptcy counsel filed a Notice of the Pending Bankruptcy on October 20, 2014 and

16   Defendant promptly ceased all garnishment activity. (ECF No. 70 at p. 3). Thus, Defendant clearly

17   had actual knowledge the Plaintiffs filed for bankruptcy and it should have monitored the progress

18   of the case to prevent any violations of the automatic stay and to ensure that the information it was

19   reporting to the credit reporting agencies was accurate. For example, Defendant could have simply

20   filed a Request for Special Notice by using Local Form NV-2002 and it would have received

21   prompt notification of the Plaintiff's discharge. Moreover, when Defendant received Notice of the

22   Pending Bankruptcy, it clearly should have been aware that Defendants disputed that they were

23   obligated to pay the amounts due under the Default Judgment. Thus, Defendant's argument that it

24   neither knew, nor should it should have known, about the Discharge Order is without merit.

25           Finally, Defendant argues that Plaintiffs' cannot show any genuine issue of fact exists with

26   respect to their §1692e (8) claim and they cannot show Defendant communicated false

27   information to the CRAs. Defendant's clearly fail to understand the import of the MSJ Order. The

28

1  Plaintiffs have shown that general issues of material fact exist as to their §1692e (8) claim; that is

2  precisely why the Court denied Defendant's motion on this issue.

3        The Court's finding that genuine issues of material fact exist as to this claim led the Court

4  to allow the parties could to conduct extended discovery that might resolve such factual issues.

5  Defendant, however, failed to conduct meaningful discovery and it did not depose a FRCP

6  30(b)(6) witness from any credit reporting company. Moreover, the evidence that was gathered as

7  part of the extended discovery shows that Defendant falsely reported the status of the debt as a

8  "serious delinquency" in August of 2016 and May of 2017. Thus, the genuine issues of fact that

9  existed when the Court entered the MSJ Order continue to exist and Defendant's argument that

10  Plaintiffs have not adduced admissible evidence that Defendant made false misrepresentations

11  about the status of their debt is without merit.

12  **F. THE MSJ ORDER DID NOT GIVE DEFENDANT LEAVE TO RAISE NEW**
**ARGUMENTS IN FAVOR OF ITS MOTION FOR SUMMARY JUDGMENT;**
13  **AND EVEN IF IT WERE PLAINTIFF CAN PROVE THAT DEFENDANT'S**
**VIOLATIONS WERE NOT THE RESULT OF BONA FIDE ERROR BECAUSE**
14  **DEFENDANT KNOWINGLY AND ROUTINELY ALTERED CLIENT**
**DECLARATIONS AND KNOWINGLY FILED INACCURATE DOCUMENTS**
15  **WITH THE STATE COURT**

16

17        In the MSJ Order, the Court denied Defendant's motion for summary judgment as it

18  pertained to Plaintiff's §1692e (2)(A) and §1692e (8) claims because it found genuine issues of

19  material fact existed as to these claims. (ECF No. 70 at pp. 10-11). The Court also allowed for the

20  Credit Reporting Discovery Period so the parties could conduct limited discovery to try to resolve

21  the genuine issues of material fact that existed as to those claims. *Id.* at p. 16. In this regard, the

22  Court ruled if evidence gathered during the Credit Reporting Discovery Period shows AcctCorp

23  reported inaccurate information about the debt after the Discharge Order, it would have

24  misrepresented the legal status of the debt in violation of the FDCPA. *Id.* at pp. 11-12.

25        The Court ordered that the parties submit a proposed discovery plan that included a

26  deadline for the filing of dispositive motions based on evidence discovered during the Credit

27  Reporting Discovery Period. *Id.* For example, if the evidence gathered during the Credit Reporting

28  Discovery Period showed that Defendant ceased reporting information about the debt promptly

after the Discharge Order, then Defendant could file a motion for summary judgment based on that evidence because there would no longer be genuine issues of material fact that precluded the granting of summary judgment. The MSJ Order clearly did not provide the parties with the opportunity submit additional evidence that could have been submitted in connection with the original motion; and which was not discovered as a result of discovery conducted during Credit Reporting Discovery Period. The MSJ Order also did not allow the parties to raise legal arguments they could have raised in connection with the original motion for summary judgment; and which were not based on evidence gathered during the Credit Reporting Discovery Period.

Nevertheless, Defendant has submitted evidence that purportedly relates to its newly asserted argument that Plaintiffs' §1692e (2)(A) and §1692e (8) claims were the result of bona fide error. The MSJ Order did not grant Defendant leave to assert the bona fide error defense, or submit evidence that it could have submitted in connection with its original motion for summary judgment. Thus, Defendants arguments regarding the bona fide error defense, and any evidence related to the defense must be stricken.

On pages 4-7 of its Motion (ECF No. 82), Defendant cites to information that purportedly supports its bona fide error defense. However, as is depicted in the chart below, all of this information could have been submitted in connection with Plaintiffs' first motion for summary judgment as all of this information was disclosed by Defendant in its First Supplement to its Initial Disclosures that were served on June 30, 2017.

| 2nd MSJ Exhibit Letter | Bates Nos. | First Disclosure Item # |
|---|---|---|
| Exhibit B | AcctCorp 001663-1664 | Item # 74 p. 11 |
| Exhibit C | AcctCorp 000024-27 | Item # 12 p. 7 |
| Exhibit D | AcctCorp 000011-14 | Item # 8 p. 7 |
| Exhibit E | AcctCorp 000306 and 378 | Included in Item # 25 p. 8 |

*See Defendant's First Supplement to Initial Disclosures attached as Exhibit 8.*

It is also important to note that the new Declaration of Amanda Patterson submitted in connection with Second Motion for Summary Judgment includes statements about certain codes being entered in April 2015 and November 2016, that such codes were "updated," and "all affected accounts being converted…." Curiously, Ms. Patterson's statements regarding codes that Defendant "updated" and accounts that Defendant "converted" were not included in her October 10, 2017 Declaration ("Patterson's First Declaration") in support of Defendant's first motion for summary judgment (See ECF No. 49-13). Given the significance attributed to certain codes in Patterson's First Declaration, and in Ms. Clark's Declaration (ECF 51-5), it is reasonable to expect that Ms. Patterson would have disclosed information about the "updated" codes and the "converted" accounts in her First Declaration and/or in Declaration in support of Defendant's Reply Brief. Since Ms. Patterson failed to address these significant issues in connection with Defendant's first motion for summary judgment, Plaintiffs will certain cross-examine her about this material omission from her First Declaration. It can be reasonably inferred that the credibility of Ms. Patterson's declaration testimony and her trial testimony will be an issue for a jury to consider. Since such inferences must be drawn in favor of Plaintiffs, Defendant's motion for summary judgment on this ground must be denied.

Moreover, assuming Defendant was allowed to offer evidence of bona fide error, Plaintiffs would certainly be allowed to offer evidence to contradict the evidence offered by Defendant. As is set forth in Plaintiffs' Motion for Leave to File Sur-Reply or Supplemental Opposition Brief (ECF No. 63 and accompanying Exhibits ECF Nos. 63-1 to 63-5) (collectively the Sur-Reply Motion), Plaintiffs have discovered substantial evidence showing Defendant's violations are not the result of bona fide error and that Defendant routinely alters Declarations and submits Declarations and other evidence that it knows to be false. For example, in their Sur-Reply Motion, Plaintiffs' cited to the Deposition of former AcctCorp employee, David Kaplan. Mr. Kaplan testified that AcctCorp employees regularly "corrected" and "altered" documents provided by AcctCorp clients. (See ECF 63-1 at pp. 8-19). As to RC Willey, Mr. Kaplan testified that he prepared Affidavits/Declarations for RC Willey employees to sign. *Id. at p. 10.* He testified RC Willey employees would sometimes send back wrong documents, or declarations that were

inaccurate. *Id.* He testified if AcctCorp discovered a "basic math error" it would "correct" the declaration without sending the declaration back to RC Willey for signature:

> we would produce a new affidavit and we replace it with the old page 1, such as right here. If those numbers are wrong with this and they've already signed off on it, then we would just reproduce this document with the correct numbers.

*Id. at p. 11.* Mr. Kaplan testified that a similar procedure would be followed if an affidavit was prepared for a certain employee; but was signed by a different employee whose name is not included in the affidavit. *Id. at p. 12.*

Mr. Kaplan testified that sometimes more significant alterations were necessary and the document "correction" procedure sometimes involved electronically "cutting" signatures from one document and "pasting" such signatures into other documents. By way of example, Mr. Kaplan testified about situations where RC Willey employees would sign Declaration stating they signed the Declaration inside the State of Nevada, even though they were in Utah when they signed the document. *Id. at p. 14.* In those situations, Mr. Kaplan and other AcctCorp employees would "move" signatures using "cut and paste." *Id.* Mr. Kaplan specifically described how he went about "moving signatures:"

> I would actually use IrfanView, which is a JPG viewer. Convert the document to a BMP and use Paint, Microsoft Paint, to actually move the signature onto the PDF.

*Id.*

Similarly, Amanda Patterson testified at her deposition that at a certain point, AcctCorp knew that RC Willey had changed the terms of its contracts to provide that the law of the state where its customer resided would govern the contract and that she *understood* that RC Willey had sent the revised terms to all of its customers. *Id. at p. 4.* Nevertheless, she admitted that AcctCorp would file applications for default judgment that did not have the revised terms attached to the contract; and which still contained the provision that stated that Utah law governed the contract. *Id.* Ms. Patterson testified that AcctCorp's failure to attach the correct terms and conditions was not an isolated incident ant the she was aware "that it has happened on more than one occasion." *Id. at p. 6.* Ms. Patterson also testified that AcctCorp would replace documents attached to client affidavits without send the document back to the client for signature. *Id.*

1    Plaintiffs submit that Defendant is precluded from asserting the bona fide error defense and

2    from offering evidence that supports the defense. Even if the Court were to allow Defendant to

3    assert the defense, the testimony of Ms. Patterson and Mr. Kaplan, as set forth in the Sur-Reply

4    Motion, shows Defendant routinely altered documents and knowingly submitted incorrect

5    documents to the Court. Plaintiffs' submit that this testimony wholly contradicts evidence

6    submitted in support of Defendant's bona fide error defense. Accordingly, Plaintiff submits that

7    Defendant's argument that the bona fide error defense shields it from liability is without merit.

8    **V. CONCLUSION**

9    For all the foregoing reasons, Plaintiffs respectfully submit Defendant's Motion for

10   Summary Judgment must be denied.

11   DATED this 21st of March, 2019

12                                          THE LAW OFFICE OF VERNON NELSON

13
                                           By:      */s/Vernon A. Nelson, Jr., Esq.*
14                                                  VERNON A. NELSON, JR., ESQ.
                                                    Nevada Bar No.: 6434
15                                                  9480 S. Eastern Avenue, Suite 252
                                                    Las Vegas, NV  89123
16                                                  Tel:  702-476-2500
                                                    Fax:  702-476-2788
17                                                  E-Mail:  vnelson@nelsonlawfirmlv.com
                                                    *Attorneys for Plaintiffs*
18                                                  *John and Christine Carter*

19

20

21

22

23

24

25

26

27

28