# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN CARTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA, *et al.*, <br><br> Defendants. | Case No. 2:16-cv-02967-RFB-VCF <br><br> **ORDER** |

## I.  INTRODUCTION

Before the Court is Defendant Richland Holdings, Inc. d/b/a/ AcctCorp of Southern Nevada's ("AcctCorp") Second Motion for Summary Judgment. ECF No. 82.  For the following reasons, the Court grants Defendant's Motion in its entirety.

## II.  PROCEDURAL BACKGROUND

Plaintiffs John and Christina Carter ("Plaintiffs") sued Defendants AcctCorp, RC Wiley aka RC Wiley Financial Services ("RC Wiley"), Jerome R. Bowen, and Randall Corporation dba Bowen Law Offices ("Bowen") on December 22, 2016. ECF No. 1.  Plaintiffs filed an amended complaint on September 19, 2017, asserting claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Chapter 598 of the Nevada Revised Statute ("NRS") for

/ / /

Deceptive Trade Practices Act ("NVDTPA"); and civil conspiracy.[1]  ECF No. 40.  The amended complaint also removed Defendant Jerome R. Bowen as a party <u>Id</u>.

The remaining defendants moved for summary judgment on October 10, 2017.  ECF Nos. 49, 50.  Plaintiffs filed an opposition, and Defendants filed a reply.  ECF Nos. 51, 55.  Defendants then moved to produce specific documents on November 8, 2017.  ECF No. 54.  After the motion to produce documents was fully briefed, the Court granted Defendants' request on January 5, 2017.  ECF Nos. 57–58, 62.

The Court heard oral argument on the Motion for Summary Judgment on August 23, 2018. ECF No. 69. During the hearing, the Court orally granted summary judgment in favor of Defendants RC Wiley and Bowen on all claims asserted against them. ECF No. 69. A written order issued on September 24, 2018. ECF No. 70. The order allowed Plaintiffs to continue with their FDCPA claims under Section 1692e, but only on violations that occurred on or after December 23, 2015. <u>Id.</u> at 11–12. The Order also re-opened discovery for the limited purpose of obtaining documents and potential deposition testimony from credit reporting agencies for the periods of January 1, 2014 to March 31, 2017. <u>Id.</u> at 16. To that end, the Court approved a scheduling order reopening discovery for seventy-five days. ECF No. 71.  On February 21, 2019, AcctCorp filed a second motion for summary judgment. ECF Nos. 82, 83 (errata). The motion was fully briefed. ECF Nos. 84, 87.  The Court held a hearing regarding the motion on September 6, 2019.  ECF No. 92. This written order now follows.

/ / /

/ / /

---

[1] Plaintiffs asserted their FDCPA claims against Defendants AcctCorp and Bowen only. The remaining claims were asserted against all Defendants.

### III. FACTUAL BACKGROUND

The Court repeats its factual findings made in its written order on September 24, 2018 and supplements them with relevant discovery conducted after the Court's first written order.

#### a. Undisputed Facts

John Carter opened a credit account with RC Willey on May 5, 2004. He added Christine Carter to the same credit account on July 26, 2004. The credit account was governed by the Revolving Security Agreement ("Agreement"). The Agreement allowed RC Willey to change the terms after giving Plaintiffs the "minimum notice required by law" and allowed the changes to apply to any existing account balance. Plaintiffs also completed a Credit Application and Security Agreement to update the existing credit account on May 27, 2009.

On August 1, 2010, RC Willey changed the terms of the Agreement. In the changed terms, RC Willey provided that the state in which Plaintiffs reside—Nevada—would govern the interpretation or enforcement of the Agreement in the event that Defendants initiated any legal action associated with the Agreement against Plaintiffs. RC Willey also included a term that required Plaintiffs to "pay all of [RC Willey's] costs of collection, including, but not limited to, a collection agency fee assessed by a collection agency and/or reasonable attorney fees, with or without suit, together with all unpaid interest and court costs." Plaintiffs were sent the revised terms of the Agreement at least forty-five days before the terms became effective. Plaintiffs continued to charge the credit account until May 10, 2011.

Plaintiffs became delinquent on the credit account on March 11, 2014. The account balance was then $8,286.54. A contractual collection fee of $4,143.27 (50% of the account balance) was added to the owed balance, bringing the total owed to $12,429.81. RC Willey then assigned the account to AcctCorp.

AcctCorp filed an action ("State Action") to collect the delinquent balance from Plaintiffs in state court on April 11, 2014. Plaintiffs were allegedly served under Rule 4 of the Nevada Rules of Civil Procedure on April 23, 2014. A process server served Jane Doe, described as a female of suitable age and discretion that resided at the Carters' residence, but who refused to give her full name. Bowen served as AcctCorp counsel of record in the State Action. To assist in recovering the amount owed, RC Willey submitted an Affidavit of Custodian of Records to authenticate the documents on which AcctCorp relied.

After Plaintiffs failed to participate in the State Action, AcctCorp filed an Application for Default Judgment on July 18, 2014, seeking the account balance of $12,429.81. The state court granted AcctCorp's Application for Default Judgment and awarded the $12,429.81 account balance plus $800.96 in interest, $592.50 in costs, and $750.00 in attorney fees. The Notice of Entry of Default was filed on August 12, 2014 and mailed to Plaintiffs' residence.

Plaintiffs then filed an action ("Bankruptcy Action") for Chapter 7 Bankruptcy on September 19, 2014. In their bankruptcy filings, Plaintiffs failed to identify Defendants as creditors holding unsecured priority claims and listed only RC Willey—but not AcctCorp—as a creditor holding unsecured nonpriority claims. Plaintiffs declared under penalty of perjury that the list of creditors was complete and correct during the Bankruptcy Action. They also "assume[d] all responsibility for errors and omissions."

Although Plaintiffs never amended their list of creditors to include AcctCorp, Plaintiffs' counsel in the Bankruptcy Action filed a Notice of the Pending Bankruptcy in the State Action on October 20, 2014. AcctCorp faxed a Notice of Release of Garnishment to Plaintiffs' respective employers and the City Constable the day after receiving the Notice of the Pending Bankruptcy. On December 24, 2014, a discharge order was entered on December 24, 2014 ("Discharge Order").

The Discharge Order discharged Plaintiffs' obligation to pay any amounts owed under the Default Judgment.

In late 2015, Plaintiffs attempted to apply for a credit card with Discover but were denied. Plaintiffs were also denied a favorable rate related to an application to refinance their car around that same time. Plaintiffs were required to make payments at a higher interest rate that equated to approximately $100 more per month for the duration of a three-year term.

AcctCorp's Debtor History Report indicated that it received notice that Plaintiffs filed for Chapter 7 Bankruptcy on October 21, 2014. Although Plaintiffs received their bankruptcy discharge on December 29, 2014, AcctCorp's debtor history report did not reflect the discharge until April 6, 2015, when a note was entered into the account that "PER PACER. BK DSCHRGD: FRWD TO AME TO CODE THE ACCOUNT." On or around April 6, 2015, the account status in AcctCorp's Debt Master System was changed from a "Judgment Status" to a "Bankruptcy Status." On November 1, 2016, the account status was changed from Bankruptcy to "Closed at Agency Request." Also, on November 1, 2016, the account's balance was adjusted to zero, and on November 2, 2016 the Bureau Report status, which indicates whether or not the account was being reported to credit bureaus, was changed from "True" to "False," meaning that the account was no longer being reported to credit bureaus.

Consumer reports received by JP Morgan Chase Bank from 2016 and 2017 show the AcctCorp tradelines as having a zero current balance accompanied with a code "38." Code 38, according to the glossary of terms that begins each report, means "serious delinquency, and public record or collection item filed."

**b. Disputed Material Facts**

The parties dispute the legal effect of the circumstances.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

### B. FDCPA

The Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 – 1692p) "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." Heintz v. Jenkins, 514 U.S. 291, 292 (1995). Section 1692e proscribes debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. Section 1692e proceeds to provide a non-exhaustive list of conduct that is a violation of section 1692e, including the false representation of "the character, amount, or legal status of any debt," and "communicating

or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.'" 15 U.S.C. §§ 1692e(2)(A), 1692e(8).

**IV.     DISCUSSION**

In its second motion for summary judgment, AcctCorp raises several arguments that were not briefed in its first motion for summary judgment. Such arguments include: 1) that this Court lacks subject matter jurisdiction to consider Plaintiffs' FDCPA claims; 2) that Plaintiffs' FDCPA claims are precluded by the Bankruptcy Code, 3) that Plaintiffs' FDCPA claims are really violations of the Fair Credit Reporting Act (15 U.S.C. §§ 1681 – 1681x); and 4) that AcctCorp cannot be liable under any provision of section 1692e because any reporting that it made to consumer reporting agencies was not in connection with the collection of a debt.

Plaintiffs argue that all the new arguments must be rejected because they relate to matters that have already been decided by the Court. Specifically, Plaintiffs urge the Court to adopt the "law of the case doctrine," which holds that once an issue has been decided it becomes the law of the case, as articulated in a case from the Central District of California (that Plaintiffs incorrectly cite in their briefing as an appellate decision from the Ninth Circuit). Magnesystems, Inc. v. Nikken, Inc., 933 F.Supp. 944 (C.D. Cal. 1996).

The Court rejects Plaintiffs' argument. This Court's previous Order did not limit what arguments could be made in any future dispositive motions—it merely limited those motions to addressing only the remaining claims in the case. ECF No. 70. The Court will address and consider the arguments brought before it in this second motion for summary judgment. The Court's earlier ruling is limited to the arguments raised before the Court previously.

/ / /

First, the Court addresses the question of subject matter jurisdiction. AcctCorp argues that the case <u>Walls v. v. Wells Fargo Bank, N.A.,</u> proscribes parties from seeking remedies through the FDCPA when the alleged FDCPA violation also violates a bankruptcy discharge order. 276 F.3d 502 (9th Cir. 2002). Because such claims should properly only be heard by the bankruptcy court, AcctCorp argues, this Court no longer has subject matter jurisdiction to hear the FDCPA claims. The Court disagrees.

As a preliminary matter, it is debatable whether AcctCorp's actions would have violated a bankruptcy discharge order. Section 524 of the Bankruptcy Code enjoins "the commencement or continuation of an action . . . to collect, recover or offset [a discharged debt]." 11 U.S.C. § 524(a)(2). Reporting a debt that has been discharged to a consumer reporting agency is not *necessarily* collection activity, as AcctCorp itself argues in the alternative and as the Court discusses in more detail later in this Order.

Furthermore, even if AcctCorp's activity could potentially constitute a violation of the bankruptcy discharge order, <u>Walls</u> remains distinguishable from this case. In <u>Walls</u>, the plaintiff sought relief simultaneously under both 11 U.S.C. § 524 *and* 15 U.S.C. § 1692f, a provision of the FDCPA that is not at issue in this case. This Court does not read <u>Walls</u> as *requiring* that *any* putative FDCPA violation that could also implicate the Bankruptcy Code be litigated in bankruptcy court. This is also a finding that all other Circuit Court of Appeals that have addressed the issue have rejected. <u>See</u>, e.g., <u>Randolph v. IMBS, Inc.,</u> 368 F.3d 726, 732 (7th Cir. 2004) ("The Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA, any more than the latter Act implicitly repeals itself"); <u>Simon v. FIA Card Servs., N.A.,</u> 732 F.3d 259, 271 (3d Cir. 2013) (refusing to find a "categorical preclusion of the FDCPA claims" when such claims also implicate the Bankruptcy Code); <u>Garfield v. Ocwen Loan Servicing, L.L.C.,</u> 811

F.3d 86, 91 (2d. Cir. 2016) ("No irreconcilable conflict exists between the post-discharge remedies of the Bankruptcy Code and the FDCPA."). Thus the Court finds that it has subject matter jurisdiction to hear the FDCPA claims.

The Court next addresses the threshold consideration of whether AcctCorp's reporting was made in connection to an attempt to collect the debt. This issue was not briefed by the parties in the last set of summary judgment motions, and so the Court did not address it. Now that this issue has been raised, the Court addresses the argument and reverses any implied prior finding.

AcctCorp argues that it was not reporting the debt in connection to an attempt to collect the debt pursuant to 15 U.S.C. § 1692e, but to comply with the Fair Credit Reporting Act. While neither the FDCPA nor the Ninth Circuit have defined the phrase, "in connection with the collection of any debt," a generally accepted definition derived from other Circuit Court of Appeals is that "for communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011); see also Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385–86 (7th Cir. 2010).

The Court agrees with AcctCorp that Plaintiffs have not shown that any reporting made after December 23, 2015 was made in connection with the collection of a debt. To support their claim that AcctCorp's reporting *was* made in connection with the collection of a debt, Plaintiffs point to a declaration that they did not attach to their briefing in opposition to the instant motion for summary judgment. In this declaration, submitted in opposition to a prior motion for summary judgment, a former AcctCorp paralegal named Jamie Clark states that AcctCorp did not update its records to show that the balance on the account was adjusted to zero until

November 1, 2016, and that on November 2, 2016 the bureau report changed from T to F, which would indicate that since April 2015 the account had been reported to credit bureaus. ECF No. 51-5 at 2 – 3. Plaintiffs extrapolate from this declaration the idea that "[d]efendant continued collection efforts as though it were collecting on a judgment." ECF No. 84 at 14. But the Court does not find that this declaration supports Plaintiffs' assertion. All the declaration does is confirm that AcctCorp may not have sufficiently updated its internal records. It does not support the assertion, nor does Plaintiff offer any other evidence showing, that AcctCorp made any communications to the credit reporting bureaus in an attempt to induce payment from Plaintiffs.

Additionally, the consumer reports that *are* in the record also provide no evidence with which to infer that AcctCorp was making communications to credit reporting bureaus in connection with attempts to collect on the debt. Plaintiffs attach to their opposition papers two consumer reports received by JP Morgan Chase Bank in 2016 and 2017 respectively. Each document lists the Acctcorp tradeline as having a code "38," which, according to the glossary of terms that begins each report, means "serious delinquency, and public record or collection item filed." ECF Nos. 84-6, 84-7. Plaintiffs make much ado of this code, however the same tradelines for each account show a zero balance. Potentially incorrect codes are insufficient to find that AcctCorp was reporting the debt in an attempt to induce payment from Plaintiffs. It is undisputed that the tradelines showed that no amount was currently owing. Plaintiffs may potentially have a FCRA claim to the extent that the tradelines represented that the debt was delinquent when in fact nothing was owed, but that is not the claim they alleged in their complaint.

It is undisputed that days after receiving notice of the pending bankruptcy, AcctCorp submitted a notice of release of garnishment to Plaintiffs' respective employers and the City Constable. There is no evidence that AcctCorp made any attempt to reinstate the garnishments

after learning of the bankruptcy discharge, made any attempt to contact Plaintiffs regarding the debt after the discharge, or represented to creditors or consumer reporting agencies that any balance was owed on the debt after the discharge. Even construing all inferences in favor of Plaintiffs as the law requires, the Plaintiffs' evidence does not support a finding that AcctCorp made any misrepresentations regarding the debt in connection with an attempt to collect on said debt. For these reasons, the Court finds in favor of AcctCorp as a matter of law.

## V. CONCLUSION

**IT IS ORDERED THAT** Defendant Richland Holdings, Inc's Second Motion for Summary Judgment, (ECF No. 82), is granted in its entirety.

**IT IS FURTHER ORDERED** that Plaintiffs refile their exhibits ECF Nos. 84-6 and 84-7 to accord with LR IC 6-1(a), which requires that all documents filed with the Court redact partially or in full social security numbers, dates of birth, and home addresses.

The Clerk of the Court is instructed to enter judgment in favor of Defendant Richland Holdings, Inc. and close the case.

DATED: September 30, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**