1 | **Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
2 | Nevada Bar No. 4949
Chad F. Clement, Esq.
3 | Nevada Bar No. 12192
Jared M. Moser, Esq.
4 | Nevada Bar No. 13003
10001 Park Run Drive
5 | Las Vegas, Nevada 89145
Telephone: (702) 382-0711
6 | Facsimile: (702) 382-5816
tcoffing@maclaw.com
7 | cclement@maclaw.com
jmoser@maclaw.com
8 | *Attorneys for Richland Holdings, Inc.*
*d/b/a AcctCorp of Southern Nevada, RC Willey*
9 | *aka RC Willey Financial Services, and Randall*
*Corporation d/b/a Bowen Law Offices*

10

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| JOHN CARTER and CHRISTINE CARTER, | Case No.:  2:16-cv-02967-RFB-VCF |
| Plaintiffs, | |
| vs. | |
| RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA, a Nevada corporation; RC WILLEY aka RC WILLEY FINANCIAL SERVICES; and RANDALL CORPORATION d/b/a BOWEN LAW OFFICES, | **DEFENDANTS RICHLAND HOLDINGS, INC. D/B/A ACCTCORP OF SOUTHERN NEVADA'S AND RC WILLEY AKA RC WILLEY FINANCIAL SERVICES' MOTION FOR ATTORNEY FEES** |
| Defendants. | |

Defendants Richland Holdings, Inc., d/b/a AcctCorp of Southern Nevada ("AcctCorp") and RC Willey aka RC Willey Financial Services ("RCW," and together with AcctCorp, "Movants"), by and through their attorneys of record, the law firm of Marquis Aurbach Coffing ("MAC"), and pursuant to 28 U.S.C. § 1927, 15 U.S.C. § 1692k(a)(3), Nevada Revised Statutes ("NRS") § 18.010, the underlying contract at issue in this case, and this Court's inherent power, hereby file their Motion for Attorney Fees ("Motion"). This Motion is based upon the following Points and Authorities, all pleadings and papers on file

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

herein, and any oral argument allowed by this Court at the time of hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This action was *not* intended to right a wrong.  Rather, it was brought in bad faith, for no other reason than to harass Movants.  Non-party Safeguard Credit LLC d/b/a Credit Restoration of Nevada ("CRN") and counsel for Plaintiffs John Carter and Christine Carter ("the Carters") solicited the Carters to get authorization for CRN and the Carters' counsel to bring frivolous claims intended to put AcctCorp's "mom and pop" operation out of business. The Carters' minimal involvement is evident in their failure to participate in good faith.

Moreover, this Court's determination that the Carters' claims were either completely unsupported by law or fact, or were time-barred from the beginning, must guide this Court's exercise of discretion toward granting attorney fees to Movants.  On top of that, AcctCorp's direct competitor is involved in solicitations of prospective clients like the Carters for cases like, and including, this one and has explicitly stated his plan to "attack" AcctCorp.  There is no question, this case was brought in bad faith and for no reason but to harass.[1]

Thus, Movants are entitled, under 28 U.S.C. § 1927, 15 U.S.C. § 1692k(a)(3), NRS § 18.010, the underlying contract in this case, and this Court's inherent power, to an award of attorney fees, against the Carters and their counsel, jointly and severally, incurred in defending this vexatious and frivolous case, which for the entire case totals $139,269.00 ($102,887.00 for AcctCorp, $36,382.00 for RCW).

## II.    STATEMENT OF FACTS RELEVANT TO THIS MOTION

### THE CARTERS' UNDERLYING DEBT AND DEFAULT

1.    John Carter opened a credit account with RCW on May 5, 2004, and he

---

[1] Notably, Judge Mahan already determined that the Carters' counsel has brought several similarly frivolous cases in bad faith and for purposes of harassment, awarding attorney fees and costs to Movants in the case styled *Geraldo et al. v. Richland Holdings, Inc. et al.*, No. 2:17-cv-15-JCM-PAL, ECF Nos. 40, 49-50, following the Ninth Circuit's affirmance of dismissal in that case.  *See Geraldo et al. v. Richland Holdings, Inc. et al.*, 716 F. App'x 728 (9th Cir. 2018).

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

added Christine Carter to the same credit account on July 26, 2004.  The account was governed by the Revolving Security Agreement ("Agreement"), which allowed RCW to change the terms after giving the Carters the "minimum notice required by law" and allowed the changes to apply to any existing account balance.  The Carters also completed a Credit Application and Security Agreement to update the existing credit account on May 27, 2009.[2]

2.     On August 1, 2010, RCW changed the terms of the Agreement, including a change that the state in which the Carters reside, *i.e.,* Nevada, would govern the interpretation or enforcement of the Agreement in the event that RCW or its assignee, AcctCorp, initiated any legal action associated with the Agreement against the Carters. RCW also included a term requiring the Carters to "pay all of [RCW's] costs of collection, including, but not limited to, a collection agency fee assessed by a collection agency and/or ***reasonable attorney fees, with or without suit***, together with all unpaid interest and court costs."  The Carters were sent the revised terms of the Agreement at least 45 days before the terms became effective, and they continued to charge the credit account until May 10, 2011.[3]

3.     The Carters became delinquent on the credit account on March 11, 2014, with an account balance, then, of $8,286.54.  A contractual collection fee of $4,143.27 (50% of the account balance) was added to the owed balance, bringing the total owed to $12,429.81.  RCW then assigned the account to AcctCorp.[4]

**AcctCorp's action to recover Plaintiff's outstanding balance**

4.     AcctCorp filed an action ("State Action") to collect the delinquent balance from the Carters in state court on April 11, 2014.  The Carters were served under Nevada Rule of Civil Procedure ("NRCP") 4 on April 23, 2014, when a process server served Jane Doe, a female of suitable age and discretion that resided at the residence but refused to give

---

[2] ECF No. 70 at 1:28-2:5.

[3] *Id.* at 2:6-14 (emphasis added).

[4] *Id.* at 2:15-18.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

her full name.  Defendant Randall Corporation d/b/a Bowen Law Offices ("Bowen") acted as AcctCorp's counsel of record in the State Action. To assist in recovering the amount owed, RCW submitted an Affidavit of Custodian of Records to authenticate the documents on which AcctCorp relied.[5]

5.     After the Carters failed to participate in the State Action, AcctCorp obtained default judgment and was awarded the $12,429.81 account balance plus $800.96 in interest, $592.50 in costs, and $750.00 in attorney fees.  Notice of Entry of Default was filed on August 12, 2014, and mailed to the Carters' residence.[6]

6.     The Carters filed an action ("Bankruptcy Action") for Chapter 7 bankruptcy on September 19, 2014, in which they failed to ever identify AcctCorp as a creditor and listed only RCW as a creditor holding unsecured nonpriority claims.  The Carters declared under penalty of perjury that the list of creditors was complete and correct during the Bankruptcy Action.  They also "assume[d] all responsibility for errors and omissions."[7]

7.     The Carters never amended their schedules to include AcctCorp, but their counsel in the Bankruptcy Action filed a Notice of the Pending Bankruptcy in the State Action on October 20, 2014.  AcctCorp faxed a Notice of Release of Garnishment to the Carters' respective employers and the City Constable the next day.  An order discharging debtors was entered on December 24, 2014 ("Discharge Order"), effectively discharging the Carters' obligation to pay any amounts owed under the Default Judgment.[8]

**CRN AND PLAINTIFF'S COUNSEL FORGE A PLAN TO "ATTACK" ACCTCORP**

8.     CRN is a company that is, at least in part, in the credit repair business, with

---

[5] *Id.* at 2:19-25.

[6] *Id.* at 2:26-3:2.

[7] *Id.* at 3:3-3:8.

[8] *Id.* at 3:9-3:15.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Harry Jacobs ("Jacobs") acting as the Chief Executive Officer during all relevant times.[9]

9.      In July 2016, CRN was purchased by the MLL Trust, the trustee of which is Michael Feeney ("Feeney").[10]

10.     Feeney is also the principal of three debt collection companies in Las Vegas, Nevada, who are AcctCorp's competitors: (1) Nevada Credico, Inc.; (2) Sentry Recovery & Collections, Inc.; and (3) Allied Collection Services, Inc.[11]

11.     Feeney is also "a principal/member [of] … [CRN]."[12]

12.     Vernon Nelson is counsel of record for the Carters in this case, and he was introduced to Jacobs by Feeney, after Feeney acquired CRN in Summer 2016.[13]

13.     By that time, Feeney and Jacobs had concocted a litigation scheme and business idea to scour the courts' public records to identify and locate consumers to solicit for legal cases involving the Fair Debt Collection Practices Act ("FDCPA").[14]

14.     This was a new scheme and business concept, perfectly timed with Feeney's acquisition of CRN; CRN had not been doing it previously.[15]

15.     The plan was to financially profit off of the litigation scheme and allow Feeney to indirectly attack competitors, like AcctCorp, by burying them in litigation, attorney fees, and costs.[16]

---

[9] Depo. of Harry Jacobs Tr., Dec. 7, 2017 ("Jacobs Depo. Tr."), true, accurate, and authentic copies of the relevant excerpts from which are attached hereto as **Exhibit A**, at 11:23-12:1, 13:11-13.

[10] *Id.* at 19:1-7, 19:16-23.

[11] Decl. of Jared M. Moser, Esq. ("Moser Decl."), at ¶ 3, a copy of which is attached hereto as **Exhibit B**; NV Sect. of State Printouts, a true, accurate and authentic copy of which is attached hereto as **Exhibit C**.

[12] Decl. of Michael Feeney ("Feeney Decl."), attached hereto as **Exhibit D**.

[13] *See generally* Docket, herein.

[14] *See* Ex. A, Jacobs Depo. Tr., at 63-65.

[15] *See id.*

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

16.    In the summer and early fall of 2016, the Carters' counsel, along with Jacobs and Feeney, were in discussions regarding their scheme to solicit prospective FDCPA plaintiffs to file lawsuits on those individuals' respective behalves.[17]

17.    Specifically, Jacobs and Nelson discussed CRN's "concept of identifying debtors: consumers that owed debt, that had been sued, as potential clients for CRN and also at the same time trying to find out if Mr. Nelson had any interest in [CRN] sending … a large volume of – of potential FDCPA cases to him."[18]

18.    The two agreed to further the litigation scheme and, from September 2016 forward, CRN started soliciting individuals to sue AcctCorp via a telephone call or email, or on Jacobs' radio show, including ten plaintiffs suing AcctCorp in seven different cases.[19]

19.    On or about September 30, 2016, Feeney sent a text message to former AcctCorp employee, Tom Wilbur, indicating Feeney and his businesses planned to "attack" AcctCorp.[20]

20.    In December 2016, Nelson filed the first of many actions against AcctCorp.[21]

21.    Wilbur later became a whistleblower, addressing these connections or relationships and reporting the anti-competitive or unethical conduct of CRN, Feeney, and

---

[16] *See* <u>Engagement Letter</u>, a true, accurate, and authentic copy of which is attached hereto as **Exhibit E**, at 2 (indicating CRN receives a portion of what the plaintiff recovers); *see also* Ex. A, <u>Jacobs Depo. Tr.</u>, at 103:17-19 (indicating CRN receives referral fees from other attorneys); <u>CRN Emails</u>, Bates No. CRN-CARTER000001-2, & 5-6, true, accurate, and authentic copies of which are attached hereto as **Exhibit F**, with corresponding <u>Affid. of Custodian of Records</u>; <u>PACER search results</u>, a true, accurate, and authentic copy of which is attached as **Exhibit G** (showing the cases that Nelson has filed since Jan. 1, 2016, against various debt collection companies and creditors, none of which include Feeney's entities); Ex. B, <u>Moser Decl.</u>, ¶¶ 4-6 (authenticating exhibits).

[17] Ex. A, <u>Jacobs Depo. Tr.</u>, at 69:12-71:16, 95:1-96:11.

[18] *Id.* at 70:9-15

[19] *Id.* at 88:11-88:25.

[20] *See* <u>Sept. 30, 2016 Text Message from Feeney to Wilbur</u>, a true, accurate, and authentic copy of which is attached hereto as **Exhibit H** ("<u>Feeney Text</u>"); *see also* <u>Decl. of Amanda Patterson</u> ("<u>Patterson Decl.</u>"), ¶¶ 5-9, attached as **Exhibit I** (authenticating Feeney Text and Wilbur letter).

[21] *See* Ex. G, <u>PACER search results</u>; *See also* Ex. B, <u>Moser Decl.</u>, ¶ 6 (authenticating same).

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

1   the Carters' counsel to the Office of the Attorney General, the FTC Office of Policy and

2   Coordination, the Nevada Department of Business and Industry's Financial Institutions

3   Division, the FBI, the IRS, the Governor's Office, the Nevada State Bar, and others.[22]

4   **THE CARTERS ARE SOLICITED TO, AND EVENTUALLY DO, COMMENCE THIS LAWSUIT**

5          22.     In November 2016, a CRN employee directly solicited the Carters via email

6   to file this lawsuit, arguably engaging in the unauthorized practice of law, and advising that

7   CRN would get the Carters $1,000 in statutory damages "in as little as 60-90 days."[23]

8          23.     After the Carters voluntarily executed Durable Powers of Attorney and an

9   Acknowledgement of Engagement, this lawsuit was filed December 22, 2016, but as late as

10  May 2017, their counsel did not even have the Carters' contact information; the lawsuit was

11  being driven by CRN.[24]

12         24.     Although CRN and the Carters' counsel were operating under the guise of

13  repairing the Carters' credit, as late as September 2017, CRN had never performed credit

14  repair services for him; CRN never even obtained a copy of their credit reports.[25]

15  **THE CARTERS AND THEIR COUNSEL MAINTAIN THIS LAWSUIT KNOWING IT IS BASELESS**

16         25.     Within months of filing this case, the Carters' counsel had filed a total of

17  seven nearly identical cases, asserting the same claims for relief, based on almost exactly the

18  same facts, against most or all of the same defendants.[26]

19  ───────────────

20  [22] *See* <u>Undated Wilbur letter with Certified Mailing slips</u>, dated Nov. 4, Nov. 10, and Nov. 11, 2016, true, accurate, and authentic copies of which are attached hereto as **Exhibit J**; *see also* Ex. I, <u>Patterson Decl.</u>, at ¶¶ 7-9 (authenticating letter and mailing slips).

21

22  [23] *See* Ex. F, <u>CRN Emails</u>, Bates No. CRN-CARTER000005-6, 13-14.

23  [24] *See id.* at CRN-CARTER000031-32.

24  [25] *See id.* at CARTER-CRN-000123 [sic] (advising that almost a year after the lawsuit began, CRN would need access to the Carters' credit reports).

25  [26] *See Cox v. Richland Holdings, Inc. et al.*, No. 2:16-cv-2914-APG-VCF (filed Dec. 15, 2016); *see also Carter v. Richland Holdings, Inc. et al.*, No. 2:16-cv-2967-RFB-VCF (filed Jan. 17, 2017);

26  *Geraldo et al. v. Richland Holdings, Inc. et al.*, No. 2:17-cv-15-JCM-PAL (filed Jan. 3, 2017); *LaForge v. Richland Holdings, Inc. et al.*, No. 2:17-cv-782-APG-VCF (filed Mar. 3, 2017); *Cutts v.*

27  *Richland Holdings, Inc. et al.*, No. 2:17-cv-1525-JCM-PAL (filed May 31, 2017).

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

26.     Throughout this and other cases, the Carters' counsel has been admonished as to the frivolity of the claims asserted, yet has refused to relent and, instead, continues to multiply proceedings by pressing the same issues.   In short, Plaintiff and counsel have brought this action with no support and for no other reason than to "attack" AcctCorp and its affiliates.[27]   Examples include, among others, the following:

a.      In *Geraldo*, Judge Mahan dismissed the plaintiffs' entire case in July 2017, on claim preclusion grounds, and the Ninth Circuit affirmed, on March 29, 2018, on judicial estoppel grounds.[28]   After the Ninth Circuit affirmed, Judge Mahan granted motions for more than $37,000 in attorney fees and costs against the plaintiffs and in favor of Movants, and for nearly $70,000 against the plaintiffs' and the Carters' counsel before ultimately disqualifying counsel.[29]

b.      In *Cox*, the Carters' counsel tried, in September 2017, to disqualify MAC, necessitating several months of discovery on disqualification-related issues. Ultimately, however, no one from Plaintiff's counsel's office bothered to appear for the hearing on their motion to disqualify, resulting in a denial of the motion and sanctions against counsel totaling $4,500.[30]

c.      Also in *Cox*, when, in January 2018, the Court gave the plaintiff an opportunity, and clear direction, to amend and correct several deficiencies in the complaint, counsel filed an Amended Complaint that far exceeded the scope of leave.  The Court ultimately struck the amended pleading.[31]

d.      In this case, the Court recognized deficiencies in the Carters'

---

[27] Ex. H, <u>Feeney Text</u>.

[28] *See Geraldo*, No. 2:17-cv-15-JCM-PAL, at ECF Nos. 23 & 41.

[29] *See id.*, ECF Nos. 49, 50, 97, 98, & 110.

[30] *See Cox*, No. 2:16-cv-2914-APG-VCF, ECF Nos. 39, 88, 90, 92, 109, & 111.

[31] *See id.*, ECF No. 115.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    pleadings, back in August 2017, granting Movants' motion to dismiss.   The Carters

2    and counsel, though, never relented in pursuing their baseless claims, which would

3    ultimately be disposed of on summary judgment motions when the Carters showed

4    they had absolutely no evidence to support their baseless allegations.[32]

5  **III.   LEGAL STANDARDS**

6        Several bases support an award of attorney fees, and many of those bases overlap.

7    Specifically, Federal Rule of Civil Procedure ("FRCP") 11 and 15 U.S.C. § 1692k(a)(3), as

8    well as Nevada Rules of Civil Procedure ("NRCP") 11 and NRS chapter 18, all allow the

9    Court to award attorney fees based on the frivolity and harassing nature of the Carters'

10   claims, all brought in bad faith.   The Carters' counsel has also "unreasonably and

11   vexatiously" multiplied proceedings by continuing to maintain arguments that have been

12   consistently rejected, opposing summary judgment when no evidence existed to support the

13   baseless claims in this action, which warrants a sanction against counsel under 28 U.S.C. §

14   1927.  Finally, to the extent the Court finds the conduct of the Carters and counsel improper,

15   all relevant considerations in mind, yet does not believe that one of the aforementioned

16   authorities supports a fee award to Movants, the Court may still award fees based on its

17   inherent powers.

18        This Court has previously recognized the propriety of sanctions against even a pro se

19   litigant, where a "Plaintiff … compiled a long history of noncompliance with court orders

20   and has continuously asserted frivolous grounds" such that "the plaintiff has succeeded only

21   in having most of his claims and causes of action dismissed against him with prejudice."  *In*

22   *re "Santa Barbara Like It Is Today" Copyright Infringement Litig.*, 94 F.R.D. 105, 106 (D.

23   Nev. 1982).   The court in *Santa Barbara* explicitly warned that "any attempt to relitigate

24   alleged infringements that were time-barred would result in the imposition of sanctions

25   against him."  *Id.* at 107.  This case is on all fours with *Santa Barbara*, except that the

26

27   ───────────────
     [32] *See* ECF Nos. 38, 39, 70, & 93.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Carters, here, were represented by counsel, which does not afford the same "liberal standards available to pro se litigants," making sanctions even more warranted.  *Id.* at 106.

### A.   THE COURT MAY AWARD ATTORNEY FEES UNDER THE FDCPA, 15 U.S.C. § 1692K(A)(3).

Under the FDCPA, "[o]n a finding by the court that an action … was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  The Ninth Circuit reviews "the district court's finding on the bad faith issue under the clearly erroneous standard," and granting of a fee award "for an abuse of discretion."  *Swanson v. S. Ore. Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir. 1988) (citations omitted).  These are both very high and deferential standards that this Court easily satisfies in granting the instant motion.

The Ninth Circuit has affirmed awards under § 1692k(a)(3) where "Plaintiff's only supporting witness was wholly without credibility" and "[t]he record of the present case as well as Plaintiff's pattern of filing apparently frivolous cases asserting debt collection violations establish that the present case was brought in bad faith and for the purpose of harassment as defined in 15 U.S.C. § 1692k(a)(3)."  *Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1139 (9th Cir. 2009) (accepting award and overturning only to the extent entered against *counsel* because § 1692k(a)(3) contemplates fees against the *party* only).  Indeed, *Hyde* made clear that "15 U.S.C. § 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys."  *Id.* at 1141-42.[33]

### B.   THE COURT MAY AWARD ATTORNEY FEES TO MOVANTS UNDER 28 U.S.C. § 1927.

Pursuant to 28 U.S.C. § 1927, "Any attorney … admitted to conduct cases in any

---

[33] In *Geraldo*, Judge Mahan explained that "the sheer number of procedural and substantive defects with plaintiffs' case, considered together with the holdings of other courts in similar cases brought by the same counsel here and based on similar facts," but he awarded fees against the plaintiffs, under § 1692k, not counsel.  *See Geraldo*, No. 2:17-cv-15-JCM-PAL, ECF No. 40, at 7:17-19.  The conduct has worsened since July 2017, resulting in a fee award against and the disqualification of counsel as well.  *See id.*, ECF Nos. 97 (attorney fees against Mr. Nelson), 110 (disqualifying same).

court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Ninth Circuit has looked favorably upon Section 1927 penalties: "Imposing a monetary penalty on counsel is an appropriate sanction considerably less severe than holding counsel in contempt, referring the incident to the client or bar association, or dismissing the case … It is appropriate that sanctions such as these are directed at the lawyers responsible, rather than the litigants."  *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 520-21 (9th Cir. 1983) (internal citations omitted).

The Ninth Circuit has also directly recognized that "28 U.S.C. § 1927 [authorizes the Court] to hold attorneys personally liable for excessive costs for unreasonably multiplying proceedings."  *Gadda v. Ashcroft*, 377 F.3d 934, 943 n.4 (9th Cir. 2004).  In fact, the Ninth Circuit has held:

> Sanctions [under §] 1927 must be supported by a finding of subjective bad faith.  ***Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent***. Tactics undertaken with the intent to increase expenses or delay … support a finding of bad faith.  Even if an attorney's arguments are meritorious, his conduct may be sanctionable if in bad faith.

*New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) (citations and internal quotation marks omitted) (emphasis added).

## C.    THE COURT MAY ALSO AWARD FEES UNDER NRS CHAPTER 18.

Under NRS § 18.010,

> 2.   In addition to the cases where an allowance is authorized by specific statute, the court may [award] attorney's fees to a prevailing party: …
>
> (b)  Without regard to the recovery … , when the court finds that the claim … was brought or maintained without reasonable ground or to harass … The court shall liberally construe … this paragraph in favor of awarding attorney's fees in all appropriate situations.  It is the intent of the Legislature that the court award attorney's fees pursuant to this paragraph and impose sanctions pursuant to Rule 11 of the [NRCP] in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses [which] claims and defenses overburden limited judicial resources, hinder the timely

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    resolution of meritorious claims and increase the costs of engaging in
2    business and providing … services to the public.

3   NRS § 18.010 (2)(b).

4        This lawsuit was, without question, brought or maintained without reasonable

5   ground or to harass," entitling Movants to fees under Nevada state law.

6   **D.    THE COURT SHOULD AWARD FEES UNDER THE UNDERLYING**
7   **       CONTRACT BETWEEN THE PARTIES.**

8        The Nevada Supreme Court has held that "[p]arties are free to provide for attorney

9   fees by express contractual provisions.  The objective in interpreting an attorney fees

10  provision, as with all contracts, 'is to discern the intent of the contracting parties.'

11  Traditional rules of contract interpretation are employed to accomplish that result." *Davis v.*

12  *Beling*, 278 P.3d 501, 515 (Nev. 2012) (citations and alterations omitted).  Consequently, the

13  Court's "initial focus is on whether the language of the contract is clear and unambiguous; if

14  it is, the contract will be enforced as written."  *Id.* (citation omitted); *see also Salameh v. 5th*

15  *Rock, LLC*, 656 F. App'x 803, 804 (9th Cir. 2016) (citation omitted) (holding that a broad

16  attorney fee "provision permit[ting] fees in any legal action 'arising out of this Contract,' …

17  is broad enough to encompass tort claims based on the contract's underlying transaction").

18       Based on Nevada and Ninth Circuit authority, the broad attorney fee language in the

19  underlying, enforceable contract to which the Carters are bound requires them to pay

20  RCW's, and its assignee's (AcctCorp) attorney fees incurred in this action.

21  **E.    THIS COURT MAY AWARD ATTORNEY FEES UNDER ITS**
22  **       INHERENT POWER.**

23       "Courts of justice are universally acknowledged to be vested, by their very creation,

24  with power to impose silence, respect, and decorum, in their presence, and submission to

25  their lawful mandates," power "governed not by rule or statute but by the control necessarily

26  vested in courts to manage their own affairs so as to achieve the orderly and expeditious

27  disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   (1991) (citations and internal quotation marks omitted); *see also Estate of Blue v. Cnty. of*

2   *Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (holding discretionary Rule 11 sanctions are

3   appropriate for baseless or time-barred claims brought for an improper purpose or without

4   reasonable inquiry as to a factual foundation) (hereinafter "*Blue*").

5        In *Chambers*, the U. S. Supreme Court affirmed a district court decision just like the

6   one sought by Movants in this case, concluding the district court "properly invoked its

7   inherent power in assessing as a sanction for a party's bad-faith conduct attorney's fees and

8   related expenses paid by the party's opponent … "  *Id.* at 35, 111 S.Ct. at 2128.

9        In so affirming, the *Chambers* Court recognized:

10       [N]othing in the other sanctioning mechanisms or prior cases interpreting
         them … warrants a conclusion that a federal court may not, as a matter of
11       law, resort to its inherent power to impose attorney's fees as a sanction for
         bad-faith conduct.  This is plainly the case where the conduct at issue is not
12       covered by one of the other sanctioning provisions.

13   *Id.* at 50, 111 S. Ct. at 2135.   Indeed, when bad-faith conduct occurs in the course of

14   litigation the sanctions for which fall "under the Rules, the court ordinarily should rely on

15   the Rules … But if in the informed discretion of the court, neither the statute nor the Rules

16   are up to the task, the court may safely rely on its inherent power."  *Id.*, 111 S. Ct. at 2136.

17   **IV.   LEGAL ARGUMENT**

18       This case was all part of a bigger picture, of a scheme to make a small "mom and

19   pop" collection business close its doors for good.  The claims brought in this case had no

20   merit from the start.  Even if they had merit at some point in time, which Movants posit they

21   did not, when the claims were brought in this lawsuit, they had been long-barred by the

22   statute of limitations, which this Court has already recognized, while others were utterly

23   lacking in factual support.  In short, this case has been frivolous and vexatious since its

24   inception, and was brought and maintained in bad faith.  Movants should be awarded their

25   attorney fees – $139,269.00 ($102,887.00 for AcctCorp, $36,382.00 for RCW) – incurred in

26   having to defend this senselessness.

27   / / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**A.   THE CARTERS' ENTIRE CASE IS A PRODUCT OF THE NEFARIOUS PLANS OF CRN, ITS PRINCIPALS, AND THE CARTERS' COUNSEL.**

The facts easily demonstrate this case is a product of the malevolence of CRN, its principals, and the Carters' counsel.  After Feeney acquired CRN, he developed a plan with the Carters' counsel, to use CRN as a shell to solicit numerous plaintiffs to file lawsuits against AcctCorp, Feeney's competitor, with the purpose to "attack" it by inflicting financial harm and fraying AcctCorp's relations with its clients.[34]  While CRN tries to masquerade this litigation scheme as a credit repair service, it does not pass scrutiny.

To start, there is no need to solicit someone to file a lawsuit before offering credit repair services.  The two are not mutually inclusive.  Moreover, CRN never performed any credit repair services for the Carters.  More condemning, however, is the fact that the Carters' counsel has not filed any cases against Feeney's collection companies since he agreed to participate in this litigation scheme, and CRN continues to solicit plaintiffs on Jacobs' radio show.  Simply stated, CRN is entitled to its own opinion, but not its own facts. The facts, here, prove beyond a preponderance of the evidence that this case is a product of the nefarious plans of CRN, its principals, and the Carters' counsel.

This case was not filed to make the Carters whole or to remedy past injury; the lack of investigation and involvement alone shows that a victory in litigation was not the goal. Indeed, most of the Carters' claims were disposed of on statute of limitations grounds, and the remaining amended claims were summarily adjudicated in favor of AcctCorp when the evidence obtained during extended discovery shows the Carters' allegations were untruthful. In short, the case was brought to harass Movants, with the hope of being one among many similar lawsuits that would eventually drive AcctCorp out of business.

---

[34] The FDCPA claims were made against AcctCorp's creditor clients (*e.g.,* RCW), who are not even subject to the FDCPA, substantiating this position and demonstrating the frivolity of the lawsuits against them.  *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004); see also 15 U.S.C. §§ 1692b et seq. (governing actions of "debt collectors"); 15 U.S.C. § 1692a(4) (defining "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed ... ").

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

This case and the underlying ruse were unlawful from the start.  *See JPMorgan Chase Bank, N.A. v. KB Home*, 740 F. Supp. 2d 1192 (D. Nev. 2010) ("A champertous agreement is one in which a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation.  In Nevada, champerty is unlawful.") (citing *Schwartz v. Eliades*, 113 Nev. 586, 939 P.2d 1034, 1036 (1997); *Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347, 350 (1971)); *cf. Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1153-54 (9th Cir. 2011) (recognizing champerty and maintenance as a defense).  Nevada criminalizes the conduct of any person "who shall … encourage another to bring, any false suit at law or in equity, in any court of this State, with intent thereby to distress or harass a defendant therein."  NRS § 199.320.  As described above, and evidenced by the exhibits hereto, this conduct is exactly what gave rise to this case.

**B.    THE CARTERS' CLAIMS WERE BASELESS ON THEIR MERITS.**

  **1.    The Carters' Claims Against RCW Were Utterly Baseless.**

   **a.    The Carters' FDCPA Claim Against RCW was Completely Frivolous From the Start.**

The Carters asserted a claim under the FDCPA against all defendants, but by the Carters' own admission, this frivolous claim did not and could not apply to RCW, a creditor, not a debt collector.[35]  *See* 15 U.S.C. §1692a(4) (defining "creditor" as any person who offers or extends credit creating a debt or to whom a debt is owed … "); *see also Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all."); *id.* ("[A]n agent or employee of the creditor is not covered by the [FDCPA] in the first place."); *Fed. Trade Comm'n v. Check Investors, Inc.*, 502 F.3d 159, 171 (3d Cir. 2007) ("Creditors – as opposed to debt collectors – generally are not subject to the FDCPA."); 15

---

[35] *See* ECF Nos. 1 & 40.

U.S.C. §§ 1692b *et seq.* (governing "debt collectors").  Thus, the Carters' FDCPA claim

against RCW, to which the FDCPA does not apply, was unfounded.[36]

### b.   Plaintiff's Abuse of Process Claim Against RCW Was Also Baseless Because RCW Never Used Process.

Next, the Carters asserted an abuse of process claim based on the allegation that

"Defendants commenced and/or prosecuted legal proceedings against Plaintiffs … "[37]  After

ten months of conducting discovery on, and litigating, the claim, the Court dismissed

Plaintiff's abuse of process cause of action with prejudice, which had no legitimate basis for

assertion.[38]

Indeed, RCW never participated in the State Court Action, as this Court

recognized.[39]  In fact, even the conduct alleged to have been taken by RCW's assignee –

*e.g.,* AcctCorp filing a complaint and proceeding to litigate a case – did not support an abuse

of process cause of action, which the Court also recognized.[40]  Therefore, this claim, too,

was utterly baseless from its start, and the Carters have never even hinted to actual facts that

would support an abuse of process claim.

### c.   The Carters Fabricated Claims for Civil Conspiracy and DTP for No Other Reason Than to Harass.

Similarly, the Carters asserted claims for civil conspiracy and DTP without

legitimate support in fact or law.  This Court first noted the Carters' failure to identify under

which of 100 subsections of NRS Chapter 598 Plaintiff's DTP claim was brought, allowing

---

[36] The FDCPA still allows RCW to recover fees thereunder.  *See, e.g., Forto v. Capital One Bank, Nat'l Assoc.*, No. 14-cv-05611-JD (MEJ), 2017 WL 4168529, at *6 (N. D. Cal. Sept. 20, 2017) (recognizing a creditor may recover attorney fees under 15 U.S.C. § 1692k).

[37] ECF No. 1, at 5, ¶ 36.

[38] ECF No. 38.

[39] *See id.*; *see also* ECF No. 39, at 27-29.

[40] *See id.*

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  the Carters leave to amend not only the DTP claim but the deficient civil conspiracy claim

2  as well.[41]  The Carters and counsel tried again, and failed again.[42]

3          Ultimately, the Carters had no evidence to support their allegations, and they failed

4  to conduct any discovery when given an opportunity to support their last surviving claims.

5  *See Hyde*, 567 F.3d at 1139 (issuing an attorney fees sanction where the plaintiff at least *had*

6  a witness who was determined to lack credibility, unlike here, where Plaintiff had no

7  evidence supporting his baseless claims).  Left to wonder why the Carters would offer no

8  evidentiary support, one can only surmise that none exists, nor has there ever been evidence

9  to support the claims.

10          **2.      The Causes of Action Against AcctCorp Were Similarly Baseless.**

11              **a.      The Carters Knowingly Asserted Baseless FDCPA Claims**
12                        **Against AcctCorp.**

13          The Carters' FDCPA claims accrued as early as April 23, 2014, when they were

14  served with the Summons and Complaint in the State Court Action.[43]   Therefore, even

15  applying the discovery rule to the FDCPA's one-year statute of limitations, the deadline to

16  file their FDCPA claims expired in April 2015.  *See Tourgeman v. Collins Fin. Servs., Inc.*,

17  755 F.3d 1109, 1118 n.5 (9th Cir. 2014) ("The district court appropriately concluded that the

18  first time that Tourgeman reasonably could have become aware of the allegedly false and

19  misleading representations in Defendants' letters was when his father was served with

20  summons and complaint in the state court lawsuit … ") (alteration and internal quotation

21  marks omitted)).   Plaintiff filed this action in ***December 2016***, almost two years later.[44]

22  _____

[41] *See* ECF No. 39, at 40.

23
24  [42] *See generally* ECF Nos. 40 (amending complaint), 70 (recognizing that the Carters neither alleged
    nor produced evidence from which to even infer that AcctCorp or Bowen entered into a consumer
25  transaction with the Carters and that "Plaintiffs have failed to offer any evidence as to Defendants'
    concerted action taken with intention to accomplish an unlawful objective").

26  [43] *See* ECF No. 49-11 (affidavits of service); *see also* ECF No. 70, at 2 (referencing date of service).

27  [44] *See* ECF No. 1.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

What is worse, the Carters relied on a knowingly false representation to this Court to maintain their baseless claims, alleging and leading this Court to believe that "within the past year [before commencement of this action], Defendants, who are debt collectors under the FDCPA, committed several violations of the FDCPA."[45]   In the end, the truth would prevail, and the evidence obtained from third parties demonstrated not only (1) that AcctCorp had not violated the FDPCA but (2) that the alleged hardship suffered by the Carters in being denied for credit was not a result of AcctCorp's conduct, but of the Carters' own irresponsibility.[46]

In addition to the foregoing, the Court has already determined that, after the Carters maintained a claim under 15 U.S.C. § 1692g for years, AcctCorp provided evidence to show it provided a legally satisfactory dunning letter, and the Carters neglected to oppose summary judgment on that claim in the first round of summary judgment briefing.[47]   In short, they knew the claim was baseless but brought it anyway simply to "attack" Movants.

Based on the facts and evidence that have been revealed, it is clear that the Carters' FDCPA claims lacked merit since "day 1."   Therefore, Movants should be awarded their attorney fees incurred in having to defend this completely meritless lawsuit.

### b.   The Carters Knowingly Asserted and Maintained Frivolous State Law Claims.

The Carters asserted three causes of action under state law, all of which were either summarily adjudicated in favor of Movants or were dismissed outright – abuse of process (dismissed with prejudice), as well as DTP and civil conspiracy (both summary judgment).[48]

The Carters' claim for DTP against AcctCorp was brought, and maintained for more

---

[45] ECF No. 1, at 4, ¶ 29.

[46] *See generally* ECF No. 93; *see also* ECF Nos. 82-13, 82-14, 82-15, & 82-16.

[47] *See* ECF No. 70, at 12-13.

[48] *See* ECF Nos. 38, 39, 70, & 93.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

than a year, with full knowledge they never had a consumer transaction with AcctCorp.  *See, generally,* NRS Chapter 598 (requiring a transaction for the sale or lease of goods or services); *see also Blue,* 120 F.3d at 985 ("Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.") (citation omitted).

Finally, the Carters alleged civil conspiracy with no indication that the defendants in this or any other of the Carters' counsel's lawsuits communicated amongst themselves about violating the law.[49]  The Carters' problem with this cause of action, like all the others, was a complete lack of evidence to support the baseless claim.[50]

## C.   THE CARTERS' COUNSEL UNREASONABLY AND VEXATIOUSLY MULTIPLIED PROCEEDINGS.

The senseless, continuing, and frivolous filings from the Carters' counsel must be curtailed.  Not only does § 1927 allow sanctioning for improper and vexatious multiplication of proceedings, "Rule 11 sanctions are specifically designed to deter baseless filings and frivolous litigation, to unclog the choked dockets of the federal courts, and to punish improper conduct by lawyers and litigants."  *Schutts v. Bentley Nev. Corp.*, 966 F. Supp. 1549, 1566 (D. Nev. 1997) (citations omitted).  That goal was set because "when lawyers shower the court with frivolous papers, everyone suffers." *Id.*

Here, the Carters' counsel is now into his seventh lawsuit against AcctCorp and its clients, each just as frivolous as the one before it.  Notwithstanding multiple judges' admonitions and direction, affording the Carters' counsel every opportunity to meet his burdens, counsel refuses to "fight clean."  Instead, the frivolous filings, baseless oppositions, and disregard of Court orders continue.[51]

/ / /

---

[49] *See* ECF No. 39, at 40.

[50] *See generally id.*

[51] *See LaForge*, No. 2:17-cv-00782-APG-VCF, ECF 63, at 2 ("I strongly disfavor such tactics.  And this is not the first time I have recently addressed plaintiffs' counsel's violation of Local Rules.").

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

1    Certainly, if "clients must be held accountable for the acts and omissions of their

2    attorneys," at some point, the need to hold counsel accountable for his own conduct must

3    prevail.  *Sec. Exch. Comm'n v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1101 (9th Cir.

4    2010) (citation and alteration omitted); *see also Oliva v. Sullivan*, 958 F.2d 272, 275 (9th

5    Cir. 1992) ("[A]ttorneys should be made accountable for their wrongs. Loose rules induce

6    loose practices which, in turn, cause delays and increase the costs of justice.") (Sneed, J.,

7    dissenting).

8    **D.      THE FEES SOUGHT ARE REASONABLE UNDER LR 54-14.**

9    The following addresses the factors set forth in LR 54-14.

10            **1.       Itemization and Description of the Work Performed**

11    Attorney fees and costs incurred by Movants are reflected in monthly statements that

12    are prepared by MAC and sent to the clients.  From January 5, 2017, to present, almost three

13    years of litigation, MAC spent approximately 580.4 hours litigating this case (425.10 hours

14    as to AcctCorp; 155.30 as to RCW).  The billing statements are attached as **Exhibit K**.  In

15    his Declaration, *see* Ex. B hereto, Mr. Moser sets forth the requirements under LR 54-14(c).

16            **2.       Itemization of Costs**

17    With respect to costs, Movants respectfully direct the Court's attention to their

18    respective Bills of Costs, both filed and served contemporaneously with this Motion.

19            **3.       Summary of Work in Conformity with LR 54-16**

20                    **a.      Results Obtained**

21    As demonstrated by the Court's Orders throughout this case, Movants obtained

22    dismissal with prejudice and summary judgment on all of the Carters' claims.[52]  A review of

23    the Court's docket reveals that all work performed by counsel for Movants was directly

24    related to the furthering of the litigation or in response to the Carters' pleadings.

25    / / /

26

27    _____
     [52] ECF Nos. 38, 39, 70, & 93.

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

#### b.     Time and Labor Required

Attached as Exhibit K are MAC's billing statements regarding the work performed in this litigation from January 5, 2017, and forward.  The billing statements establish that the legal services rendered were reasonable and necessary.  So, too, does the Declaration of Mr. Moser, attached as Exhibit B.

#### c.     Novelty and Difficulty of the Questions Involved

The FDCPA is very complex in its nuances, as are the claims thereunder and the various bases on which they may rest, as well as the defenses against such claims.  In addition, the Carters asserted vague state law causes of action, all of which required consideration of the interplay between state and federal law and the possible application of different statutes of limitations.  Naturally, this case was fact intensive, requiring particular attention to detail.

#### d.     The Requisite Skill to Perform the Legal Services

Mr. Clement and Mr. Moser have litigated a number of FDCPA cases, which require a specific skill set, an understanding of the FDCPA itself, and an understanding of the applicable defenses thereto.  In all of counsels' submissions to this Court on behalf of Movants, Mr. Clement and Mr. Moser used the requisite legal research and writing skills to properly perform the legal services for which MAC was retained.  The instant motion accurately describes some of the proceedings in this case that warrant a fee award to the prevailing parties – AcctCorp and RCW.  The Declaration of Mr. Moser provides this court with sworn testimony from an attorney licensed in this jurisdiction in further detail.[53]

#### e.     The Preclusion of Other Employment Due to Acceptance of this Case

The litigation conduct exhibited by the Carters and their counsel in this case demanded a considerable amount of work by the undersigned.  Because of the unique nature

---

[53] *See generally* Ex. B, <u>Moser Decl.</u>

of this case, and the factual and procedural issues created by the Carters and their counsel, this case demanded a large part of time from Movants' counsel, particularly in light of the extended discovery period and second round of summary judgment briefing. The time Movants' counsel spent in defending this case precluded them from performing work for other clients whom they could have charged higher hourly rates.

### f.      The Customary Fee

The hourly rates of Mr. Clement during this litigation were $250-305/hour, and Mr. Moser's hourly rates during this litigation were $235-245/hour, respectively.   The hourly rates are actually low compared to the hourly rates charged to other clients.   The hourly rates for other clients are often higher.   Mssrs. Clement's and Moser's hourly rates are fair and reasonable for professional services from litigation attorneys at MAC, and in the legal community, who have the level of experience and expertise that Movants' counsel hold in FDCPA defense cases.[54]

### g.      Experience, Reputation, and Ability of the Attorneys

Movants' counsel – Mssrs. Clement and Moser – have litigated or are currently litigating a number of FDCPA defense cases before the United States District Court for the District of Nevada and have prevailed by dispositive motions on all seven active cases against the Carters' counsel.   Their ability to competently handle such cases can be evaluated by viewing the filings in this case docket and before other judges in this District.[55]

### h.      Nature and Length of the Professional Relationship with the Client

MAC has had a relationship with Movants, both of which MAC is representing in multiple, other on-going cases, since this and those other cases began in December 2016.[56]

---

[54] *See generally id.*

[55] *See generally id.*

[56] *See generally id.*

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1

### i.      Similar Awards

Fee awards are not uncommon in these types of cases, and the legal authority cited above demonstrates that numerous courts in this District and others have awarded fees on any or all of the grounds cited in this Motion.

### j.      Any Other Information The Court May Request

MAC is happy to address this factor if the Court does request additional information.

## V.     CONCLUSION

For the foregoing reasons, AcctCorp and RCW respectfully request that this Court enter an Order, pursuant to 28 U.S.C. § 1927, 15 U.S.C. § 1692k(a)(3), NRS § 18.010, and/or the Court's inherent power, awarding them with the attorney fees incurred in defending this frivolous and harassing lawsuit – in the amount of $139,269.00 ($102,887.00 for AcctCorp, $36,382.00 for RCW).

Dated this  15th  day of October, 2019.

MARQUIS AURBACH COFFING

By    /s/ Chad F. Clement
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Chad F. Clement, Esq.
Nevada Bar No. 12192
Jared M. Moser, Esq.
Nevada Bar No. 13003
10001 Park Run Drive
Las Vegas, Nevada  89145
*Attorneys for for Richland Holdings, Inc.*
*d/b/a AcctCorp of Southern Nevada, RC*
*Willey a/k/a RC Willey Financial Services,*
*and Randall Corporation d/b/a Bowen Law*
*Offices*

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM

1

## CERTIFICATE OF SERVICE

2   I hereby certify that I electronically filed the foregoing **DEFENDANT RICHLAND**

3   **HOLDINGS, INC. D/B/A ACCTCORP OF SOUTHERN NEVADA'S AND RC**

4   **WILLEY AKA RC WILLEY FINANCIAL SERVICES' MOTION FOR ATTORNEY**

5   **FEES** with the Clerk of the Court for the United States District Court by using the court's

6   CM/ECF system on the  15th  day of October, 2019.

7   ☒       I further certify that all participants in the case are registered CM/ECF users

8   and that service will be accomplished by the CM/ECF system.

9   The Law Office of Vernon Nelson
Vernon A. Nelson, Jr. Esq.
10   6787 W. Tropicana Avenue, Suite 103
Las Vegas, NV  89103
11   Tel:  702-476-2500
Fax:  702-476-2788
12   vnelson@nelsonlawfirmlv.com
*Attorneys for Plaintiffs*

13

14   ☐       I further certify that some of the participants in the case are not registered

15   CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid,

16   or have dispatched it to a third party commercial carrier for delivery within 3 calendar days

17   to the following non-CM/ECF participants:

18

19

20    */s/Barb Frauenfeld*
an employee of Marquis Aurbach Coffing

21

22

23

24

25

26

27

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:14665-003 3859376_1.docx 10/15/2019 8:03 AM